"A"

In the United States District Court

For the District of Rhode Island
(Form mailed ____________, 198 )

CRAIG C. PRICE

CA 05 389 S

/Enter above the full mane of the plaintiff or plaintiffs in this action. /

v.

Civil Action No. ____________

ASHBELT T. WALL II
JAKE GADSDEN JR.
JOSEPH A. DiNITTO

/Enter above the full name of the defendant or defendants in this action/

1.- Previous Lawsuits

A. Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to your imprisonment?

Yes /_/ No /✓/

B. If your answer to A is yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

1. Parties to this previous lawsuit

Plaintiffs: ____________

Defendants: ____________

2. Court /if federal court, name the district; if state court, name the county/: ____________

3. Docket number: ______

4. Name judge to whom case was assigned: ______

5.- Disposition /for example: Was the case dismissed? Was it appealed? Is it still pending?/: ______

______

6. Approximate date of filing law suit: ______

7. Approximate date of disposition: ______

II. Place of Present Confinement: Florida D.O.C., Charlotte Correctional Inst.

A. Did you present the facts relating to your complaint to The Warden or any of the prison officials?
Yes /✓/ No /_/

B. If your answer is YES:

1. What steps dis you take? Filed Grievances, Good Faith Letters, and continual verbal efforts to address the issue.

2. What was the result? All efforts were to no avail in every regard to address the agrieved of matter.

C. If your answer is NO, explain why not: ______

______

III. Parties

/In item A below, place your name in the first blank. Do the same for additional plaintiffs, if any./

A. Name of plaintiff Craig C. Price

______

/ In item B below, place the full name of the defendant in the first blank, his official position in the second blank, and his place of employment in the third blank. Use item C for the names, position, and places of employment of any additional defendants./

B. Defendant Ashbel T. Wall II is employed as Director of Corrections at Rhode Island Department of Corrections

C. Additional Defendants: Jake Gadsden Jr. Assistent Director of Rhode Island D.O.C.; Joseph A. DiNitto, Associate Director of Classification of Rhode Island Department of Classification.

IV. Statement of Cl m

State here as briefly as possible the facts of your case. Discribe how each defendant is involved. Include also the names of other persons involved, dates, and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. /Use as much space as you need. Attach extra sheet if necessary./

The Plaintiff's First Amendment Right to petition the Court by means of filing a Complaint/Motion To Compel against the R.I.D.O.C., was violated by the retalitory actions of Defendant WALL's ultimate approval of any and all classification decisions pertaining to the plaintiff's TRANSFER to the State of Florida, and to the Plaintiff's placement on a Close Management Segregation Status in the Florida D.O.C.. The Plaintiff's First Amendment Right to petition the Court by means of filing a Complaint/Motion To Compel against the R.I.D.O.C., was violated by the retalitory actions of Defendant Gadsden's Special Risk Group recommendation, reviewal, and approval of any and all classification decisions pertaining to the Plaintiff's placement on a Close Management Segregation TRANSFER, and Placement to the Florida D.O.C.. The Plaintiff's First Amendment Right to Petition the Court by means of filing a Complaint/Motion To Compel against the R.I.D.O.C., was violated by the Retalitory actions of Defendant DiNitto's recommendation, reviewal, facilitation, and approval, of any and all classification decisions pertaining to the Plaintiff's TRANSFER to the state of Florida, and to the Plaintiff's placement on a Close Management Segregation status in the Florida D.O.C..

V. Relief

State briefly exactly what you want the court to do for you.

Make no legal arguments. Cite no cases or statutes.

Plaintiff request the Court to grant the issuance of an injunction ordering Defendants WALL, GADSDEN, and DINITTO, to immediately arrange for the Plaintiff to: a) Be transferred back to the State of Rhode Island to the R.I.D.O.C., so Plaintiff can go back before a classification board for reconsideration of status, and so that Defendants Wall, Gadsden, and DiNitto, can arrange for the immediate devisement and implementation of plaintiff's court ordered treatment; or (b) Be brought before a classification board either in Rhode Island or the state of Florida, for purposes of discussion of the possibility of coordinating a TRANSFER of the Plaintiff back into the Federal System so that Plaintiff could receive and engage in adequate and meaningful Rehabilitation and Court Ordered Treatment; or (c) Be brought before a classification board either in Rhode Island, or Florida, for purposes of discussing the possibility of coordinating a TRANSFER of the Plaintiff to one of the states plaintiff had previously agreed and consented to be TRANSFERRED to, as evidanced in plaintiff's stipulation which is lettered Exhibit "B" & "B(a)" in the Plaintiff's instant complaint.

VI. NOTE: Should you fail to execute and return this form within ten days from the date of mailing as recorded on page 1, this Court will conclude you have abandoned your claim and will dismiss your petition.

Signed this 8/29/05 ~~day of~~ ______________ ~~198~~

Dena Paolino Garcia on behalf of Craig Price

/Signature of plaintiff or plaintiffs/

VERIFICATION

State of Rhode Island )
)
County of Providence )

Craig C. Price, being first duly sworn, under oath, says: that he is the plaintiff in this action and knows the contents of the above complaint; that it is true of his own knowledge, exceptas to those matters that are stated in it on his information and belief; and as to those matters, he believes them to be true.

Craig C. Price

/Signature of plaintiff

with knowledge as his attorney but not in presence as plaintiff is incarcerated in Florida.

Subscribed and sworn to before me this 8/29/05 ~~day of~~ ______________, ~~198~~ ______.

Dena Paolino Garcia, Esq.

/Notary Public or other person authorized by law to administer an oath/

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

DISTRICT COURT DISTRICT OF R.I.

CRAIG C. PRICE
PLAINTIFF
-against-
ASHBEL T. WALL II,
JAKE GADSDEN JR,
JOSEPH A. DINITTO,
sued in their individual and official capacities.
DEFENDANTS

C.A.No.______________

# -COMPLAINT-

JURY TRIAL DEMANDED

## Preliminary Statement:

This is a Civil rights action filed by Craig C. Price, a Rhode Island state prisoner, for injunctive relief under 42 U.S.C. 1983, alleging retaliation by various prison officials, and that Retalitory transfer as consequence for plaintiff engaging in constitutionally protected conduct was in violation of the First Amendment to the United States Constitution.

## Jurisdiction:

1.) The court has jurisdiction over the plaintiff's claims of violation of federal constitutional rights under 42 U.S.C. 1331 (a), 28 U.S.C. 1331 (a).

## PARTIES

2.) The plaintiff, Craig C. Price, is a Rhode Island State Prisoner who was transferred out-of-state via Inter state Compact from the Rhode Island Department of Correction's High Security Center, and is now presently being housed in close management segregation in the state of Florida at the Florida State Prison.

3) The Defendant Ashbel T. WALL II is the Director of the Rhode Island Department of Corrections, and his duties involve ultimately approving, or denying, any and all classification decisions involving plaintiff's classification status, including any and all classification decisions pertaining to plaintiff's out-of-state transfer, and including any and all classification decisions pertaining to plaintiff's Close Management segregation placement at the Florida State Prison. He is sued in his individual and official capacity.

4) The Defendant Jake Gadsden Jr. is the Assistant Director of the Rhode Island Department of Corrections, and his duties involve reviewing, approving, or disapproving, any and all classification decisions pertaining to Rhode Island prisoners designated Security Risk Group members, including any and all classification decisions pertaining to plaintiff's out-of-state transfer and Close Management segregation placement at the Florida state Prison. He is sued in his individual and official capacity.

5) The Defendant Joseph A. DiNitto is the Associate Director of Classification for the Rhode Island Department of Corrections, and his duties involve reviewing and facilitating the Recommendations, approvals, or disapprovals, of any and all classification decisions pertaining to the plaintiff's classification status, including any and all classification decisions pertaining to plaintiff's out-of-state transfer and close Management segregation placement at the Florida State Prison. He is sued in his individual and official capacity.

6) These Defendants together are responsible for any and all recommendations, approvals, disapprovals, and Reviews, concerning and involving any and all classification decisions pertaining to the plaintiff's out-of-state transfer and close Management segregation placement at the Florida State Prison. All the Defendants have acted, and continue to act, under color of state law at all times relevant to this complaint.

# FACTS

7.) On the date of 8/13/03, the plaintiff, through his attorney Dena Paolino-Sarcia, did engage in constitutionally protected conduct, and filed a Complaint/Motion to Compel against the Rhode Island Department of Corrections, in an effort to compel the Rhode Island Department of Corrections to provide the plaintiff with court ordered psychological and psychiatric treatment, which was a specific condition of plaintiff's prison sentence, inwhich plaintiff received for a 1997 Criminal Contempt Conviction. (See Exhibit "A" attached)

8.) In the following month after plaintiff filed his Complaint/Motion to Compel, Court conferences ensued involving plaintiff's counsel, D.O.C.^s counsel, and the assistant Attorney General for Rhode Island, and as product of these court conferences, a verbal agreement was reached that the plaintiff would receive the court ordered treatment plaintiff was not receiving, and that if plaintiff engaged in and successfully completed various programs such as Anger Management, and One on One Counseling with D.O.C. mental health staff, the plaintiff would then be allowed to be upgraded in his classification status so that plaintiff could participate in other psychological and psychiatric treatment that was not presently available to plaintiff due to the restricted status plaintiff was being kept on. The plaintiff then signed a contract with D.O.C. mental health staff, pledging that the plaintiff would successfully complete every requirement outlined in the D.O.C. mental health contract.

9.) Plaintiff successfully fulfilled the requirements of the mental health D.O.C. contract, and in April of 2004 the plaintiff was then taken to a classification board for a review for an upgrade from his restricted status. The classification board, upon reviewing the plaintiff's entire institutional record, and upon acknowledging that the plaintiff had successfully completed that which was required of him to do in the mental health contract plaintiff signed, the classifi-

cation board members voted for an upgrade in the plaintiff's classification status.

10.) Several weeks passed by, and the plaintiff never received final approval, or disapproval, for his recommendation for an upgrade in status from defendant Gadsden, whom is the assistant Director of the Rhode Island Department of corrections, and is in charge of approval, or disapprovals, of classification decisions pertaining to Special Risk Group prisoners, which plaintiff was designated. Nor did the plaintiff receive final approval, or disapproval, for his recommendation for an upgrade to a lesser restricted classification status from defendant Wall, whom is the Director of Rhode Island Department of Corrections, and is in charge of all classification decisions that are final, and subject to his ultimate approval or disapproval.

11.) Upon plaintiff's counsel contacting R.I.D.O.C. officials and legal counsel and inquiring as to what was the delay in the plaintiff's final decision to his upgrade to a lesser restricted classification status, the plaintiff's attorney then learned that an investigation was in progress, in regards to the validity of the classification board, its members, and the presence of voting members of the board when the plaintiff's recommendation for an upgrade to a lesser restricted classification status was recommended.

12.) After some time, and after continual inquiries by plaintiff's counsel in regards to the conclusion of said investigation into the plaintiff's classification board, the controversy surrounding the classification board seemingly got straightened out, however, plaintiff's counsel was then told that another investigation was being conducted, and that this investigation pertained to the plaintiff stabbing a prisoner by the name of Alex Snow once the plaintiff would be released onto a lesser restricted classification status. Plaintiff, through counsel, then secured and submitted an affidavit from prisoner Alex Snow, stating that no problems, whatsoever, exit, or ever existed, between plaintiff and himself, and that he was not afraid to be housed with plaintiff. After plaintiff's submittance of said affidavit to D.O.C. officials, this once again seemingly put an end to this series of investigations and obstacles precluding plaintiff from being upgraded to a lesser restricted classification status.

13) However, once more, another investigation ensued, and this new investigation pertained to a known prison informant by the name of Luigi M. Ricci. The investigation, according to D.O.C. officials, consisted of the D.O.C.'s alleged concern for the safety of the institution, and to the safety of prison informant Ricci, should the plaintiff be released onto a lesser restricted status. This concern for prison informant Ricci was based upon the fact that in the year of 1998 plaintiff was charged with an assault, and that during the course of an investigation regarding the said assault, prison informant Ricci had written a witness statement regarding the altercation so that he could attain an upgrade in status, as well as a transfer to a lower security.

14.) Plaintiff's counsel, in dealing with this new investigation that was once again delaying plaintiff's upgrade to a lesser restricted classification status, vigorously pointed out the fact to D.O.C. officials and D.O.C. counsel, that prison informant Ricci was not even in population where the plaintiff would be housed should he receive the upgrade in his classification status, and that infact, contrary to any security concerns the D.O.C. was now making in regards to prison informant Ricci as the basis of a security excuse to deny the plaintiff an upgrade to a lesser restricted classification status, just several weeks prior to the plaintiff receiving a recommendation to a lesser restricted classification status so that he could engage in the court ordered psychological and psychiatric treatment, the plaintiff was "actually moved" to the same segregation cell block where informant Ricci was being housed, even despite the fact that D.O.C. officials knew plaintiff was on informant's enemy list listed as informant Ricci's enemy. After digesting plaintiff's counsel's adamant arguments pointing out this glaring contradiction the D.O.C. was purposing as a reason to delay plaintiff's upgrade to a lesser restricted status, once again, this seemingly put an end to this investigation and obstacle precluding the plaintiff from being upgraded to a lesser restricted classification status, so that plaintiff could finally engage in the court ordered psychological and psychiatric treatment the D.O.C. was court ordered to provide the plaintiff with.

15.) Several weeks had elapsed from the time plaintiff was last under any investigation precluding plaintiff from being upgraded to a lesser restricted status, and plaintiff still did not receive any decision from Defendants Wall, Gadsden or DiNitto, as to plaintiff's classification status. Plaintiff's Counsel then informed counsel for the D.O.C. that the plaintiff's Complaint/Motion to Compel needed to be brought back in front of the presiding Judge of the matter, because the plaintiff was effectively being denied the court ordered treatment and rehabilitation. Shortly after this pronouncement from plaintiff's counsel, Counsel for the D.O.C. offered to send the plaintiff out-of-State, so that plaintiff could receive the court ordered treatment and rehabilitation, that due to various factors the D.O.C. was unable to administer at the High Security Center where plaintiff was being housed.

16.) On the date of 6/4/2004, the plaintiff agreed to be voluntarily transferred so that he could engage in meaningful and adequate programs and rehabilitation consistent with the requisite and necessary court ordered treatment. The plaintiff had specifically agreed to be voluntarily transferred to the Federal Prison System, or to the states of California, New Jersey, Illinois, Ohio, or South Carolina, but plaintiff emphatically stressed that he most of all wanted to be transferred into the Federal Prison System because of the programming and rehabilitative opportunities. (See Exhibit "B" attached)

17.) On the date of 6/11/2004, plaintiff's counsel, attorney Dana Paolino-Sarcia, sent a letter to D.O.C. Sr. Legal Counsel attorney Patricia A. Coyne-Fague, with the purposes of memorializing previous conversations regarding the D.O.C.'s decision to transfer the plaintiff out-of-state, and to clearly outline the impetus for the most efficient and adequate treatment for plaintiff. (See Exhibit "C" attached)

18) A stipulation regarding the plaintiff's "Complaint/Motion to Compel" the Rhode Island Department of Corrections to provide plaintiff with specialized psychiatric treatment entered on record, and Judge Albert E DeRobbio ordered that the plaintiff's Complaint/Motion to Compel may be withdrawn without prejudice, and that the plaintiff agreed and consents to be voluntarily transferred to a correctional facility outside the state of Rhode Island, as evidenced by the plaintiff's written consent. (See Exhibit "B(a)")

## RETALIATION

19) On the date of 10/27/2004, the plaintiff was transferred out of state from the Rhode Island Department of Corrections's High Security Center, to the Manchester airport in New Hampshire, where plaintiff then boarded a Federal Marshals plane that flew the plaintiff to the state of Oklahoma, where for five weeks the plaintiff remained at a federal holding facility located in Oklahoma City.

20) On the date of 12/3/2004, the plaintiff was then flown from Oklahoma City Oklahoma, to the state of Florida, and upon plaintiff reaching the state of Florida, the plaintiff was then taken to the Florida D.O.C.'s Lake Butler Reception Center where the plaintiff was directly placed in segregation.

21) The plaintiff never agreed or consented to be voluntarily transferred to the state of Florida, and Florida was not one of the states listed in the Stipulation regarding plaintiff's Complaint/Motion to Compel. (See again Exhibits "B & B(a)" attached)

22) The plaintiff remained in segregation at Lake Butler Reception Center until the date of 12/6/2004, and then plaintiff was transferred to the Florida State Prison, where upon plaintiff's arrival, the plaintiff was immediately placed in a punitive disciplinary wing of Segregation called B-Wing, even though plaintiff had done nothing wrong and had broken no rules or regulations of the Florida Department of Corrections.

23) On the date of 12/8/2004, Florida D.O.C. classification officer Richard Robinson delivered a close management classification referral notice to plaintiff at plaintiff's cell in B-Wing. Classification officer Robinson then proceeded to tell the plaintiff that because plaintiff was an "involuntary disciplinary transfer," and because plaintiff "liked to cause trouble with the administration at the prison where plaintiff was from," plaintiff would be referred to be placed on close management One segregation status which was the most restricted close management status. (See Exhibit "D" attached)

24) Upon hearing this from classification officer Robinson, and upon reading the classification notice prepared by classification officer Robinson, the plaintiff then attempted to explain that some grievous mistakes and misinformation had been injected into whatever background information the Florida D.O.C. had been furnished with regarding the plaintiff. But classification officer Robinson would hear none of it, and then stated to plaintiff: "They told me all about you, so save your breath. I know you "escaped from prison," I know your a "Interestate Compact Disciplinary Transfer," and I know you "injured one officer so severely that the officer had required hospitalization for an extended period of time", you pull any smart moves down here, "especially with the legal stuff," you could end up with forever. Just stay off your cell door, and do as your told, and we might let you breathe some." (See again Exhibit "D" attached for the emphasized lines above)

25) On the date of 12/10/2004, plaintiff filed an inmate request requesting to use the telephone to contact his attorney so that plaintiff's counsel, attorney Dena Paolino-Garcia, could straighten matters out with Florida D.O.C. officials. Plaintiff's request slip was not answered until the date of 12/20/2004, and all the while plaintiff was denied access to the phone even after the plaintiff had asked security, as was suggested to plaintiff by classification officer Robinson. (See Exhibit "E" attached)

26) On the date of 12/15/2004, the plaintiff again filed another inmate request, this time to the Warden of Florida State Prison, and plaintiff requested to know what classification status was plaintiff on? The response to plaintiff's request was dated 12/20/2004, and even though plaintiff had submitted said request to the Warden, classification officer Robinson answered plaintiff's request. Classification Officer Robinson's response stated that plaintiff's status was "Administrative Confinement pending Close Management One Review." (See Exhibit "F" attached)

27) Plaintiff then researched Florida D.O.C. policy and procedure regarding Administrative Confinement, and upon doing so, the plaintiff learned that Administrative Confinement prisoners are by policy suppose to be held in non-disciplinary wings, and that prisoners in Administrative Confinement are allowed to make phone calls and are allowed other privileges that were being denied plaintiff, such as library services, and that administrative confinement prisoners held on administrative confinement status pending Close management, are not held more than a fifteen and then a five day period unless certain criteria involving extensions are met.

28) The plaintiff then filed and submitted an Informal Grievance to the Assistant Warden in regards to his status and denial of privileges. Plaintiff's Informal Grievance was never responded to. However, on the date of 1/6/2005, after plaintiff spending thirty days in disciplinary confinement, the plaintiff was was moved from a disciplinary wing and moved to a Close Management wing of segregation where plaintiff refiled and resubmitted his Informal Grievance to the Assistant Warden. Plaintiff's Informal Grievance was not answered by the Assistant Warden, but yet again, plaintiff received a response from classification officer Robinson, who reduced plaintiff's Informal Grievance to a Inmate Request that ignored and looked over plaintiff's complained of issues outlined in plaintiff's Informal Grievance. (See Exhibit "G" attached)

29.) On the date of 1/13/05, plaintiff was taken to a Close management one Review that was conducted by the Florida D.O.C.'s Institutional Classification Team. Plaintiff again tried to attempt to explain to the I.C.T. Board that the comments made in classification officer Robinson's Notice and Referral for an Assignment to Close Management One placement, was inaccurate, inflamatory, and full of disinformation, but plaintiff was told to "shut up now and listen", and that plaintiff was going to be placed on Close Management One based on the fact that plaintiff's "disruptive behavior was a threat to security", and that because plaintiff was "received into the Florida State Prison System on Interstate Compact due to his extensive disciplinary record." (See Exhibit "D" again under section III)

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

30.) On the same date of 1/13/2005, plaintiff filed and submitted a Grievance in regards to his classification placement on Close Management One to the Secretary of the Florida Department of Corrections. However, on the date of 1/20/2005, plaintiff's Grievance was sent back to him due to a non-compliance with grievance procedures explanation. (See Exhibit "H" attached)

31.) Plaintiff then refiled and resubmitted his Grievance on the date of 1/25/2005, to the Warden of Florida State Prison, and on the date of 1/30/2005, the Warden did deny the plaintiff's grievance. (See Exhibit "I" attached)

32.) Plaintiff then filed and submitted a grievance to the Secretary of the Florida Department of Corrections on 2/4/2005, grieving his placement on Close Management One. But to no avail was plaintiff granted relief, and plaintiff's grievance was denied [(See Exhibit "J" attached)] by Secretary.

33) On the date of 2 / 14 /2005, plaintiff received a Memo from a Ms. Lynn Garst from the Florida Department of Corrections's Bureau of Classification and Central Records and Interstate Corrections Compact Office, and attached to said Memo was a letter addressed to the Florida Department of Corrections's Interstate Corrections Compact Administrator Ms. Sylvia D. Williams, and said letter was sent from Defendant DiNitto, and said letter requested that Ms. Williams ensure that the plaintiff receive a copy of said letter stating and notifying that the Rhode Island Department of Corrections had classified the plaintiff to High Security "C" Status, which is the exact same classification status plaintiff was recommended an upgrade from while plaintiff was housed in the Rhode Island Department of Corrections. (See Exhibit "K" attached)

34) Plaintiff then wrote his grievances out in letters and sent the letters to Defendants Wall, and DiNitto, and in the month of March, only Defendant DiNitto responded back. Defendant DiNitto was completely indifferent towards plaintiff's issues that he grieved about in his letters previously sent, and Defendant DiNitto then passed the buck to Defendant Gadson, whom Defendant DiNitto stated was the person in charge of making all classification decisions for prisoners designated Security Risk Group members in the R.I.D.O.C.. Defendant DiNitto also directed plaintiff to "write R.I.D.O.C. Legal Counsel if I had anymore questions concerning my status." (See Exhibit "L" attached)

35.) On the date of 3 / 28 /2005, plaintiff did indeed write to Defendant Gadsden, as well as to R.I.D.O.C. Sr. Legal Counsel Attorney Patricia Coyne-Fague, but plaintiff never received any response back from Defendant Gadsen, or R.I.D.O.C. Sr. Legal Counsel Attorney Patricia Coyne-Fague, regarding plaintiff's issues and grievances pertaining to his placement in Close Management Segregation in the Florida D.O.C., and inadequate Rehabilitation programs and court ordered treatment.

36) Plaintiff, in a Good Faith effort, then wrote to Florida Department of Correction Officials Ms. Lynn Garst, and Ms. Sylvia D. Williams, at the Florida D.O.C.'s Interstate Corrections Compact Office, and explained in great detail the efforts of retaliation the plaintiff believes the R.I. D.O.C. officials are engaging in concerning plaintiff's transfer to the Florida D.O.C.. The plaintiff also emphatically pointed out to Ms. Garst and Ms. Williams in his letters, that after speaking to numerous Mental Health staff members at the F.S.P., the plaintiff had come to learn that the Florida D.O.C.'s F.S.P. could not provide the plaintiff with the adequate and meaningful treatment and rehabilitation, in which was court ordered for plaintiff, and was the main reason why plaintiff had agreed and consented to be transferred out-of-state. Plaintiff also requested in his letters to Ms. Garst and Ms. Williams, that plaintiff wanted to be sent back to the state of Rhode Island, or to be transferred to the Federal System where plaintiff could receive adequate programming, treatment, and rehabilitation.

37.) Plaintiff never received a response back to his letters that he sent to Ms. Williams, however, on the date of 5/11/2005, plaintiff did receive a response from a S. Cosson, who is a Florida Department of Corrections Correctional Services Consultant, and the response was in regards to the last letter plaintiff had sent to Ms. Garst back on the date of 4/14/2005. The response was to no avail for plaintiff, in regards to his grieved of issues he the plaintiff outlined to Ms. Garst, and infact, Correctional Services Consultant S. Cosson stated that "the Florida D.O.C. had no plans to recommend plaintiff's return to the state of Rhode Island." The response from S. Cosson also suggested that plaintiff "ask R.I. D.O.C. officials to send plaintiff back to Rhode Island", and that plaintiff's letter to Ms. Garst contained "several statements which could not be corroborated by plaintiff's record." (See Exhibit "M" attached)

38) Plaintiff then wrote back to Correctional Services Consultant S. Cosson, and directed S. Cosson's attention to the documents plaintiff had sent to Ms. Sylvia D. Williams in another good faith effort, so that S. Cosson could easily corroborate the statements that were made to Ms. Garst in plaintiff's letters. The documents plaintiff referred S. Cosson to, are the very same documents plaintiff has lettered as Exhibits "B", "B(a)", and "C" of plaintiff's instant complaint. As of the date of this Complaint, S. Cosson has not responded back to plaintiff's letter.

# CLAIMS FOR RELIEF

39.) The plaintiff's First Amendment Right to petition the Court by means of filing a Complaint/Motion to Compel against the Rhode Island Department of Corrections, was violated by the Retalitory actions of Defendant Wall's ultimate approval of any and all classification decisions pertaining to the plaintiff's transfer to the state of Florida, and to the plaintiff's placement on a close management segregation status in the Florida D.O.C..

40.) The plaintiff's First Amendment Right to petition the Court by means of filing a Complaint/Motion to Compel against the Rhode Island Department of Corrections, was violated by the retalitory actions of Defendant Gadsden's Special Risk Group recommendation, review, and approval of any and all classification decisions pertaining to the plaintiff's transfer to the state of Florida, and to the plaintiff's placement on a close management segregation status in the Florida D.O.C..

41.) The plaintiff's First Amendment Right to petition the Court by means of filing [redacted] a Complaint/Motion to Compel against the Rhode Island Department of Corrections, was violated by the retalitory actions of Defendant DiNitto's recommendation, review, facilitation, and approval, of any and all classification decisions pertaining to the plaintiff's transfer to the state of Florida, and to the plaintiff's placement on a close management segregation status in the Florida D.O.C..

# RELIEF REQUESTED

WHEREFORE, plaintiff request that the Court grant the following relief: A. Issue an injunction ordering defendants Wall, Gadsen, and DiNitto, to immediately arrange for the plaintiff to either:

1.) Be transferred back to the state of Rhode Island to the Rhode Island Department of Corrections, so that plaintiff can go back before a classification board for reconsideration of status, and so that defendants Wall, Gadson, and DiNitto, can arrange for the immediate devisement and implementation of plaintiff's court ordered treatment.

2.) Be brought before a classification board either in Rhode Island or the state of Florida, for purposes of discussion of the possibility of coordinating a transfer of the plaintiff back into the Federal System so that plaintiff could receive and engage in adequate and meaningful Rehabilitation and court ordered treatment.

3.) Be brought before a classification board either in Rhode Island, or Florida, for purposes of discussing the possibility of coordinating a transfer of the plaintiff to one of the states plaintiff had previously agreed and consented to be transferred to, as evidenced in plaintiff's stipulation which is lettered Exhibits "B";"B6" in the plaintiff's instant complaint.

B.) The plaintiff would further request respectfully, that the Court grant relief in the form of reimbursement of all legal expenses plaintiff incurred in bringing this action.

C.) Grant such other relief the Court deems plaintiff is entitled to.

8 / 29 / 2005

Respectfully Submitted

Craig C. Price, Pro-se

Craig C. Price #126556
Florida State Prison
7819 N.W. 228th Street
Raiford, Florida
32026-1200

Craig C. Price #126556
Charlotte Correctional Institution
33123 Oil Well Road
Punta Gorda, Florida
33955
↗ NEW MAILING ADDRESS ↖

***DECLARATION***

I, Craig C. Price, the plaintiff in the foregoing Complaint, declare under penalty of perjury that the foregoing stated in Complaint is true and correct.

8/29/2005

Craig C. Price, Pro-Se,

Craig C. Price #126556
Florida State Prison
7819 N.W. 228th Street
Raiford, Florida 32026-1200
(Dena Paolino · Garcia attorney on behalf)

Craig C. Price, *126556
Charlotte Correctional Institution
33123 Oil Well Road
Punta Gorda, Florida
33955

** NEW MAILING * ADDRESS

***NOTARIZATION***

Sworn to before me this 29th day of August, 8/29/2005

Dena Paolino Garcia

NOTARY PUBLIC

*not signed in my presence but with full knowledge as plaintiff's previous attorney and assistant in reviewing preparation of document
DPG.

# **TABLE OF CONTENTS**
# ***FOR EXHIBITS***


Exhibit "A", page ........................................ 3.

Exhibit "B", page ........................................ 6.

Exhibit "C", page ........................................ 6.

Exhibit "B(a)", page ........................................ 7.

Exhibit "B" & "B(a)", page ........................................ 7.

Exhibit "D", page ........................................ 8.

Exhibit "D", page ........................................ 8.

Exhibit "E", page ........................................ 8.

Exhibit "F", page ........................................ 9.

Exhibit "G". page ........................................ 9.

Exhibit "D", page .................... 10.

Exhibit "H", page .................... 10.

Exhibit "I", page .................... 10.

Exhibit "J", page .................... 10.

Exhibit "K", page .................... 11.

Exhibit "L", page .................... 11.

Exhibit "M", page .................... 12.

**DESCRIPTION OF**
***Exhibits In Complaint***

1.) Exhibit "A" on page 3. of complaint is the plaintiff's Complaint/Motion to Compel that plaintiff filed against the Rhode Island Department of Corrections.

2.) Exhibit "B" on page 6. of complaint is the Inmate Request For Transfer Out-of-State and the "Voluntary" Consent Form.

3.) Exhibit "C" on page 6. of Complaint is the two page letter plaintiff's counsel, Attorney Dena Paolino-Sarcia, sent to R.I. D.O.C. Sr. Legal Counsel Attorney Patricia Coyne-Fague.

4.) Exhibit "B(2)" on page 7. of complaint is the plaintiff's Family Court Order and Stipulation regarding plaintiff's Out-of-State transfer.

5.) Exhibits "B" & "B(2)" on page 7. of Complaint are described in the same manner as they have already been described above.

6.) Exhibit "D" on page 8. of complaint is the Referral and Report of Close Management.

7.) Exhibit "D" on page 8. of complaint, (specifically Section I of the Referral and Report of Close Management) is the cause of the second reference to Exhibit "D" on pg. 8.

8.) Exhibit "E" on page 8. of Complaint, is the Inmate Request Form inwhich was responded to by Florida D.O.C. classification officer Richard Robinson.

9.) Exhibit "F" on page 9. of Complaint, is the Inmate Request Form inwhich was responded to by Florida D.O.C. Classification officer Richard Robinson.

10.) Exhibit "G" on page 9. of Complaint, is the Inmate Request Form inwhich was responded to by Florida D.O.C. Classification officer Richard Robinson (this was the Informal Grievance that Mr. Robinson reduced to a Inmate Request).

11.) Exhibit "D" referenced to on page 10. of Complaint, specifically point attention to Section III of the Referral and Report of Close Management document.

12.) Exhibit "H" on page 10. of Complaint, is the Grievance and the response to plaintiff's first Grievance.

13.) Exhibit "I" on page 10. of Complaint, is the plaintiff's re-submitted Grievance and the response to it.

14.) Exhibit "J" on page 10. of Complaint, is the plaintiff's receipt of plaintiff's Grievance that plaintiff submitted to the Secretary of the Florida D.O.C..

15.) Exhibit "K" on page 11. of Complaint, is the Memo. from Lynn Garst, and the letter from Joseph A. DiNitto sent to Ms. Sylvia D. Williams.

16.) Exhibit "L" on page 11. of Complaint, is the letter Joseph A. DiNitto sent to plaintiff in regards, and in response, to plaintiff's grievances plaintiff had written to Mr. DiNitto about in regards to the plaintiff's Classification and Segregation Status.

17.) Exhibit "M" on page 12. of Complaint, is the letter plaintiff received from Florida D.O.C. Correctional Services Consultant S. Cosson, that was in regards to plaintiff's letter that plaintiff sent to Florida D.O.C. officials Ms. Lynn Garst.