Page 1 of Exhibit "C"

COPY

Patricia A. Coyne-Fague
Sr.Legal Counsel
Department of Corrections
40 Howard Avenue
Cranston, RI 02920

June 11, 2004

Re: Craig Price / out-of-state transfer

Dear Trish:

The purpose of this letter is to memorialize our previous conversations regarding the Department of Corrections' decision to transfer my client, Craig Price, to an out-of-state prison facility.

It is my understanding that Mr. Joseph DiNitto has prepared an extensive packet which he will be submitting to various states throughout the country. As I understand it, he has already submitted the transfer request and packet to at least one state and is awaiting a decision. Mr. DiNitto shall continue to submit the transfer packet to states until one is receptive.

As we previously discussed, Craig has indicated his preference to be sent to a Federal Prison facility. In the event that is not feasible, he has expressed a desire to be transferred to a state where he has family members: California , Chicago, New Jersey, Ohio or South Carolina.

Craig has also made it very clear that he is not amenable to a transfer to New Mexico, Virginia or any New England states. His valid reasoning is two-fold. First, because of the notoriety involving his case, Craig believes that the above-mentioned states would be problematic. Second, his research on various prisons has led him to determine that a Federal facility or a prison in either California, Chicago, New Jersey, Ohio or South Carolina would offer him the most extensive rehabilitative opportunities.

This brings me to my final issues. The impetus to transfer Craig out-of-state was the Department's realization that, due to various factors, it would be unable to provide him with the requisite and necessary rehabilitative treatment. As opined by Alan B. Feinstein in his May 26, 2004 recommendation, the most effective mental health treatment for Craig is a combination of

"individual psychotherapy with a cognitive-behavioral orientation...educational services...[and]...vocational services". However, "due to the immense notoriety of his case...such objective treatment [would be] impossible to deliver in this state". Therefore, "if successful personality change is to occur it needs to be in a place where he is judged and treated as a result of his current behavior and not behavior that occurred many years ago". It is imperative that the DOC keep this in mind as a transfer package is prepared. We are not merely seeking a transfer to any ole place but, hopefully, to a facility that is equipped to provide adequate and appropriate behavioral treatment in an objective atmosphere.

For this reason, it is also critical that the receiving state be made aware that Craig remains on "C" status because he agreed to maintain the status quo pending his transfer to the out-of-state facility. It could be detrimental to his transfer if the host state placed him at a similar classification level solely because of an erroneous assumption. In the past 24 months, Craig has had two bookings. In fact, during the preceding 14 months, he has not even incurred a single disciplinary infraction. Thus, it becomes apparent that his current classification has been decided on issues other than his disciplinary record. While my client and I are aptly aware that the DOC contributes minimally to an out-of-state prison's classification determinations, the department would be dealing disingenuously if they did not fully apprise the receiving state of the reason he is still in segregation at the High Security facility.

In closing, as the transfer packet is prepared and sent to various states and federal agencies, continue to bear in mind that the DOC has taken this path so that Craig may receive the most effective rehabilitation. Accordingly, we implore you to choose a state or federal facility which will most likely afford Craig this opportunity.

Thank you for your attention in this matter.

Sincerely,

Dena Paolino-Sarcia