**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **CRAIG C. PRICE** | : | |
| | : | |
| **vs.** | : | **C.A. No.: 05-389S** |
| | : | |
| **A.T. WALL, et al.** | : | |

**DEFENDANTS' OBJECTION TO**
**PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF**

Now come the Defendants in the above-entitled matter, by and through their attorney, and for the reasons argued in the accompanying memorandum of law, respectfully request this Court deny Plaintiff's Motion for Injunctive Relief.

Respectfully submitted:

Patricia A. Coyne-Fague #5198
40 Howard Avenue
Cranston, RI 02920
401-462-0145/401-462-2583 *fax*

**Certification**

I hereby certify that on the 15th day of December 2005 I sent a true copy of the within document by first-class mail postage pre-paid to: Craig C. Price, Charlotte Correctional Institution 33123 Oil Well Road Punta Gorda, Florida 33655.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **CRAIG C. PRICE** | : | |
| | : | |
| **vs.** | : | **C.A. No.: 05-389S** |
| | : | |
| **A.T. WALL, et al.** | : | |

MEMORANDUM IN SUPPORT OF DEFENDANT'S OBJECTION TO PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF

Now come the Defendants in the above-entitled matter, by and through their attorney, and hereby object to the Plaintiff's Motion for Injunctive Relief. The Defendants submit that the Plaintiff cannot meet the tests for issuance of injunctive relief, and therefore his motion should be denied.

I. Facts and Travel

Plaintiff Craig Price has filed the instant lawsuit, claiming that his transfer to a prison system in Florida was accomplished in retaliation for his exercise of his First Amendment rights.[1] In August, 2003, Price, through his attorney, filed in Rhode Island Family Court a "Motion to Compel" the Department of Corrections to provide him with mental health treatment and rehabilitative programming. During the course of the litigation, the Department of Corrections agreed to permit Price to voluntarily transfer to another state's prison system.[2] The Department's position was that Price's opportunity to be placed in general population was stymied by his notoriety, and that his rehabilitative

---

[1] Defendants have filed, contemporaneously with their objection to Plaintiff's Motion for Injunctive Relief, a Motion to Dismiss for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.
[2] Price had for years repeatedly made requests to both the current and prior Director of Corrections to permit him to serve his sentence in another state. Those requests had been denied.

goals would be better addressed in a system where he was less well-known.[3] In June, 2004, Price agreed, with the advice and consent of his attorney, to dismiss the Motion to Compel and be voluntarily transferred outside the State of Rhode Island. While Price indicated a preference for certain states, or the Federal system, no promises were made that he would be transferred to any particular state or to the Federal system, as the Department did not know which, if any, systems would be willing to accept him as a transfer, and in any event the Department certainly could not bind another state or the Federal government in a settlement agreement with Price. Moreover, the Department was cognizant of the fact that Price had been a difficult inmate to manage, having committed serious physical assaults against correctional staff in the past, and therefore there was a very real possibility that no other state would want to accept Price. The stipulation signed in the Family Court [which Price has designated as "Exhibit B" to his Complaint] stated that Price agreed to be voluntarily transferred to a prison "outside the State of Rhode Island." Price signed a "request for interstate transfer" form (which was attached to the stipulation in order to illustrate that Price was volunteering to be transferred) in which he articulated his reasons for the request. Within that paragraph Price indicated what prison systems he would prefer. However, Price's listing of preferences within his explanation of the reasons he sought transfer hardly constituted a

[3] In Rhode Island's small prison system, which mirrors Rhode Island's smallness as a state in general, Price's crimes are etched in the minds of many. Price's "celebrity status" was enhanced during the pendency of the litigation Price filed against the Department, in March 2004 when he agreed to a lengthy, 3-part feature in the Providence Journal, the state's main newspaper, in which he discussed in gruesome detail the murders he had committed as a juvenile. By agreeing to the article, Price unfortunately shined a spotlight on himself and his crimes precisely at a time when the Department was contemplating placing him into population. Price's renewed celebrity status and widespread knowledge of his crimes, however made it very difficult to move him through the system. At that point it became clear the Department needed to revisit Price's longstanding request to be transferred out of state. For a brief discussion of Price's most infamous crimes, see State v. Price, 820 A.2d 956 (R.I. 2003). The newspaper article may be viewed at http://www.projo.com/extra/2004/craigprice/ .

promise by the Department of Corrections that he would be guaranteed transfer to the system(s) he preferred. The stipulation governs: it stated "outside of the State of Rhode Island."

Rejected by the Federal system, as well as by Virginia, Colorado, Illinois, New Jersey, Ohio, Arkansas, and South Carolina[4], Price's application for transfer was ultimately accepted by the State of Florida. In October 2004, Price was transferred to the Florida prison system, transported there by the United States Marshals' service.

Displeased with his present surroundings, Price now alleges that he was sent to Florida in retaliation for filing the Motion to Compel. He has, in addition to filing his lawsuit, moved this Court to grant him temporary and permanent injunctive relief, requesting that the Department be ordered to bring him back to Rhode Island from Florida, to serve his prison term here. Price cannot meet the tests for the issuance of injunctive relief. Therefore, his motion should be denied.

II. The test for issuance of injunctive relief

It has long been established that there is a four-part test that the Court must use in determining whether to grant or deny preliminary injunctive relief. The four tests are as follows:

(1) the likelihood of success on the merits;
(2) the potential for irreparable harm if the injunction is denied;
(3) the balance of the relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and
(4) the effect (if any) of the court's ruling on the public interest.

[4] In fact, Price's application was sent to all of the systems that Price indicated a preference for, with the exception of California. Rhode Island does not have a compact agreement with California for the exchange of inmates. The only states that accepted Price's application were Florida and New Mexico.

Langlois v. Abington Housing Authority, 207 F.3d 43 (1st. Cir. 2000); Ross-Simons of Warwick, Inc., et.al., v. Baccarat Inc., 102 F.3d 12 (1st. Cir. 1996).

A. Price has no likelihood of success on the merits of his claim

Price cannot meet the first test of likelihood of success on the merits of his claim. As argued within their memorandum in support of their motion to dismiss, Defendants submit that Price has failed to state a claim upon which relief may be granted, and therefore he has no likelihood of success on the merits of his claim.

(i). *Figueroa v. DiNitto* is controlling in the case at bar

Price's lawsuit bears a striking resemblance to one filed in 2001 by another Rhode Island inmate, Bernardo Figueroa. Like Price, Figueroa had filed a legal action against the Department of Corrections. Like Price, Figueroa settled his legal action, agreeing to dismiss his case and be voluntarily transferred to a prison outside of the State of Rhode Island.[5] Like Price, Figueroa had a preference for a particular state, and, like Price, was ultimately sent to a state that was not on his wish list because his preferred state would not accept him. Like Price, Figueroa was displeased with his classification in the new prison system to which he was transferred (Virginia), and, like Price, filed a suit in this Federal District Court against the Department of Corrections and Joseph DiNitto claiming that his transfer was effected in retaliation for his pursuit of legal claims against the Department. In Figueroa's case, the defendants' motion for summary judgment was granted, and indeed, the Court specifically found that Figueroa's claim was "frivolous, and wholly without merit," inasmuch as he had ***agreed to be transferred***. *Figueroa v. DiNitto, et al.*, C.A. No. 01-137T, 2002 U.S.Dist. LEXIS 7039 (March 14, 2002). An

[5] A significant difference between Price and Figueroa is that Price had the benefit of legal counsel in formulating his decision to stipulate to the dismissal of his legal action while Figueroa was pro se.

identical finding should be made here, as Price consented to the transfer, and indeed pleaded for years to be transferred from the Rhode Island system.

In dismissing Figueroa's claims, this Court noted the high burden upon a Plaintiff to establish a claim for retaliatory transfer, citing McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979):

> In order to establish a claim for a retaliatory transfer, the plaintiff must demonstrate that the actual motivating factor for his transfer was because of his constitutionally protected activity. In other words, plaintiff must demonstrate that he would not have been transferred "but for" his constitutionally protected activity. * * * The requirement for a but for showing together with the wide latitude afforded prison officials in ordering transfers may make summary judgment particularly appropriate.

Furthermore, it has been well established that "even if the defendant had an impermissible reason for transferring the plaintiff, if a separate, permissible reason exists, the defendant will not be liable." Figueroa v. DiNitto, citing Graham v. Hendeson, 89 F.3d 75, 79 (2nd Cir. 1996); Goff v. Burton, 7 F.3d 734, 737 (8th Cir. 1993); Ponchick v. Bogan, 929 F.2d 419, 420 (8th Cir, 1991); and Scarpa v. Ponte, 638 F. Supp. 1019, 1027 (D.Mass. 1986). In Price's case, the Department recognized that Price's infamy was making it nearly impossible for him to progress through the system, and endeavored to assist him by sending him to a system where he would have more of an opportunity to progress[6], prior to his ultimate release from incarceration.[7] Price cannot meet the high burden imposed by the cases cited above, as his transfer was not retaliatory, was in fact part of the settlement of his legal claim, and the Department had an otherwise good reason to transfer him.

---

[6] It is apparent from his complaint that Price viewed this opportunity as a guarantee of placement in general population; a promise the Department never made and would be unable to impose on another prison system.

[7] Price's current release date is in 2022.

(ii). Price has no right to a particular classification

It seems that the impetus for Price filing his lawsuit is his displeasure with the classification decisions made by the Florida authorities that have resulted in Price being held in "close supervision;" a restrictive security classification. However, Price's displeasure alone does not form the basis for a cognizable claim, as "[t]here is no federally-protected right to a particular classification or even to an error-free decision by the state authorities." *Palmigiano v. Mullen*, 491 F.2d 978, 980 (1st Cir. 1974). Rhode Island's Supreme Court has made it equally clear that prison inmates have no liberty interest in the inmate classification system, and that the Director of Corrections has exclusive and final discretion over the classification of inmates. *Bishop v. State*, 667 A.2d 275, 277 (R.I. 1995). Therefore, because Price has no protected liberty interest in a particular classification, his claims regarding the supervision level that the State of Florida has imposed on him have no likelihood of success.

Inmate Price voluntarily consented to be transferred "outside the state of Rhode Island." He was transferred to Florida. His subsequent displeasure with the state system that accepted his transfer cannot support a retaliation claim against the Defendants. His complaint fails to state a claim upon which relief may be granted. The Defendants respectfully submit that Price has no likelihood of success on the merits of his claim, and therefore his motion for injunctive relief fails the first, threshold test.

B. Price cannot demonstrate irreparable harm

A court will issue a TRO or a preliminary injunction to preserve the status quo and to prevent irreparable harm until the court has an opportunity to rule on the merits of the Complaint. See *Rodriguez v. Wall*, 2000 U.S. Dist. LEXIS 14447, 6-7 (D.R.I. 2000),

citing Penn v. San Juan Hospital., Inc., 528 F.2d 1181, 1185 (10th Cir. 1975); Devose v. Herrington, 42 F.3d 470 (8th Cir. 1994). The question of what constitutes irreparable harm is a factual determination, which should be made on the basis of the particular circumstances of each case. School Committee of Pawtucket v. Pawtucket Teachers' Alliance Local No. 930, 117 R.I. 203, 365 A.2d 499 (1976).

Price cannot demonstrate irreparable harm in not being brought back to Rhode Island, as he has no right to be incarcerated in any particular prison, nor within any particular state. As the U.S. Supreme Court has noted, corrections compacts between States, implemented by statutes, authorize incarceration of a prisoner of one State in another State's prison. See, e. g., Cal. Penal Code Ann. § 11189 (West 1982) (codifying Interstate Corrections Compact); § 11190 (codifying Western Interstate Corrections Compact); Conn. Gen. [*247] Stat. § 18-102 (1981) (codifying New England Interstate Corrections Compact); § 18-106 (codifying Interstate Corrections Compact); Haw. Rev. Stat. § 355-1 (1976) (codifying Western Interstate Corrections Compact); Idaho Code § 20-701 (1979) (codifying Interstate Corrections Compact); Ky. Rev. Stat. § 196.610 (1982) (same). Olim v. Wakinekona, 461 U.S. 238, 246-248 (U.S. 1983)

> "It is neither unreasonable nor unusual for an inmate to serve practically his entire sentence in a State other than the one in which he was convicted and sentenced, or to be transferred to an out-of-state prison after serving a portion of his sentence in his home State. Confinement in another State, unlike confinement in a mental institution, is 'within the normal limits or range of custody which the conviction has authorized the State to impose.' Even when the transfer involves long distances, * * * the confinement remains within constitutional limits." Olim v. Wakinekona, 461 U.S. 238, 246-248 (U.S. 1983), other citations omitted.

Because Price's transfer to Florida was voluntary, and because it would have been constitutionally permissible even if involuntary, Price can demonstrate no irreparable harm in remaining in the Florida prison system.

C. The balancing of the hardships favors the Defendants

The tests for whether or not a preliminary injunction should issue continue onto the "balancing of the hardships" only when the court has found that the moving party has met the first (likelihood of success on the merits) and second (irreparable harm for which no legal remedy exists) tests. See, *The Fund for Community Progress v. United Way of Southeastern New England*, 695 A.2d 517, 521 (RI 1997), other citations omitted. ["the trial justice should next consider the equities of the case by examining the hardship to the moving party if the injunction is denied, the hardship to the opposing party if the injunction is granted, and the public interest in denying or granting the requested relief."] As argued, the Plaintiff cannot meet these first two tests, and so Defendants submit that this Court need not engage in any balancing of the hardships. Nevertheless, Defendants argue that if this Court were to consider the equities in this case, the Plaintiff's Motion should be denied.

The hardships to the Defendants if Price's motion were to be granted are manifold. First, the State would have to bear the expense of transporting Price back to Rhode Island from Florida. This expense would be unreasonable to impose, as it was Price who asked to be transferred to another system. Furthermore, to permit prison inmates to move back and forth as their whims or displeasures dictate, at state expense, is a hardship against the Defendants, as it interferes with their ability to manage inmates. Finally, the physical transport of Craig Price, a high security inmate, presents significant risks and dangers which weigh against both the Defendants' and the public's interests.

D. The public interest favors denial of Plaintiff's motion

As argued, in addition to the financial expense that the public would have to bear in order to transport Price back to Rhode Island, the public has an interest in the management of criminal offenders. The transfer of inmates to facilities where they can be best managed in a safe and orderly manner is paramount to the public interest. The transportation back and forth between states of violent criminal offenders places officers, inmates, other staff, and the public at risk for escape or further violent acts. The public has a deep interest in the avoidance of this risk. The public's interest clearly outweighs the interest of an inmate who asked for a transfer and now decides that wants to return to the prison system that he thought he wanted to leave.

III. Price has no independent right to be transported at public expense to litigate his cases in Rhode Island

Within his motion for injunctive relief, Price states "the harm the defendants will experience if the Court grants the order will consist of the transferring of the plaintiff back to the state of Rhode Island, which is something defendant will have to soon do anyway because the plaintiff does have pending litigation [in state and federal court] and the plaintiff's presence in each one of the these courts will be demanded because the plaintiff is pro se in each pending proceedings for litigation." (Plaintiff's Memorandum, page 4). Clearly the Plaintiff misapprehends the law concerning the right of a prison inmate to be present for a civil proceeding, as well as the law concerning the transport of such an inmate at public expense.

"It is clear that a prisoner does not even have a constitutional right to be present at a civil trial to which he is a party. Therefore, it follows that a prisoner has no

constitutional right to be transported to the trial, free of charge." Manning v. Tefft, 839 F.Supp. 126, 129 (D.R.I. 1994) other citations omitted. See also Martin v. Potter, 635 F.Supp. 645 (D.V.I. 1986), Holt v. Pitts, 619 F.2d 558 (6th Cir. 1980); and Stone v. Morris, 546 F.2d 735 (9th Cir. 1976). In Stone, the 7th Circuit Court of Appeals held that a district court should consider a number of factors when determining whether to transport a pro se prisoner to attend his civil trial, including: "cost and convenience of transporting a prisoner from his place of incarceration to the courtroom, any potential danger or security risk which the presence of a particular inmate would pose to the court, the substantiality of the matter at issue, * * * [and] the probability of success on the merits * * *" Id., at 647. The Defendants submit that were this Court to utilize those factors it would reasonably conclude that Price should not be "transported anyway" to Rhode Island to litigate his case. Indeed, this Court has routinely declined to order the expenditure of public funds in order to transport a prisoner to Rhode Island to litigate his civil claims. See., e.g., Figueroa v. DiNitto, C.A. No. 03-186ML, 2005 U.S. Dist. LEXIS 16624.

IV. Conclusion

For all of the reasons argued above, the Defendants submit that the Plaintiff cannot meet the tests for issuance of injunctive relief, and that his prayer for an order to transport him back to Rhode Island should be denied.

Respectfully submitted:

Patricia A. Coyne-Fague #5198
40 Howard Avenue
Cranston, RI 02920
401-462-0145/401-462-2583 *fax*

**Certification**

I hereby certify that on the 15th day of December 2005 I sent a true copy of the within document by first-class mail postage pre-paid to: Craig C. Price, Charlotte Correctional Institution 33123 Oil Well Road Punta Gorda, Florida 33655.

Patricia A. Coyne-Fague