UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CRAIG C. PRICE

vs. C.A. No.: 05-389S

A.T. WALL et al.

## **PLAINTIFF'S OBJECTION AND**
## ***RESPONSE TO*****
## **DEFENDANT'S MOTION TO DISMISS**

Now comes the Plaintiff, Craig C. Price, Pro se, in the above entitled matter, and hereby moves to Object and respond to the defendant's Motion To Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

For the reasons stated in the Plaintiff's accompanying Declaration and the Plaintiff's accompanying Memorandum of Law, the Plaintiff prays that this Honorable Court will deny the Defendant's Motion To Dismiss in its entirety.

1/03/06

Respectfully Submitted:

Craig C. Price #126556, pro se

Mr. Craig C. Price #126556 Pro Se
Charlotte Correctional Institution
33123 Oil Well Road
Punta Gorda, Florida, 33955

**CERTIFICATION**

I hereby certify that on the 3rd day of January 2006. I sent a true copy of the Plaintiff's Objection and Response to Defendant's Motion To Dismiss, a true copy of the Plaintiff's Memorandum In Support of Plaintiff's Objection to Defendant's Motion To Dismiss, and a true copy of Plaintiff's Declaration In Support of Plaintiff's Objection to Defendant's Motion To Dismiss, to Defendant's Counsel Patricia A. Coyne-Fague #5198, at 40 Howard Avenue, Cranston, Rhode Island, 02920.

Craig C. Price #126556 Pro se

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CRAIG C. PRICE

Vs. C.A.No.: 05-389S

A.T. WALL, et al

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION TO DISMISS**

Now comes the plaintiff in the above entitled matter, and hereby moves in this Honorable Court to dismiss the Defendant's Motion To Dismiss that defendants have filed pursuant to Rule 12(b)(6).

As argued below, the plaintiff's complaint has stated a Claim upon which relief may be granted, and defendants have failed to demonstrate to the Court that it has not. The plaintiff respectfully request that defendant's Motion be denied.

**STATEMENT OF THE CASE**

This is a Civil Rights Action brought under 42 U.S.C. 1983 filed by a State prisoner from the Rhode Island Department Of Corrections A.C.I.S. Super Max, seeking injunctive relief based on Retaliation and retaliatory transfer for engaging in the constitutionally protected conduct of filing a Complaint/Motion To Compel for Court Ordered Treatment against Rhode Island Department Of Corrections Officials.

**STATEMENT OF THE FACTS**

The instant action before the Court alleges retaliation and a retaliatory transfer of plaintiff to the Florida Department of Corrections for exercising his First Amendment Right.

In August, 2003, the plaintiff engaged in constitutionally protected conduct by filing through Counsel a Complaint/Motion To Compel against R.I.D.O.C. officials. The Complaint/Motion To Compel was filed against defendants because defendants were steadfastly refusing to give the plaintiff Court Ordered Treatment which is a specific condition of the prison sentence the plaintiff is now currently serving. (See Exhibit A of plaintiff's complaint to verify this fact regarding court ordered Treatment)

During the Course of litigation that ensued because of the Complaint/Motion To Compel, (and after repeated efforts by R.I.D.O.C. officials to make excuse after excuse with fraudulent reasons to deny the plaintiff an up-grade in status which would allow plaintiff access to Court Ordered Treatment the defendants said awaited plaintiff once plaintiff **attained** an upgrade in status), in June 2004, the Defendants offered the plaintiff to be sent Out-of-State *voluntarily* so that plaintiff could be sent to a prison facility that could provide the Court Ordered Treatment in which R.I.D.O.C. officials had finally admitted they could not deliver.

The plaintiff, upon consideration, and upon the advice of his counsel that represented plaintiff in the matter, then consented and stipulated to be transferred to the states of *Illinois*, *New Jersey*, *Ohio*, *California*, *South Carolina*, or the *Federal System*, because the plaintiff not only wanted to attain (or rather retain) the ability to stay connected to his family, but most importantly, (especially concerning the Federal System and the vast array of Rehabilitative programming the Federal System Offers), the plaintiff and plaintiff's counsel was led to believe that Defendants and Defendant's Counsel would honor their responsibility and duty, and be certain that plaintiff would be transferred to a prison facility that could adequately carry out the mandates of plaintiff's prison sentence and Court ordered treatment.

Furthermore, the plaintiff, through counsel, also agreed to dismiss the Complaint/Motion To Compel filed against the R.I.D.O.C., because the plaintiff, and plaintiff's counsel, was once again led to believe by Defendant's Counsel that Defendants would honor their responsibilities and duties, and be certain that plaintiff would be transferred to a prison system that could carry out the mandates of plaintiff's prison sentence and Court Ordered Treatment (something the Defendants readily admit they could not do).

In October 2004, the plaintiff was indeed transferred, however, the plaintiff was transferred to the Florida D.O.C., which was not a state the plaintiff consented to be transferred to. Moreover, upon the plaintiff's arrival to the FLA. D.O.C., plaintiff was casted into a Close Management Segregation facility, whereupon plaintiff was told by a FLA.

D.O.C. official that the plaintiff was a "*Involuntary Transfer*" for "*Disciplinary*" reasons, and that because plaintiff "*liked to cause trouble with the administration at the prison where plaintiff was from, the plaintiff would be referred to be placed on Close Management One,*" (the most restricted close management segregation status). (See plaintiff's Complaint for above quotes)

ALL throughout the plaintiff's incarceration within the FLA. D.O.C., the plaintiff has not been able to engage or receive the Court Ordered Treatment which is a specific condition of plaintiff's prison sentence. Furthermore, even more troubling, the plaintiff has been informed by numerous FLA. D.O.C. officials, that they are unaware of any Court Ordered Treatment for plaintiff.

The plaintiff himself, and through Counsel, has attempted through good faith efforts and exhausting administrative remedies (both in R.I. D.O.C. and FLA. D.O.C.), to rectify and resolve the abundant misconceptions and misinformation that left plaintiff in segregation, and without court Ordered Treatment in a State in which plaintiff did not consent to be transferred to. But to no avail did plaintiff's efforts, or that of plaintiff's counsel's efforts prevail.

The plaintiff now has filed the instant Complaint within the federal District for the District of R.I., alleging retaliation and that plaintiff was subjected to a retaliatory Transfer because plaintiff engaged in constitutionally protected conduct which was exercising his First Amendment Right by filing a Complaint/Motion To Compel against the R.I. D.O.C..

The Defendants now seek a Motion To Dismiss pursuant to Rule 12(b)(6), arguing that plaintiff's complaint fails to state a claim upon which relief may be granted. The plaintiff now argues in response to Defendant's Motion, that it is the defendants who have failed to establish a valid argument upon which their 12(b)(6) Motion should be granted.

# *** STANDARD ON 12(b)(6) ***
# ** MOTION **

In evaluating a Motion To Dismiss, the court "must accept all well-pleaded factual allegations of the complaint as true and construe the complaint in in the light most favorable to the plaintiff." (See Wallin V. Norman 317 F.3d 558-61, quoting Inge V. Rock Fin. Corp. 281 F.3d 613, 619, (6th Cir 2002; But See also, Roth Steel Products V. Sharon Steel Corp. 705 F.2d 134, 155 (6th Cir. 1983); and Scheuer V. Rhodes 416 U.S. 232, 236, 94 S.Ct. 1683 (1974)).

The court also considers only the allegations in the complaint, and the court should dismiss the plaintiff's complaint only if it *appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief,*" See Conley V. Gibson 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957).

Here in the instant complaint, the plaintiff has alleged that he was subject to retaliation and a retaliatory transfer because he exercised his First Amendment Right by filing a Complaint/Motion To Compel against R.I.D.O.C. officials.

In pleading such a claim, at a minimum, the plaintiff's instant complaint alleges "*a chronology of events from which retaliation may plausibly be inferred*", (See Cain V. Lane 857 F.2d. 1139, 1143, N.6 (7th Cir)).

From the filing of plaintiff's Complaint/Motion To Compel Court Ordered Treatment, (See plaintiff's Exhibit "A" of Complaint), to the stipulation and agreement to Dismiss plaintiff's Complaint/Motion To Compel, and to send plaintiff out-of-State, (See plaintiffs Exhibit "B(2)" of Complaint), to the plaintiff's transfer and close Management segregation placement within a state the plaintiff did not consent to be transferred to. (See plaintiff's Exhibit "D", and again Exhibit "B(2)", to plaintiff's complaint), the plaintiff can prove that he engaged in constitutionally protected conduct, and that said conduct was a substantial and motivating factor in the decision to transfer the plaintiff to the FLA. D.O.C..

In furthering plaintiff's contention that he was subject to retaliation and a retaliatory transfer, and that the plaintiff has stated a valid claim upon which relief may be granted, that plaintiff respectfully submits that he can satisfy "4" significant burdens below, in which he prays the court will give due consideration. The "4" burdens are as follows:

1) A Specific Constitutional Right -

In satisfying this burden, the plaintiff states that his Specific Constitutional Right is his First Amendment, and that he exercised this Right by filing a Complaint/Motion To Compel Against R.I.D.O.C. officials in order to Compel Court Ordered Treatment.

2) Defendant's intent to Retaliate against plaintiff for exercising his First Amendment -

In satisfying this burden, the plaintiff alleges that because defendants were upset that plaintiff filed a Complaint/Motion To Compel against the D.O.C., and that plaintiff was trying to Compel R.I. prison officials to devise and implement Court Ordered Treatment for him, (which would consequently result in an up-grade in status, wherein plaintiff would be released from a restricted segregation status and returned back to general population), the Defendants decided to retaliate against plaintiff.

3) A Retaliatory Adverse Act -

In satisfying this burden, the plaintiff alleges that the defendant's Counsel, and defendants, disingenuously engaged in legal negotiations with counsel for the plaintiff, and that defendants, and counsel for defendants, never really intended to honor the resultant agreement reached by the plaintiff's and defendant's attorneys.

Through Counsel, Plaintiff agreed to voluntarily transfer out-of-State, and plaintiff based his agreement to be sent out-of-state, on the understanding defendant's Counsel departed to plaintiff's counsel, that plaintiff would be sent to one of the stipulated states, and that the prison system would be able to address adequately the mandates of the plaintiff's prison sentence and the specific condition of court ordered Treatment the plaintiff should lawfully receive.

However this never happened, and infact, the plaintiff was sent to a state that he did not consent to, a state that could not adequately address plaintiffs Court Ordered Treatment, and that because of defendant's blatant misinformation concerning plaintiff's long ago altercations with staff, and plaintiff's transfer being labeled as a disciplinary one as opposed to a voluntary one, the plaintiff was then placed unfairly on an "even more" restricted segregation status the plaintiff was on back in the R.I.D.O.C..

4) Causation -

In satisfying this burden, the plaintiff claims that had not the R.I.D.O.C. prison officials decided to transfer the plaintiff because plaintiff had filed a Complaint/Motion To Compel against them in an effort to Compel Court Ordered Treatment, then plaintiff would not have been retaliated against and transferred out-of-state in such a retaliatory manner. Furthermore, had not defendant's intentionally and blatantly given Florida D.O.C. prison officials highly inflamatory misinformation about plaintiff's past institutional record involving altercations with staff, and had not defendant's blatantly and intentionally labeled plaintiff's transfer status as one being disciplinary as opposed to one as voluntary, then plaintiff would not have been placed on the restricted status of Close Management One, in a state inwhich plaintiff did not consent or stipulate to be sent to.

The plaintiff's complaint respectfully meets the criteria of satisfying each one of the above "4" enumerated burdens, and by doing so, the plaintiff has stated a valid claim upon which relief may be granted.

# **FIGUEROA vs. DiNITTO**
# ***IS NOT***
# **CONTROLLING**

In defendant's Motion To Dismiss, counsel for the defendants has relied on the case of Figueroa v. DiNitto, et al., C.A. No. 01-137T, 2002 U.S. Dist. LEXIS 7039 (March 14, 2002), claiming that this case has a striking resemblance to the instant matter before the Courts. The defendant's counsel also suggest that the only degree of differentiality in terms of significance between Figueroa and the case at bar, is that while Figueroa was representing his case pro se, the plaintiff had the benefit of counsel during the course of litigation in regards to plaintiff's Complaint/Motion To Compel. (See Fn.*4 on pg. 4 of defendants Memorandum In Support of Motion To Dismiss)

The plaintiff would emphatically argue that the case of Figueroa carries virtually no substantial similarities to the plaintiff's instant case, and that Figueroa is completely inept and too far reaching to be seriously considered as a controlling case governing this matter.

For the sake of brevity, the plaintiff would point out several key "significant" factors that clearly distinguishes plaintiff's case from Figueroa's. The factors are as follows:

a.) The plaintiff filed a Complaint/Motion To Compel against the R.I.D.O.C. in order to compel the R.I.D.O.C. to give the plaintiff Court ordered treatment which was a specific condition of plaintiff's current prison sentence. Figueroa did not.

b.) The plaintiff's complaint alleges that by stipulation the plaintiff had only agreed to dismiss his Complaint/Motion To Compel, and by further stipulation had only consented to be transferred to specific states or the Federal System for purposes of attaining Court Ordered Treatment the defendants could not provide. Figueroa did not.

C.) The plaintiff's complaint sufficiently alleges and sets forth a chronology of events that can plausibly infer retaliation, and that the plaintiffs complaint can establish a connection between plaintiff's legal activity and the defendant's decision to transfer plaintiff Out-of-State. Obviously and apparently the case of Figueroa did not.

These several key significant factors alone should mark a chasm of distinction between the Figueroa case and that of the plaintiff's. However, the defendants, in their desperate endeavor to persuade the Court to blindly adopt and apply the findings of Figueroa, attempt to argue under the collective banner of a selected and misplaced citing of language gleaned from cases such as Graham V. Henderson, 89 F.3d 75,79 (2nd Cir. 1996); Goff v. Burton, 7 F.3d 734, 737 (8th Cir. 1993); Ponchick V. Bogan, 929 F.2d 419,420 (8th Cir. 1991); and Scarpa V. Ponte, 638 F.Supp. 1019, 1027 (D.Mass 1986), which stated:

"*Even if the defendants had an impermissible reason for transferring the plaintiff, if a separate, permissible reason exists, the defendant will not be liable.*" (See defendant's Memorandum In Support of Motion To Dismiss, pg. 5)

Simply put, the plaintiff makes the averment that since the impermissible reason of retaliation cannot be a permissible reason to have transferred plaintiff, then the plaintiff respectfully argues that no "*separate permissible reason existed to transfer him.*"

As much as the defendants and defendant's counsel would like to claim that the "*Notoriety*" of plaintiff is a permissible reason to transfer plaintiff, the defendants have not established to the Court any tangible proof showing cause in satisfaction to this claim.

The defendants have not, (nor can they), establish any danger or harm the plaintiff was in while incarcerated at the Rhode Island D.O.C.. The defendants have not, (nor can they), Name any enemies the plaintiff has within the Rhode Island D.O.C. that would cause the plaintiff harm or place him in any danger. The defendants cannot even establish the penological interest of rehabilitation and rehabilitating the plaintiff, because the plaintiff is not even receiving the court ordered treatment which is a specific condition of plaintiff's current prison sentence.

All the defendants have alleged, is that plaintiff is Notorious, and that recent Media exposure enhanced plaintiff's so called, (and grossly termed), "*celebrity status*," in which stymied and affirmatively caused prison official's contemplations to place the plaintiff back into the general population, to take on a declinable disposition. (See Ft.N. 2 on pg. 2 to defendants Memo. In support of Motion To Dismiss).

The plaintiff contends that Nothing further could be from the truth, and that the Court should take exceptional Notice, (respectfully), to this particular "*spin*" the defendant's counsel has so brazenly proclaimed before the Court.

The plaintiff would respectfully point out and ask the court to consider, that the reality, and underlying fact behind the reality, as to why the plaintiff engaged in a interview with a reporter from the state's main Newspaper, was because the defendants were covertly denying the plaintiff court ordered Treatment.

This Court Ordered Treatment, (which is the very same court Ordered Treatment that formed the basis to the plaintiff filing his Complaint/Motion To Compel against the R.I. D.O.C.), was treatment the defendants were not only out-right Refusing to give the plaintiff, but treatment which was actually being used as one of the main justifications as to why the plaintiff was being warehoused and kept in perpetual segregation.

Furthermore, the R.I. D.O.C. officials were out-right lying on the plaintiff by continually propagating the insidious fabrication that the plaintiff was steadfastly refusing to discuss the contents of past juvenile crimes,

inwhich according to defendants (and defendants agents), was the very reason why the R.I. D.O.C. has been precluded from carrying out their obligations regarding Court Ordered Treatment, (see Exhibit "E", attached to plaintiff's Declaration In Support of plaintiff's Objection and Response to defendant's Motion To Dismiss).

By engaging in the interview with the reporter from the Newspaper, and by discussing through a public medium exactly what the defendants, and defendant's agents, were covertly saying I would not discuss behind closed doors, this overt tactic by the plaintiff left defendants bereft of their lies they were portraying against the plaintiff.

The defendants were obviously quite upset the plaintiff exposed their lies, and seeing that plaintiff had defendants already in Court to Compel Court ordered treatment, (Court ordered treatment that the defendants knew they couldn't provide, and moreover, court ordered treatment defendants knew they had no intentions to provide the plaintiff with), the defendants then engaged in disingenuous negotiations to persuade the plaintiff and plaintiff's counsel to Dismiss the Complaint/Motion To Compel, so that defendants could retaliate by transferring the Craig Price Legal Headache away

Furthermore, it should duly be noted here, (since the defendants have attempted to shield themselves behind the lame excuse of Media attention in regards to transferring plaintiff on this so-called permissible ground), that Media attention surrounding the plaintiff, is as old as the State's Maximum Security.

The plaintiff has been subject to hundreds of Media out-lets such as: Local and National Newspaper Articles, Local and National magazine Articles, Local and National Television News and News Magazine Shows, Television documentaries, and even Novels (in which the last one came out in the year of 1999-2000), at no time, (Not even once), did the defendants deem any of this Media exposure as a permissible reason to transfer the plaintiff Out-of-State.

Infact, while it is true the plaintiff has indeed asked on several occasions to be transferred Out-of-State, Not once did defendants find it feasible to agree, or yield, to the rationale of plaintiff's Notoriety.

Just the allegations that plaintiff is Notorious, and that there is sensationalism by media out-lets, should not be a cognizable and legal ground upon which a penological interest should be founded. These allegations alone, do not even allege how the plaintiff's Notoriety, or how the plaintiff's media exposure, impact the penological interest of issues such as maintaining security discipline, order, or even rehabilitation.

These allegations are empty and unfounded, and because they are, they do not have any bearing on the penological interest that establishes a permissible reason to transfer plaintiff and should be rejected by the court.

**PLAINTIFFS SEGREGATION**
***AND***
**CLASSIFICATION STATUS**

The placement of plaintiff in a restricted close management segregation status, is a placement the plaintiff has sufficiently alleged is directly related and linked to plaintiff's legal activity.

Upon reviewing paragraphs 22), 23), and 24), on page "7" and "8" of plaintiffs complaint, and upon reviewing Exhibit "D" attached to plaintiff's complaint, the plaintiff has made sufficient allegations in which reasonably connect his placement in segregation, to the exercising of his First Amendment Right by virtue of filing a Complaint/Motion To Compel against the R.I.D.O.C.

In particular, the plaintiff would emphasize paragraph (24) on page "8" of plaintiff's complaint, wherein the plaintiff has alleged that a Florida D.O.C. official stated to the plaintiff the following:

"you pull any smart moves down here, especially with the legal stuff, you could end up with forever. Just stay off your door, and do as your told, and we might let you breathe some"

(Quoted in part, from paragraph 24, pg. 8 of Complaint)

This Kind of statement the plaintiff has alleged a Florida D.O.C. official made, not only speaks to the plaintiff's Claim of retaliation, but this statement is one of many factors the plaintiff has alleged in his complaint that demonstrates how the adverse act of defendants (i.e. retaliatory transfer), has impacted plaintiff.

A further extension of the consequences produced from the defendants adverse act of a retaliatory transfer, can also be seen by reviewing plaintiff's complaint, as to where plaintiff alleges that the defendants had provided Florida D.O.C. officials with blatant and highly inflamatory misinformation that undeniably contributed to plaintiff's placement on a close management segregation status.

For example, in paragraph(23) on page 8 of plaintiff's complaint, the plaintiff alleges that a FLA. D.O.C. official stated: "the plaintiff was an involuntary disciplinary transfer, and because plaintiff liked to cause trouble with the administration at the prison where plaintiff was from plaintiff would be referred to be placed on close management one segregation status which was the most restricted close management status."

In paragraph (24), again on page 8 of plaintiffs complaint, the plaintiff has alleged that a FLA. D.O.C. official stated that: "They told me all about you, so save your breath I know your a interstate Compact disciplinary transfer, and I know you injured one officer so severely that the officer had required hospitalization for an extended period of time."

(emphasis added, see pg. "8" par. 24 of Complaint, and see also Exhibit "D" attached to complaint for verifications of these remarks. it should also be noted that plaintiff has never escaped from prison, and nor has plaintiff injured any officer so severely that an officer had required hospitalization for an extended period of time).

The plaintiff would also respectfully implore the court heavily consider the plaintiff's documentary exhibits attached to plaintiff's complaint, because it is through these documentary exhibits one can easily discern that a disinformation campaign has been waged against the plaintiff.

From the controversy surrounding FLA. D.O.C. official's perception that plaintiff's transfer is disciplinary as opposed to voluntary, to the above described and quoted paragraphs from plaintiff's complaint, all the disinformation, and all the inflamatory, inaccurate, and misleading information given to FLA. D.O.C. officials about the plaintiff could only logically come from the defendants efforts, and these efforts fit precisely with the plaintiff's allegations of Retaliation.

Finally, as an aside to defendants statements concerning whether the plaintiff has, or does not have, the right to a particular classification status, or whether a due process and liberty interest claims does or does not affect the plaintiff, the plaintiff would argue that although classification is not the focus of plaintiff's retaliation claim in his complaint, classification is most certainly a consequential circumstance the court should consider in regards to determining the defendants adverse act of committing a retaliatory transfer.

Furthermore, in regards to a liberty interest, or due process violation involving plaintiff's transfer, this argument would most likely hinge upon whether the defendants would now claim that they involuntarily transferred plaintiff, (due to disciplinary reasons or what have you), as opposed to the plaintiff being voluntarily transferred. Either way, arguments of this nature have not been litigated thoroughly within the court, (with the exception of Bishop V. State 667 A.2d 275, or Palmigiano V. Mullen, 491 F.2d 978, but these cases are lacking concerning plaintiff's issues, and do not represent the due process and liberty interest arguments that would impact the plaintiff's particular situation and circumstances).

Prison officials action or inaction with respect to program, job, or classification matters also may deprive plaintiff of a liberty interest if it affects parole eligibility, or good time credits, and certain program and classification statutes such as R.I.G.L. 42-56-29, 30, and 31, or certain statutes providing for "Industrial Good Time" and "Good Time Credits," that may indeed create liberty interest for the plaintiff, thus triggering due process protections and safeguards.

These legal questions are purely skepticisms at this point because they do not impact the plaintiff's Retaliation claim in the manner as defendant's Counsel has tried to suggest. Moreover, this type of legal argument would more than likely include interpretations of state statutes and law in which state machinery (i.e. State Court), may possibly be more appropriate forum to argue such issues should the need of further litigation on these matters arise.

# ***CONCLUSION***

Although the plaintiff had voluntarily transferred, the plaintiff did not agree to be transferred to the state of Florida. The plaintiff only agreed by stipulation to be sent to the States of Ohio, Illinois, New Jersey, California, South Carolina, or the Federal System as evidenced by plaintiff's Exhibit B(2) of plaintiff's complaint, which states: "Craig Price agrees to be volutarily transferred to a correctional facility outside the State of Rhode Island, as evidenced by his written consent attached hereto."

(emphasis added)

The plaintiff argues that just because the defendants have now taken on the blatant cold shoulder attitude that consist of *hey look, the plaintiff transferred voluntarily, so now anything goes and we can send him anywhere we want or design to send him,* Respectfully, the plaintiff would ask the court to focus on, and consider, the above emphasized lines that states clearly "*as evidenced by his written consent attached hereto*"; because the written consent attached hereto only consents to the stipulated states of Ohio, Illinois, New Jersey, California, South Carolina, and the Federal System.

The defendants have claimed that these states, (as well as others in which the plaintiff never stipulated and consented to be transferred to), had declined to receive the plaintiff, and this makes the plaintiff ponder the question:

"If the defendants have sent FLA. D.O.C. officials all this disinformation as part of the adverse act of a retaliatory transfer that was central to plaintiff's close management segregation placement, then what other disinformation might have the defendants sent to the other states and the Federal System that made these systems decline to receive plaintiff as a prisoner?"

The plaintiff's complaint states a valid claim upon which relief may be granted, and for the reasons that have been set forth in the plaintiff's objection and response to the defendant's Motion To Dismiss, the Court should not respectfully grant the defendant's Motion. The plaintiff has presented sufficient evidence within the foregoing response and objection, as well as in plaintiff's Declaration In Support to plaintiff's response and Objection. to raise a question of material fact about whether retaliation was a substantial factor in the plaintiff's transfer to the Florida Department of Corrections, and his close management segregation placement within the said Florida D.O.C..

The plaintiff prays the Court will respectfully deny defendant's 12(b)(6) Motion To Dismiss.

Respectfully Submitted

Craig C. Price pro se #126556

Craig C. Price pro se 126556
Charlotte Correctional Institution
33123 Oil Well Road
Punta Gorda, Florida
33955

**CERTIFICATION**

I hereby certify that on the ______ day of ____________, 200__, I sent a true copy of the within document by U.S. Mail to Attorney for defendants Patricia A. Coyne-Fague #5198, at 40 Howard Avenue, Cranston, Rhode Island, 02920

Craig C. Price #126556 Craig C. Price pro se #126556

**NOTARIZATION**

I Craig C. Price, #126556, the plaintiff, have made the foregoing Memorandum In Support of the plaintiff's objection and Response to the Defendant's 12(b)(6) Motion To Dismiss

1/3/06

Sworn to Before me this 3rd, day of January, 2006.

Kara R. Williams
Notary Public

NOTARY PUBLIC-STATE OF FLORIDA
Kara R. Williams
Commission # DD488568
Expires: NOV. 07, 2009
Bonded Thru Atlantic Bonding Co., Inc.