# INTERGOVERNMENTAL AGREEMENT FOR THE IMPLEMENTATION OF THE INTERSTATE CORRECTIONS COMPACT

In consideration of the cooperative relationship herewith undertaken in the confinement, care, treatment and rehabilitation of inmates on an interstate basis and in further consideration of services to be performed and benefits to be derived by each of the parties hereto in the strengthening of their respective correctional programs, the undersigned state of **RHODE ISLAND** and acting by their duly constituted authorities, and pursuant to and to implement the Interstate Corrections Compact enacted by each of the parties as follows:

Rhode Island General Laws 13-11-1 thru 13-11-3

The parties hereto agree as follows:

## SECTION 1
## INTERSTATE CORRECTIONS COMPACT

(A) The provisions of the Interstate Corrections Compact (hereinafter "COMPACT") as cited in Rhode Island General Laws 13-11-1 et. seq. are hereby made an integral part of this AGREEMENT.

(B) No provision of this AGREEMENT shall be construed in a manner inconsistent with the COMPACT.

## SECTION 2
## TERMINOLOGY

(A) All terms defined in the COMPACT and used in this AGREEMENT shall have the same meaning in this AGREEMENT as in the COMPACT.

(B) The term "Institution" shall be construed to include all facilities normally used by the respective state correctional agency for the care and custody of inmates whether or not such facilities are owned, operated or under the exclusive control of the respective state agency.

EXHIBIT 3

## SECTION 3
## AGREEMENT

(A) During the term of and in accordance with this AGREEMENT, the parties agree to cooperatively exchange prisoners.

(B) Except for extraordinary expenses of medical care in excess of normal maintenance, as provided in Section 16, the parties expect that exchanges of prisoners will be mutual and balanced and, except as provided, at no further cost to either state. The parties recognize that, from time to time, the ratio may be unbalanced in favor of one or the other. The parties will account for such temporary imbalances by reciprocal in-kind services.

## SECTION 4
## DURATION

(A) This AGREEMENT shall become effective upon complete execution by all persons or entities indicated on the signature page and delivery of a fully executed document to the respective parties.

(B) This AGREEMENT shall remain in effect until terminated on notice from either party in accordance with Section 6.

## SECTION 5
## MODIFICATION

(A) This AGREEMENT may be modified or amended at any time by mutual consent in writing.

## SECTION 6
## TERMINATION

(A) This AGREEMENT may be terminated by written notice of either party.

(B) Termination by notice of either party shall become effective ninety (90) days after receipt of written notice of termination.

(C) Within a reasonable time after receipt of notice of termination, the sending state shall accept delivery of its inmates at the institution designated by the receiving state.

1) "Sending State" means a state party to this compact in which conviction or court commitment was had.
2) "Receiving State" means a state party to this compact to which an inmate is sent for confinement other than a state in which conviction or court commitment was had.

SECTION 7
OTHER ARRANGEMENTS UNAFFECTED

(A) Nothing contained in the AGREEMENT shall be construed to abrogate or impair any agreement or other arrangement for the confinement, rehabilitation or treatment of inmates now in effect between the parties to this AGREEMENT.

(B) Nothing contained in this AGREEMENT shall be construed to abrogate or impair any other agreement or other arrangement for the confinement, rehabilitation or treatment of inmates now in effect between one of the party signatories to this AGREEMENT and the federal government, any other state, a governmental subdivision of any other state or any private entity.

SECTION 8
NOTICE

(A) All notices, reports, billing and correspondence required by this AGREEMENT shall be sent to the below-listed addresses:

RHODE ISLAND: Joseph A. DiNitto
Associate Director, Classification
Rhode Island Department of Corrections
P.O. Box 8249
Intake Services Center
Cranston, Rhode Island 02920
Telephone: (401) 462-2845
Fax: (401) 462-3973
e-mail JDiNitto@DOC.state.RI.US

Receiving State:

(B) Notwithstanding the provisions of Section 8A, the parties may give notice that particular correspondence pertaining to specific matters be directed to other appropriate officials and addresses. The parties shall comply with such direction without requirement or written modification of Section 8.

(C) Notwithstanding the provisions of Section 8A, unless a particular means of giving notice is specified in this or any other article of the AGREEMENT, notice of any matter for which one party must give notice to the other shall be deemed as given when the receiving party has actual knowledge of the matter.

## SECTION 9
## INSPECTION

(A) The sending state may inspect, at all reasonable times, any institution of the receiving state in which prisoners of the sending state are or may be confined, to determine if that institution maintains standards of care and discipline not incompatible with those of the sending state, and that all prisoners are treated equitably, regardless of race, religion, color, creed, or national origin.

## SECTION 10
## APPLICATION

(A) The sending state will submit a separate application to the receiving state for each individual inmate proposed for transfer commitment.

(B) Transfer commitment applications shall consist of the following, to the extent permitted under applicable law:

1) Full information and all necessary documents relating to the case history, including, but not limited to:
   a) criminal history
   b) record of adjustment in the sending state's correctional facilities,
   c) misconducts, and
   d) escape history;
2) Physical and clinical records, which shall include, but not be limited to:
   a) Any current medical or psychological condition requiring treatment, but not limited to, suicide attempts,
   b) Any medical admission testing performed by the sending state and the results of those tests, including, but not limited to, hepatitis, HIV/AIDS, tuberculosis, or other infectious disease testing, and
   c) Notice of current or previously administered medication;

3) Judicial and administrative rulings and orders relating or pertinent to the inmate and the sentence or sentences pursuant to which confinement is to be had or to be continued;
4) Reason(s) for the requested transfer;
5) Identification data, photographs and fingerprints;
6) Waiver and consent in the event of a voluntary transfer; and
7) Findings and orders in the event of an involuntary transfer.

(C) Commitment will be deferred until approved by the receiving state. Transfer will be deferred until approved by the receiving state; provided, however, that the receiving state may informally approve such transfer on an emergency basis, pending submission of complete documentation and consideration.

SECTION 11
GOVERNING LAW

(A) Except as otherwise provided by applicable law, inmates from the sending state, while in the custody of the receiving state pursuant to this AGREEMENT, shall be subject to all laws and regulations of the receiving state applicable to persons committed for violation of law of the receiving state which are not inconsistent with the sentence imposed by the sending state.

SECTION 12
VACANCIES

(A) The receiving state hereby undertakes to make available to the sending state such places for inmates as may be vacant from time to time in the institutions of the receiving state as may be available for such confinement by the laws of the receiving state; provided, placement of the inmate in the receiving state will not immediately cause, or be likely to cause, a need for an increase in the correctional facilities in the receiving state.

SECTION 13
DELIVERY OF INMATE

(A) Upon receipt of the receiving state's acceptance of the application, the sending state, at its expense, will deliver the inmate to the institution in the receiving state designated by the receiving state, together with the original or a duly authenticated copy of the inmate's commitment and all other official papers or documents authorizing detention.

(B) Whenever there is to be a mutual exchange of inmates between the parties to this AGREEMENT, the authorities of one of the states may act as an agent of the other state for purposes of transferring its inmates so that the expenses to both states may be minimized.

SECTION 14
TRANSFER OF FUNDS

(A) Funds due transferred inmates shall be provided by the sending state to be credited to the account of the transferred inmate in the receiving state. Upon the return of the inmate to the sending state, or upon release, the receiving state shall provide funds in the amount due the inmate at the time of the return or release.

(B) The receiving state shall, upon direction of the sending state and the presentation by the sending state of the appropriate documents, make monetary deductions from the account of the inmate from the sending state for the purpose of restitution or payment of other costs, and send such funds to the sending state or to another entity as specified by the sending state.

SECTION 15
RESPONSIBILITY FOR OFFENDERS' CUSTODY

(A) Upon delivery of an inmate, the receiving state shall do the following or ensure that the following is done: confine the inmate; give the inmate care and treatment, including the furnishing of subsistence and all necessary medical and hospital services and supplies; provide for the inmate's physical needs; make available to the inmate training and treatment programs consistent with the inmate's needs and the receiving state's resources; retain the inmate in safe custody; supervise the inmate; maintain proper discipline and control over the inmate; make certain the inmate receives no special privileges; and faithfully execute the sentences and orders of the committing court in the sending state.

(B) The sending state is responsible for interpreting sentences of the committing courts of the sending state and shall furnish all necessary documents and provide legal advice to the receiving state when necessary.

(C) Nothing in this AGREEMENT shall be construed to require the receiving state or any of its institutions to provide treatment, facilities or programs for the inmates confined pursuant to this AGREEMENT which it does not provide for similar inmates confined pursuant to this AGREEMENT.

## SECTION 16
## MEDICAL SERVICES

(A) Inmates from the sending state shall receive such medical, psychiatric and dental services and treatment as may be necessary to safeguard their health. The costs of such medical, psychiatric or dental services and treatment shall be considered normal costs incidental to the operation of the institution in the receiving state if:

1) the service is rendered by staff personnel or on-site contract comprehensive health care providers; and
2) in regularly maintained facilities operated or utilized by the institution as part of the health or correctional program thereof; and
3) the inmate requires no special medication, drugs, equipment, anesthetics, surgery or nursing care in addition to that commonly available on an infirmary basis.

(B) The costs of any special services, medication, equipment, surgical or nursing care shall be reimbursed to the receiving state by the sending state.

(C) Unless an emergency is involved, the receiving state shall contact the sending state for advance authority in writing before incurring medical, psychiatric or dental expenses for which the sending state is responsible under the terms of this AGREEMENT. In the event the sending state and the receiving state cannot agree on the need for incurring such expenses, the sending state shall be required to retake the inmate as soon as is possible. In an emergency, the receiving state may proceed with the necessary treatment without prior authorization, but in every such case, the receiving state shall notify the sending state immediately and furnish full information regarding the nature of the illness or injury, the type of treatment to be provide and the estimated cost thereof.

(D) When medical, psychiatric or dental care requires the removal of the inmate from the institution, the inmate shall be removed only after obtaining prior written approval from the sending state. In the event of an emergency which does not permit prior written approval, the institution shall notify the sending state as promptly thereafter as practicable. All necessary precautions shall be taken to assure the safekeeping of the inmate while absent from the normal place of confinement. Necessary custodial supervision shall be provided by the receiving state.

(E) Inmates from the sending state shall be subject to the co-payment provisions for medical care of the receiving state.

## SECTION 17
## TRAINING AND EMPLOYMENT

(A) The receiving state will afford prisoners from the sending state the opportunity to participate in programs of occupational training and industrial or other work on the same basis as prisoners of the receiving state. Compensation in connection with such

participation (whether payment of money, intangible incentives, or other therapeutic or rehabilitative reason) will be paid to prisoners of the sending state on the same basis as to prisoners of the receiving state.

(B) The receiving state may impose on prisoners of the sending state the same work discipline imposed on prisoners of the receiving state. However, the receiving state may not require any prisoners of the sending state to participate in any training, industrial or other work contrary to the laws of the sending state.

(C) The receiving state may dispose of all products produced by any prisoner of the sending state while participating in such training or employment, will bear all costs and retain all proceeds therefrom.

(D) In the case of craft programs, the prisoner may dispose of the products of his labor and retain the proceeds of any sale of his work in accordance with the rules of the receiving state.

## SECTION 18
## DISCIPLINE

(A) Inmates in the custody of the receiving state shall be subjected to the receiving state's internal rules and regulations governing discipline and disciplinary sanctions; except that any sanction providing for the loss of commutation credits shall not affect the terms and conditions of the sending state's sentence in excess of the amount provided for by the laws and regulations governing disciplinary sanctions in the sending state.

## SECTION 19
## RECORDS AND REPORTS FROM RECEIVING STATE

(A) Within ninety (90) days following receipt of an inmate from the sending state, subject to applicable law, the receiving state shall furnish the sending state an admission classification report outlining the inmate's background: medical, psychiatric, educational and vocational findings; and indication of the institutional program which has been recommended. Thereafter, the receiving state shall provide the sending state (1) a monthly progress report summarizing the inmate's discipline and work history (2) a semi-annual report summarizing the inmate's progress, conduct and adjustment since the last report, including a recommendation for retention or return.

(B) The warden or other administrative head of an institution in which inmates from the sending state are confined shall keep all necessary and pertinent records concerning such inmates in a manner consistent with the keeping of records in the normal course of

business of such institution. During the inmate's confinement in the institution subject to applicable law, the sending state shall be entitled to receive, and upon request shall be furnished with, copies of such record or records. Upon termination of confinement in the institution, subject to applicable law, the sending state shall receive the complete file of the inmate. Nothing in this AGREEMENT shall be construed to prevent the receiving state or institutions thereof from keeping copies of such record or records upon and after termination of confinement.

(C) No records received from the sending state, whether maintained separately from, commingled with, or incorporated into the records of the receiving state shall be released to, or made available for inspection or copying by any inmate from the sending state or the representative of such inmate or any other person during confinement in the receiving state or anytime thereafter without the express written authorization of the sending state. In the event records of the sending state are demanded pursuant to legal proceedings, the receiving state shall notify the sending state immediately and withhold such records pending response from the sending state, and shall cooperate in preserving the confidentiality and privileged status of such records unless and until required to release the records pursuant to valid subpoena or court order.

## SECTION 20
## REMOVAL FROM RECEIVING STATE

(A) No inmate from the sending state legally confined in the institutions of the receiving state shall be removed without prior written approval from the sending state.

(B) This subdivision shall not apply to an emergency necessitating the immediate removal of the inmate for medical, psychiatric or dental care, or to a removal made necessary by fire, flood earthquake or other catastrophe or condition presenting imminent danger to the safety of the inmate. In the case of any removal for such emergency cause, the receiving state shall inform the sending state of the destination or location of the inmate so removed at the earliest practicable time, and shall exercise all reasonable care for the safekeeping and custody of such inmate.

## SECTION 21
## HEARINGS

(A) The receiving state shall provide adequate facilities for hearing by authorities of the sending state to which an inmate may be entitled by the laws of the sending state.

(B) Upon the request of the sending state, the authorities of the receiving state will be authorized to and will conduct such hearings, and will prepare and submit the record of

those hearings together with any recommendations of the hearing officials to the officer or officers of the sending state before whom the hearings would have been held if occurring in the sending state. The sending state shall provide the receiving state with a copy of its rules and regulations relating to such hearings.

SECTION 22
INSTITUTIONAL TRANSFERS

(A) The receiving state may place a prisoner of the sending state in any correctional facility of the receiving state appropriate to the security classification of the prisoner and may transfer, at its expense, any prisoner of the sending state to any other correctional facility in the receiving state appropriate to such security classification.

(B) The receiving state shall not transfer an inmate to an institution outside of its territorial borders.

SECTION 23
ESCAPE

(A) If an inmate from the sending state escapes from custody in the receiving state, the receiving state shall use all reasonable means to recapture the inmate. The receiving state shall have the primary responsibility for directing the pursuit and recapture of inmates within its own territory. All costs in connection therewith shall be chargeable to and borne by the receiving state.

(B) The escape of a sending state inmate shall be reported immediately to the sending state.

(C) The sending state shall have the ultimate responsibility for initiation of extradition or rendition proceedings in the event the inmate is apprehended in a jurisdiction other than the receiving state. The sending state may delegate its responsibility to the receiving state.

(D) Copies of all warrants relative to the escape shall be forwarded to the sending state within five (5) working days of the inmate's escape. Copies of all ongoing reports regarding the escape shall be provided to the sending state as said documentation is generated.

## SECTION 24
## DEATH OF INMATE

(A) In the event of the death of an inmate from the sending state, the medical examiner, coroner or other official having the duties of such an officer in the jurisdiction of the receiving state shall be notified. The sending state shall receive copies of the records made in connection with such notification.

(B) The institution in the receiving state shall immediately notify the sending state of the death of the inmate, furnish information as requested and follow the instructions of the sending state regarding to the disposition of the body. The body shall not be released except on order of the appropriate officials of the sending state.

(C) All expenses relative to any necessary preparation of the body and shipment or express charges shall be paid by the sending state. The sending and receiving states may arrange to have the receiving state take care of the burial or cremation and all matters related or incidental thereto and all such expenses shall be paid by the sending state as specified in Section 28. The provisions of this section shall govern only the relations between the party states and shall not affect the liability of any relative or other person for the disposition of the deceased or for any expenses connected therewith.

(D) The receiving state shall transmit a certified copy of the death certificate to the sending state.

## SECTION 25
## GRATUITIES AND EXPENSES ATTENDANT UPON RELEASE

(A) The provision of clothing, gratuities and any other supplies upon release of an inmate shall be at the expense of the sending state and shall be in accordance with the sending state's laws, regulations and policies. The receiving state shall bill the sending state for any costs so incurred as specified in Section 28B.

## SECTION 26
## RETAKING OF INMATES

(A) The receiving state will deliver any inmate from the sending state to the proper officials of the sending state upon demand made to the receiving state and present official written authority to receive such inmate. All costs incurred in such delivery will be the responsibility of the sending state and where necessary, the receiving state shall bill the sending state for such costs as specified in Section 28B.

(B) Upon written request of the receiving state, the sending state will retake, at its own expense, any inmate within thirty (30) days after receipt of the request to retake.

(C) Notwithstanding Section 28A, if at the time the sending state seeks to remove an inmate from an institution in the receiving state there is pending against the inmate within such state any criminal charge or if the inmate is formally accused of having committed within such state a criminal offense, the inmate shall not be returned without the consent of the receiving state until discharged from prosecution or other form of proceeding, imprisonment or detention for such offense.

(D) In case the commitment under which any inmate from the sending state is terminated for any reason, the sending state agrees to accept delivery of the prisoner at the institution of the receiving state and to pay the expenses of returning the inmate to the jurisdiction of the sending state.

(E) Notwithstanding Section 26D, an inmate may be released outside the territory of the sending state at the termination of his or her commitment by express written agreement of the inmate and the responsible official in the receiving and sending states.

## SECTION 27
## PHOTOGRAPHING AND PUBLICITY

(A) Institutional or other officials of the receiving state shall not be authorized to release publicity concerning inmates from the sending state. They shall not release personal histories or photographs of such inmates or information concerning their arrival or departure or permit reporters or photographers to interview or photograph such inmates. Requests for information regarding inmates of sending states shall be referred to the sending state. However, information of public record, such as sentence data or information concerning the escape of an inmate may be given directly to the press by the receiving state. The receiving state may photograph inmates from the sending state as a means of identification for official use only.

## SECTION 28
## COST AND REIMBURSEMENT

(A) Reimbursement to the receiving state is to be agreed upon by the parties at the time of the transfer. However, there will be no reimbursement if there is an equal exchange of

inmates between the states or when sentences in both sending and receiving states are being served concurrently.

(B) The receiving state will bill the sending state on a quarterly basis. Billing shall include an itemized accounting for charges above and beyond the current per capita cost. Reimbursement shall be made within sixty (60) days of the receipt of the billing.

## SECTION 29
## TRANSPORTATION

(A) Unless otherwise provided, transportation of prisoners of the sending state will be at the expense of the sending state.

(B) Unless otherwise provided, transportation for prisoners of the sending state between facilities of the receiving state, or to other states, required by or for the benefit of the receiving state, shall be at the expense of the receiving state.

## SECTION 30
## LEGAL PROCEEDINGS

(A) Confinement in the receiving state will not deprive any prisoner of the sending state of any legal right which he would have if confined in the sending state.

(B) The sending state will defend any post-conviction action, including appeals and writs of habeas corpus, brought by any prisoner of the sending state in the courts of the sending state challenging the underlying judgment of conviction or the administration of the sentence imposed, at no cost to the receiving state.

(C) The receiving state will defend, at its expense, any actions directed against it by a prisoner of the sending state which challenge conditions of confinement in the receiving state.

(D) The sending state and the receiving state will cooperate in other matters of mutual interest in the defense of transfer-related litigation.

(E) The sending state will provide access to the courts of the sending state to its prisoners transferred to the receiving state in the same manner as such access is provided to prisoners in the sending state or in a different manner, at the option of the sending state.

SECTION 31
INTERNAL RELATIONS

(A) Nothing in this AGREEMENT affects the internal relations of the party states and their respective officers, departments, agencies or subdivisions.

SECTION 32
MINIMUM/COMMUNITY RELEASE

(A) With due regard to the classification of prisoners, the receiving state will afford prisoners of the sending state participation in furlough, minimum, work release, community release, education release or any other pre-release program operated in the receiving state in the same manner as prisoners of the receiving state, with prior approval by the sending state.

SECTION 33
WAIVER

(A) Either party may elect not to enforce its rights and remedies under this AGREEMENT as to a breach by the other party of any term or connection of this AGREEMENT. In any event, the failure by either party to enforce its rights and remedies under this AGREEMENT shall not be construed as a waiver of any subsequent breach of the same or any other term or condition of this AGREEMENT.

SECTION 34
INTEGRATION AND MERGER

(A) This AGREEMENT, when executed, approved and delivered, shall constitute the final, complete and exclusive AGREEMENT between the parties containing all the terms and conditions agreed on by the parties.

(B) All representations, understandings, promises and agreements pertaining to the subject matter of this AGREEMENT made prior to or at the time this AGREEMENT is executed are superseded by this AGREEMENT unless specifically excepted by any other term or provision of this AGREEMENT.

IN WITNESS WHEREOF, the undersigned duly authorized officers have subscribed their names on behalf of the State of Rhode Island and the State of

APPROVED FOR THE STATE OF RHODE ISLAND

Director
Rhode Island Department of Corrections

Date

APPROVED FOR THE STATE OF

Commissioner/Director
Department of Corrections

Date

APPROVED AS TO FORM AND LEGALITY

Office of Chief Counsel

Date