**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **CRAIG C. PRICE** | : | |
| | : | |
| **vs.** | : | **C.A. No.: 05-389S** |
| | : | |
| **A.T. WALL, et al.** | : | |

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Now come the Defendants in the above-entitled matter, by and through their attorney, and for the reasons argued in the accompanying memorandum of law, respectfully request this Court enter Summary Judgment in their favor, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendants submit that there is no genuine issue of material fact, and that they are entitled to judgment as a matter of law.

Respectfully submitted:

Patricia A. Coyne-Fague #5198
40 Howard Avenue
Cranston, RI 02920
401-462-0145/401-462-2583 *fax*

**Certification**

I hereby certify that on the 17th day of April 2006 I sent a true copy of the within document by first-class mail postage pre-paid to: Craig C. Price, Charlotte Correctional Institution 33123 Oil Well Road Punta Gorda, Florida 33655.

23

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **CRAIG C. PRICE** | : | |
| | : | |
| **vs.** | : | **C.A. No.: 05-389S** |
| | : | |
| **A.T. WALL, et al.** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Now come the Defendants in the above-entitled matter, by and through their attorney, and for the reasons argued herein, respectfully request this Court enter Summary Judgment in their favor, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendants submit that there is no genuine issue of material fact, and that they are entitled to judgment as a matter of law. Defendants have filed, contemporaneously with this Motion, a Statement of Undisputed Facts, pursuant to Rule 56 (a) of the Local Rules of the United States District Court for the District of Rhode Island.

I. Facts and Travel

Craig Price was sentenced on July 17, 1997 to a prison term following conviction for criminal contempt. Price was found to have defied prior orders of the Family Court that required him to participate in, and cooperate with, psychiatric evaluation and treatment. The Chief Judge of the District Court, Albert E. DeRobbio, on special assignment to the Family Court to preside over Price's criminal contempt trial, sentenced Price to twenty-five years, with fifteen years suspended, ten years to serve at the Adult

Correctional Institution (ACI). During the sentencing hearing, Judge DeRobbio stated the following:

> "As a condition of that sentence, the Department of Corrections is obligated to give him the best psychological and psychiatric treatment ***that is available to the Department. Of course, that's left to their discretion***..."[Emphasis added]. (Transcript of sentencing hearing, relevant page attached as Exh. 1).

In August, 2003, Price, by then housed in the High Security Center of the ACI, through his attorney filed in Rhode Island Family Court a "Motion to Compel" the Department of Corrections to provide him with mental health treatment and rehabilitative programming.[1] His Motion to Compel asked Judge DeRobbio to enter an order "compelling the State of Rhode Island, Department of Corrections, to comply with the prior order of Chief Justice DeRobbio dated July 17, 997 and provide him [Price] with psychiatric, psychological and rehabilitative treatment forthwith."

As the Defendants argued before Judge DeRobbio, the sentencing remarks made by the Judge explicitly gave the Department discretion to provide Price with "the best psychological and psychiatric treatment" that was available. The Department argued that Price had access to psychological treatment, of which he had in fact on occasion availed himself, but did not require psychiatric treatment because he has not been diagnosed as being psychiatrically ill. Providing Price with psychiatric treatment when the Department's psychiatrists opined that he did not need such treatment, the Department argued, would be futile at best and damaging at worst. Secondly, the Department argued, "rehabilitative treatment" was not part of the order issued by Judge DeRobbio, which mandated only "psychiatric and psychological treatment." In any event, Price had

[1] Price is not represented by an attorney in the case at bar, but rather is litigating this action pro se.

engaged in programming, "rehabilitative treatment," available to him at the High Security Center (e.g., the Avatar program, [2] and anger-management counseling). Assuming that Price's use of the term "rehabilitative treatment" referred to "rehabilitative programs," the Department submitted that Price's ability to participate in such programs was within his control, as the availability of such programs is dependent upon his classification. Because of serious disciplinary infractions, Price was classified as a Maximum Security inmate, housed in the High Security Center on "C status." Thus, his privileges were very few. Indeed, due to the security considerations posed by the inmates at the High Security facility, few programs are available to any of the inmates housed there.

In conferences with the attorneys for the parties, Judge DeRobbio explicitly recognized that he lacked authority to order Price's reclassification to a lower security level or to order an out-of-state transfer. However, the Judge was not convinced that Price did not need psychiatric treatment, and suggested an independent evaluation to determine what psychological and psychiatric (if any) treatment Price needs. The Department agreed to pay for the evaluation, which was ultimately conducted by Dr. Joseph Penn, a nationally-recognized forensic psychiatrist. It is noteworthy that during the evaluation, Price informed Dr. Penn that an out-of-state transfer was one of his (Price's) primary goals. The evaluation's conclusions supported the Department's position that Price was not in need of psychiatric care, but could benefit from other rehabilitative programs if he could move into a less restrictive environment.

[2] "Avatar" means "crossing over" in Arabic. The goal of the Avatar program is to reintegrate inmates into a lower classification, e.g., from High Security to Maximum. The program involves one-on-one counseling with a member of the rehabilitative staff, homework and projects, involving impulse control, conflict management and behavior modification. Price has completed the Avatar program.

During the course of the litigation, after many discussions with correctional, healthcare and legal staff, the Director of the Department of Corrections agreed to permit Price to transfer to another state's prison system.[3] The Department's position was that because Price was scheduled to be released from incarceration at some point in the future, and had been incarcerated since the age of 15 (Price was at that point 30 years old), it would benefit him, and the society into which he would eventually be released, if he engaged in programming and lived within a general population module. However, it was apparent to the Department that Price's opportunity to participate in programming in general population in the Rhode Island prison system was stymied by his notoriety. It was conceded that Price's rehabilitative goals could be better addressed in a system where he was less well-known, permitting him a better opportunity to move into general population.[4] In June, 2004, Price agreed, with the advice and consent of his attorney, to dismiss the Motion to Compel without prejudice and be voluntarily transferred outside the State of Rhode Island. Such a transfer was in fact what Price had been requesting for years.

While Price indicated a preference for certain states, or the Federal system, no promises were made to Price or to his attorney that he would be transferred to any

[3] Price had for years repeatedly made requests to both the current and prior Director of Corrections to permit him to serve his sentence in another state. Those requests had been denied.

[4] In Rhode Island's small prison system, which mirrors Rhode Island's smallness as a state in general, Price's crimes are etched in the minds of many. Price's "celebrity status" was enhanced during the pendency of the litigation Price filed against the Department, in March 2004 when he agreed to a lengthy, 3-part feature in the Providence Journal, the state's main newspaper, in which he discussed in gruesome detail the murders he had committed as a juvenile. By agreeing to the article, Price unfortunately shined a spotlight on himself and his crimes precisely at a time when the Department was contemplating placing him into population. Price's renewed celebrity status and widespread knowledge of his crimes, however made it very difficult to move him through the system. At that point it became clear the Department needed to revisit Price's longstanding request to be transferred out of state. For a brief discussion of Price's most infamous crimes, see State v. Price, 820 A.2d 956 (R.I. 2003). The newspaper article may be viewed at http://www.projo.com/extra/2004/craigprice/ .

particular state or to the Federal system, as the Department did not know which, if any, systems would be willing to accept him. Furthermore, no such promises could be made to Price, as the Department certainly could not bind another state or the Federal government in a settlement agreement with Price. The Department was cognizant of the fact that Price had been a difficult inmate to manage, having committed serious physical assaults against correctional staff in the past, and therefore there was a very real possibility that <u>no</u> other state would want to accept him.

The stipulation signed in the Family Court [which Price has designated as "Exhibit B" to his Complaint] stated that Price agreed to be voluntarily transferred to a prison "outside the State of Rhode Island." Price signed a "request for interstate transfer" form (which was attached to the stipulation in order to illustrate that Price was volunteering to be transferred) in which he articulated his reasons for the request. Within that paragraph Price indicated what prison systems he would prefer. However, Price's listing of preferences within his explanation of the reasons he sought transfer hardly constituted a promise by the Department of Corrections that he would be guaranteed transfer to the system(s) he preferred. The stipulation governs: it stated "outside of the State of Rhode Island."

Rejected by the Federal system, as well as by Virginia, Colorado, Illinois, New Jersey, Ohio, Arkansas, and South Carolina[5], Price's application for transfer was ultimately accepted by the State of Florida. [See DiNitto affidavit, attached as Exhibit 2]. In October 2004, Price was transferred to the Florida prison system, transported there by

---

[5] In fact, Price's application was sent to all of the systems for which Price indicated a preference, with the exception of California. Rhode Island does not have a compact agreement with California for the exchange of inmates. The only states that accepted Price's application were Florida and New Mexico. (See affidavit from Defendant Joseph A. DiNitto).

the United States Marshals' service. Florida has determined that Price should be held in "close supervision," a restrictive housing arrangement, due to his disciplinary history and history of assaulting staff. This housing arrangement is Florida's prerogative to impose.

Price's lawsuit makes baseless and conclusory allegations that the Defendants essentially conspired with the Florida prison officials to deprive him of general population, in retaliation for his exercise of his constitutional rights in filing the Motion to Compel. He requests that he be returned to the Rhode Island system; transferred to the Federal system; or transferred to one of the other states for which he had indicated a preference.[6] For the reasons argued below, the Defendants submit that there is no genuine issue of material fact, and that they are entitled to judgment as a matter of law.

II. The Standard for Summary Judgment

Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986). The moving party is entitled to a judgment as a matter of law when the nonmoving party has failed to make a sufficient showing on an essential element of their case with respect to which they have the burden of proof. *Id.*, at 323, *other citations omitted.* "Material facts" are defined as "those that might affect the outcome of the suit under the governing law." *Aurelio v. RI Department of Administration, DMV*, 985 F.Supp. 48 (1997), *citing* *Morrissey v. Boston Five Cents Sav. Bank* 54 F.3d 27, 31 (1st CIR. 1995), *other citations omitted.*

[6] Price also filed three petitions for injunctive relief, requesting, inter alia, that he be returned to Rhode Island. His petitions were denied in a Report and Recommendation issued by Magistrate Judge Hagopian on March 14, 2006. Price did not file an objection to the Report and Recommendation.

## III. Argument

### A. Plaintiff consented to the transfer; Plaintiff cannot meet the high burden of showing that the transfer was retaliatory; the Department had a permissible reason to transfer Price

Price's lawsuit bears a striking resemblance to one filed in 2001 by another Rhode Island inmate, Bernardo Figueroa. Like Price, Figueroa had filed a legal action against the Department of Corrections. Like Price, Figueroa settled his legal action, agreeing to dismiss his case and be voluntarily transferred to a prison outside of the State of Rhode Island.[7] Like Price, Figueroa had a preference for a particular state, and, like Price, was ultimately sent to a state that was not on his wish list because his preferred state would not accept him. Like Price, Figueroa was displeased with his housing in the new prison system to which he was transferred (Virginia), and, like Price, filed a suit in this Federal District Court against the Department of Corrections and Joseph DiNitto, claiming that his transfer was effected in retaliation for his pursuit of legal claims against the Department. In Figueroa's case, the defendants' motion for summary judgment was granted, and indeed, the Court specifically found that Figueroa's claim was "frivolous, and wholly without merit," inasmuch as he had agreed to be transferred. *Figueroa v. DiNitto, et al.*, C.A. No. 01-137T, 2002 U.S.Dist. LEXIS 7039 (March 14, 2002) [Emphasis added]. An identical finding should be made here, as Price consented to the transfer, and indeed pleaded for years to be transferred from the Rhode Island system.

---

[7] A significant difference between Price and Figueroa is that Price had the benefit of legal counsel in formulating his decision to stipulate to the dismissal of his legal action while Figueroa was pro se.

In dismissing Figueroa's claims, this Court noted the high burden upon a Plaintiff to establish a claim for retaliatory transfer, citing McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979):

> In order to establish a claim for a retaliatory transfer, the plaintiff must demonstrate that the actual motivating factor for his transfer was because of his constitutionally protected activity. In other words, plaintiff must demonstrate that ***he would not have been transferred "but for" his constitutionally protected activity***. * * * ***The requirement for a but for showing together with the wide latitude afforded prison officials in ordering transfers may make summary judgment particularly appropriate***. [Emphasis added].

Furthermore, it has been well established that "even if the defendant had an impermissible reason for transferring the plaintiff, if a separate, permissible reason exists, the defendant will not be liable." Figueroa v. DiNitto, citing Graham v. Hendeson, 89 F.3d 75, 79 (2nd Cir. 1996); Goff v. Burton, 7 F.3d 734, 737 (8th Cir. 1993); Ponchick v. Bogan, 929 F.2d 419, 420 (8th Cir, 1991); and Scarpa v. Ponte, 638 F. Supp. 1019, 1027 (D.Mass. 1986). In Price's case, the Department recognized that Price's infamy was making it nearly impossible for him to progress through the system, and endeavored to assist him by sending him to a system where he would have more of an opportunity to progress[8], prior to his ultimate release from incarceration.[9] Price cannot meet the high burden imposed by the cases cited above, as his transfer was not retaliatory, was in fact part of the settlement of his legal claim that was entered into with the full advice and consent of his attorney, and ***was in fact voluntary***. Pursuant to the cases cited above,

---

[8] It is apparent from his complaint that Price viewed this opportunity as a guarantee of placement in general population; a promise the Department never made and would be unable to impose on another prison system.

[9] Price's current release date is in 2022; the exact date is somewhat fluid, as it is affected by gains and losses of "good time" pursuant to Rhode Island General Law §42-56-24.

even if Price could provide evidence that supported his allegation that his voluntary transfer was somehow retaliatory, the fact that the Department had an independent permissible reason to transfer him shields the Defendants from liability.

B. The procedure followed for Price's transfer request was the same used in all inmate transfers from the ACI and therefore demonstrates that it was non-retaliatory

The procedure used, and the documents sent by the Department of Corrections to other prison systems for their consideration of Price are governed by an agreement executed between the Rhode Island Department of Corrections and several other states and the Federal system. [The agreement is attached as Exhibit 3]. It clearly illustrates that the Rhode Island Department of Corrections follows a strict procedure for the proposed transfer of prison inmates. Therefore, Price can provide no evidence that the Department of Corrections did anything different in his case than that which they do for any other inmate seeking a transfer.

The letter included in the package sent to the State of Florida told Florida officials that the Department was seeking to transfer Price because it is felt "that out-of-state placement would be in the best interest of Mr. Price as well as the Rhode Island Department of Corrections." The letter further stated that the Department "is looking to give [Price] a new start in a system unfamiliar with his background * * * [i]n the primary interest of affording Mr. Price optimum opportunity to pursue both his rehabilitative and security needs[.]" [DiNitto Letter, page 2; attached as Exh. 4]. The package prepared for Price's search for an out-of-state transfer contained the same documents as packages prepared for any other inmate who seeks such a transfer. While Price contends that the Rhode Island Department of Corrections inclusion of his disciplinary history in the

materials sent to Florida prejudiced the Florida officials against him, the Rhode Island Department of Corrections is not in a position to redact or fail to disclose Price's entire record, as the Compact it has with other states mandates what information must be disclosed when seeking to transfer an inmate. Inasmuch as Price's history includes serious disciplinary infractions; and inasmuch as Price's criminal history includes the murder of four people, as well as serious assaults of correctional officers and other inmates, Price cannot seriously argue that the Rhode Island Department of Corrections illegally persuaded Florida's prison to place him in close supervision.

It should be noted that several states (including all of the states for which Price indicated a preference, except California as noted in fn.5), as well as the Federal system, rejected Price's application outright due to factors such as his disciplinary record and assaults on staff (see DiNitto affidavit). Even if that were not so, the Defendants respectfully submit that this Court is without authority to order Price transferred to the Federal system or to one of his preferred states. To the extent that Price's record caused other states to reject his bid to transfer to their systems, or caused Florida to make a housing decision with which Price disagrees, the blame lies with Price and his own record and the Defendants cannot be held liable.

C. Price has no protected right to particular housing or prison classification; Price's claims of inappropriate treatment by Florida officials should be filed against the Florida officials, not the Defendants

The impetus for Price filing his lawsuit is his displeasure with the housing decisions made by the Florida authorities that have resulted in Price being held in "close supervision;" a restrictive security status. While the Rhode Island system classifies Price, it is up to the Florida system to house him in the security level that they deem

appropriate. That is, as an out-of-state transferred inmate, Price is "classified" in abstentia by the Rhode Island Department of Corrections. Until his return, he will automatically be classified at the level he was when he left Rhode Island (High Security C-status). His actual security level in terms of housing however, is determined by the Florida prison administration, who may house Price in any security level they deem appropriate except Minimum (for which they would have to have Rhode Island's permission). [see DiNitto affidavit]. Price's displeasure with the security level Florida has determined for him does not support his claim, as "[t]here is no federally-protected right to a particular classification or even to an error-free decision by the state authorities." _Palmigiano v. Mullen_, 491 F.2d 978, 980 (1st Cir. 1974). Rhode Island's Supreme Court has made it equally clear that prison inmates have no liberty interest in the inmate classification system, and that the Director of Corrections has exclusive and final discretion over the classification of inmates. _Bishop v. State_, 667 A.2d 275, 277 (R.I. 1995). The U.S. Supreme Court has held that "[s]tatutes and interstate agreements recognize that, from time to time, it is necessary to transfer inmates to prisons in other States." _Olim et al. v. Wakinekona_, 461 U.S. 238, 246 (1983). "Just as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State, he has no justifiable expectation that he will be incarcerated in any particular State." _Id._ at 245. Regardless of in which state within the United States Plaintiff was convicted, he may be incarcerated in any of the fifty United States unless there is state law to the contrary or the very incarceration itself is unconstitutional. _Id._, at 248, citing _Montanye v. Haymes_, 427 U.S. 236, 242; _Cruz v. Beto_, 405 U.S. 319 (1972); _Fejeriak v. McGinnis_, 493 F.2d 468, 470 (CA 9 1974). Furthermore, even if Price were transferred to one of his

preferred prison systems, there would be no guarantee of, and this Court would be unable to order the system to provide rehabilitation. "While there can be little doubt of the desirability of maintaining a meaningful schedule of programmed activity for inmates, the courts have never found that a failure to provide rehabilitative programs to be objectionable on constitutional grounds." *Jaben v. Moore*, 788 F. Supp. 500, 505 (D.Kan. 1992). See Also *Lovell v. Brennan*, 566 F. Supp. 672 (D.Me. 1983) ("the courts have not recognized a constitutional right to rehabilitation for prisoners"), aff'd, 728 F.2d 560 (1st Cir. 1984). *Estrada v. Walker*, 743 A.2d 1026, 1031 (R.I. 1999), Therefore, because Price has no protected liberty interest in a particular classification, or any constitutional right to rehabilitative programming, his claims regarding the supervision level that the State of Florida has imposed on him should be dismissed.

Price's claims that Florida's decision to place him in close supervision is somehow in retaliation for him filing the Motion to Compel against the Department of Corrections are based on comments allegedly made to him by correctional staff in the Florida prison in which he is now housed. To the extent that Price's complaint makes allegations of inappropriate or constitutionally impermissible actions by Florida officials, they should be dismissed as against these Defendants.

## IV. Conclusion

Inmate Price voluntarily consented to be transferred "outside the state of Rhode Island." He was transferred to Florida's prison system. His subsequent displeasure with the state system that accepted his transfer cannot support a retaliation claim against the Defendants. There is no genuine issue of material fact and the Defendants are entitled

to judgment as a matter of law.

Respectfully submitted:

Patricia A. Coyne-Fague #5198
Chief Legal Counsel
RI Department of Corrections
40 Howard Avenue
Cranston, RI 02920
(401) 462-0145
(401) 462-2583 *fax*

**Certification**

I hereby certify that on the 17th day of April 2006 I sent a true copy of the within document by first-class mail postage pre-paid to: Craig C. Price, Charlotte Correctional Institution 33123 Oil Well Road Punta Gorda, Florida 33655.