UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CRAIG C. PRICE *
*
vs. * C.A. No: 05-389S
*
A.T. WALL et al. *

# ***PLAINTIFF'S OBJECTION TO*** **DEFENDANT'S MOTION FOR** ***SUMMARY JUDGMENT***

Now comes the Plaintiff, Craig C. Price #126556, pro se, in the above entitled matter, and for the reasons argued in the accompanying memorandum of law, and in the plaintiff's accompanying affidavit attached to the memorandum of law, the plaintiff respectfully request that this honorable Court deny the Defendant's motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

The plaintiff submits that there is a genuine issue of material fact, and that the defendants are not entitled to a judgment as a matter of law.

Respectfully Submitted

5/30/2006

Craig C. Price #126556 pro se

Craig C. Price #126556, pro se
33123 Oil Well Road
Charlotte Correctional Institution
Punta Gorda, Florida 33955

## ***CERTIFICATION***

I hereby certify that on the 30th day of May, 2006, I sent a true Copy of the plaintiff's Objection to Defendant's Motion Motion for Summary Judgment, the Plaintiff's Memorandum In Support of the Objection to Defendant's Motion for Summary Judgment, and the plaintiff's Affidavit In Support of the Objection to Defendant's Motion for Summary Judgment, to the Defendant's Counsel Attorney Patricia A. Coyne-Fague #5198, at 40 Howard Avenue, Cranston Rhode Island, 02920.

Craig C. Price #126556, pro se

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CRAIG C. PRICE *
* C.A. No. 05-389 S
Vs. *
*
A.T. WALL et al. *

# ***MEMORANDUM OF LAW*** **IN SUPPORT OF** ***PLAINTIFF'S OBJECTION TO*** **DEFENDANT'S MOTION FOR** ***SUMMARY JUDGMENT***

Now comes the plaintiff in the above-entitled matter, pro se, and for the reasons argued herein, along with accompanying affidavit and documents attached, respectfully requests this honorable Court not enter Summary Judgment in defendant's favor, pursuant to Rule 56 of the Federal Rules of Civil Procedure. The plaintiff submits that there exist a genuine issue of material fact, and that the defendants are not entitled to judgment as a matter of law. The plaintiff has filed contemporaneously with this memorandum of law in support of his objection, a Statement of Undisputed Facts and/or Disputed Facts, pursuant to Rule 56(a)(4) of the Local Rules of the United States District Court for the District of Rhode Island.

## **FACTS AND TRAVEL**

The plaintiff, Craig C. Price, pro se, is an inmate in the custody of the Rhode Island Department of Corrections, that has filed a complaint pursuant to 42 U.S.C. 1983 alleging a deprivation of his federal constitutional rights. The plaintiff names as defendants Ashbel T. Wall, II, Director of the Rhode Island Department of Corrections, Jake Gadsden, Jr., Assistant Director of the Rhode Island Department of Corrections, and Joseph A. DiNitto, Associate Director of Classification at the Rhode Island Department of Corrections (collectively "defendants").

Presently before the Court is a motion for Summary Judgment by the defendants that has been filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. The plaintiff now objects and opposes the motion. This matter contains the following factual allegations, and the following Disputed and Undisputed facts, which for purposes of the instant motion must be considered in a light most favorable to the plaintiff. The matter is as follows:

On July 17, 1997, a Rhode Island state Court judge sentenced the plaintiff to the Rhode Island Department of Corrections (herein R.I.D.O.C.) for a term of imprisonment of twenty-five years, with ten years to serve and fifteen suspended. Additionally, the Court, as part of of the sentence, required the plaintiff to complete rehabilitative programming, including psychological and psychiatric treatment while incarcerated.

On August 13, 2003, after not receiving any of the Court-mandated treatment, the plaintiff exercised his First Amendment Right through counsel, (attorney Dana Paolino Sarcia), and filed a Complaint/Motion to Compel against the R.I.D.O.C. in state court seeking to compel the R.I.D.O.C. to Comply with the sentencing Court's order. After several court conferences with the R.I.D.O.C. and counsel for the plaintiff, the R.I.D.O.C. agreed to provide the plaintiff with the court ordered treatment. The parties further agreed that if the plaintiff successfully completed the first round of treatment, the plaintiff's classification would be upgraded, permitting him to participate in further rehabilitative treatment as mandated by the Court. With this agreement, the plaintiff thereafter withdrew his motion to Compel.

The plaintiff successfully completed his first round of treatment and appeared before a classification board for review of his status. Based on his successful completion of the initial round of treatment and pursuant to the agreement between Counsel for plaintiff and the R.I.D.O.C., the board recommended that the plaintiff's classification status be upgraded. However, the defendants refused to permit an upgrade in plaintiff's status, and instead, R.I.D.O.C. officials then launched into no less than three separate and sudden unrelated investigations into various matters, blatantly delaying plaintiff's classification status upgrade, thus ultimately prohibiting the plaintiff from receiving and participating any further in court ordered treatment.

Due to the R.I.D.O.C.s failure to abide by the agreement, the plaintiff, through Counsel, communicated to officials at the R.I.D.O.C. that he intended to pursue further litigation outlining the R.I.D.O.C.s blatant endeavors which were preventing the plaintiff from engaging in Court Ordered treatment.

Immediately following the plaintiff's communication that further litigation would ensue by the plaintiff re-submitting his "Motion to Compel" against the R.I.D.O.C., Counsel for the R.I.D.O.C. then offered to send the plaintiff to an out-of-state correctional facility where the plaintiff would receive the court ordered treatment. The plaintiff then consented to be transferred to certain correctional facilities, (or rather certain States), in which said consent was recorded on the record in State Court.

In October of 2004, the plaintiff was transferred by U.S. Marshals to the State of Florida and to the Florida Department of Corrections (herein FLA.D.O.C). Florida was not a state the plaintiff consented to be transferred to.

Furthermore, when the FLA.D.O.C. received the plaintiff into it's prison system, the plaintiff was received as a disciplinary transfer and was promptly casted into segregation. While in segregation, the plaintiff learned from a FLA.D.O.C. classification officer that the plaintiff would be placed on the most restricted Close Management segregative status because the plaintiff "*like to cause trouble with the administration*", that the plaintiff "*escaped from prison*," (See plaintiff's Complaint pg.8 paragraphs 23 & 24). The plaintiff was also told by the FLA.D.O.C. classification officer that the plaintiff had "*injured a correctional officer so severely that the officer required hospitalization for an extended period of time.*" Lastly, the plaintiff was also warned that if he: "*pulled any smart moves down, especially with the legal stuff, he could end up with forever*", (See again Plaintiff's Complaint pg.8 Par. 24).

The plaintiff tried to explain to the FLA.D.O.C. classification officer that he had been gravely misinformed about the plaintiff, and grossly misinformed about the plaintiff's institutional file and record, but to no avail did the plaintiff's attempts to convince the FLA.D.O.C. official that he had been branded with flagrant misinformation work, and infact, the plaintiff was ultimately placed on the most restricted Close Management segregative status.

Moreover, the plaintiff thereafter learned that the FLA.D.O.C. cannot provide the plaintiff with any of the Court Ordered treatment which was precisely the impetus for plaintiff's transfer.

Plaintiff then filed suit pursuant to 42 U.S.C. 1983 seeking relief. Plaintiff contends that the R.I.D.O.C., particularly the named defendants here Wall, Gadsden, and DiNitto, in retaliation for the filing of plaintiff's Motion to Compel, intentionally transferred the plaintiff to a correctional facility that can not even provide the plaintiff with Court ordered treatment, and to a correctional facility that because of the intentional forwarding of misinformation, the Correctional facility has placed the plaintiff on the most restricted segregative status.

Furthermore, the plaintiff also contends that those defendants continue to approve and sustain the plaintiff being classified in a close management segregative status, even though the defendants are aware that the plaintiff was placed on such a segregative status because of the misinformation that they intentionally forwarded to the FLA.D.O.C..

The defendants are further aware that the plaintiff "is not", and "can not" be provided with the court ordered treatment inwhich was the specific reason why the plaintiff agreed to be transferred out-of-state.

All of the facts set-forth in this matter by the plaintiff, the plaintiff respectfully submits, can and will support the plaintiff's contention that he was retaliated upon by the defendants for filing a Motion to Compel Court ordered treatment.

The defendants, after having their motion to dismiss the plaintiff's complaint was denied, the defendants now move for Summary Judgment. Plaintiff opposes and objects the motion for Summary Judgment.

## ***THE STANDARD FOR*** **SUMMARY JUDGMENT**

"Summary Judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The facts and inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party, and this party is entitled "to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts in it resolved favorably to him." (See Miller v. Leathers 913 F.2d 1087 (4th Cir. 1990), quoting Charbonnages de France v. Smith 597 F.2d 406, 414 (4th Cir. 1979))

"Movants may prevail only if they have demonstrated that there are No genuine issues of material facts and that they are entitled to Summary judgment as a matter of law."
(See Woods V. Smith 60 F.3d 1164 (5th Cir.1995))

For the following reasons stated the plaintiff respectfully submits that the standard for Summary Judgment cannot be met by the defendants.

**GENUINE ISSUE OF THE MATERIAL FACTS**

The Agreement and Promise to Send Plaintiff to an Out-of-State Correctional facility for the specific purpose of providing plaintiff with Court Ordered treatment:

While it is not a disputed fact that the plaintiff filed a Complaint/Motion to Compel against the R.I.D.O.C. to compel court ordered treatment, it is a disputed fact that during the pendancy of the said action, counsel for the defendants, after engaging in legal negotiations and discussions with Counsel for the plaintiff, did agree and promise plaintiff's Counsel that the plaintiff would be sent out-of-state to a correctional facility, for the specific reason and purpose of providing the plaintiff with court ordered treatment.

In Support of this contention to this dispute, the plaintiff has attached to this memorandum an affidavit supporting his objection to defendant's motion for Summary Judgment, and attached to this affidavit, are documents and letters that were sent to the plaintiff by the attorney whom previously represented the plaintiff on the Complaint/Motion to Compel that was filed against the R.I.D.O.C..

These letters and documents are significant, because they contain specific statements and remarks

made by plaintiff's previous Counsel that not only buttress plaintiff's contentions surrounding the reasons and purpose why the plaintiff was transferred out-of-state, but also yield pertinent commentary supporting plaintiff's contentions and claims alleging Retaliation.

For example, attorney Dena Paolino-Saccia, in her April 11th, 2005 letter she sent to plaintiff, she makes the statement that it was "*promised* to the plaintiff to get him in a appropriate facility." (See last paragraph of page 1 to the letter of April 11th, 2005). Now even though the plaintiff, for good reason, has a different point of view legally as to the best way to proceed with legal claims against the R.I.D.O.C., even withstanding plaintiff's previous Counsel's difference of opinion as to how to advance further legal action against the R.I.D.O.C., the comments within this letter are still significant.

In further emphasis of the significance of attorney Dena Paolino-Saccia's letters and documents, the letter of April 11th, 2005 also states that "I", (i.e. the plaintiff), agreed to an out-of-state transfer for "*one specific reason - to get the programming that the R.I.D.O.C. admits you are entitled to yet they cannot provide.*" Furthermore, on page 1. following over to page 2. of this same letter, attorney Dena Paolino-Saccia makes a comment regarding the manner as to how the R.I.D.O.C. created the circumstances the plaintiff is presently now in and states: *By that I mean that although we know they did this intentionally*." (Again See letter of April 11th, 2005), (Exhibit "AA").

The plaintiff submits that these comments are in a direct conflict and dispute with two E-Mails that were sent to attorney Dena Paolino-Saccia from the defendant's attorney Patricia Coyne-Fague. These E-Mails from attorney Coyne-Fague contain the comments that "*No promises were made to plaintiff*," and that "*plaintiff's counsel had just called her on the phone and feels that Florida has misconceived the reasons that out-of-state placement was sought for Craig Price.*" (See Exhibits "A" & "B" attached to affidavit)

Lastly, the plaintiff also respectfully submits for the Courts inspection further documentary evidence inwhich attorney Dena Paolino-Saccia makes other significant comments such as: "*they screwed us both by their game in this transfer, more specifically the info. they gave Florida*," (See letter of 11/8/05, that has been attached to supporting affidavit as Exhibit "CC").

The plaintiff contends that the evidence supporting this disputed fact is indeed credible evidence that supports the averment that a genuine issue of material fact exists, because this material fact, (or rather disputed fact), "might affect the **outcome** of the suit under governing law" (See Aurelio V. R.I. **Dept.** of Administration, D.M.V., 985 F.Supp. 48 (1997), citing Morrissey V. Boston Five Cents Sav. Bank, 54 F.3d 27,31, (1st Cir. 1995), other citation omitted.

Substantial Evidence exists of Retaliation And a Retaliatory Transfer, and that the Defendants committed the Adverse Act of Intentionally forwarded Misinformation Regarding plaintiff and plaintiff's Institutional Record:

It is a disputed fact that the plaintiff was placed in a Close Management Segregation Status and facility because the defendants intentionally forwarded misinformation to the FLA. D.O.C. officials, and the plaintiff points to direct evidence now contained within the record that supports the existence of this dispute.

First, the plaintiff points out to the Court that on page 3. of Defendant DiNitto's April 17th, 2006, Affidavit, Defendant DiNitto in paragraph 9. listed various reasons as to why various states rejected the plaintiff's out-of-state transfer application. The states of "Virginia", and the state of "New Jersey", both rejected plaintiff's transfer application for the stated reason of "GANG AFFILIATION".

This stated reason given by the states of Virginia, and New Jersey, are precise offers of proof supporting the plaintiffs contention of defendants intentionally forwarding misinformation concerning plaintiff, and plaintiff's institutional record.

As attested to in plaintiff's affidavit in support to plaintiff's objection to defendant's Motion for Summary Judgment, the plaintiff has never been a member of a "gang", nor has the plaintiff ever been affiliated with any gang." Attributing the plaintiff with the inflamatory label of being "GANG AFFILIATED" not only undoubtedly contributed to the plaintiff being placed upon the Most restricted Close Management Segregative status within the FLA.D.O.C., but this highly inflamatory label is utter fabrication that was intentionally forwarded by the defendants (in particular defendant DiNitto) to the FLA. D.OC. officials, (See defendant DiNitto's affidavit at page 2(6) where defendant DiNitto makes the admission that he: "*prepared a package including the documents referenced above for the transfer application for inmate Craig Price*").

Also, as further attested to in plaintiff's affidavit in support to plaintiff's objection to defendant's Summary Judgment Motion, is plaintiff's sworn testimony that the plaintiff has never "Escaped from Prison," and nor has the plaintiff "injured a correctional guard so severely that the officer required hospitalization for an extended period of time." Moreover, nor is the plaintiff a "disciplinary transfer".

Attached to plaintiff's affidavit is a Report of Close Management form wherein this form not only records the above comments of misinformation, but this Report of Close Management form was used by FLA.D.O.C. officials to classify the plaintiff to the most restricted close Management segregative status, (see Exhibit "D" attached to affidavit).

The plaintiff contends that the FLA.D.O.C. officials did not conjure these statements up, but rather the FLA.D.O.C. was provided these statements of misinformation from someone. That someone could only logically be defendant DiNitto, because once again, the plaintiff points to defendant DiNitto's own admission on "page 2 paragraph 6" of defendant's affidavit.

Infact, another interesting fact the plaintiff would like to bring to the attention of the Court in regards to defendant DiNitto's own affidavit, is the fact that defendant DiNitto makes the "untrue assertion" that: "While Peice is housed in Florida, the Rhode Island Department of Corrections continues to "classify" him *in abstentia* to the level he was when he left Rhode Island. The Florida system may, under the Compact, house Peice in any classification level but Minimum (i.e. once the Florida system wants to put Peice in any level below Medium, they must seek Rhode Island's permission)." (emphasis added)

(See DiNitto's affidavit page 3 paragraph(12)).

Attached to plaintiffs affidavit in support to his objection to defendant's Motion for Summary Judgment, is a four page exhibit marked as Exhibit "DD", which clearly illustrates that in the months of "January", "June," and "August" of 2005, the plaintiff was classified to "C-Status" High Security by the R.I.D.O.C. classification board "in abstentia." However, in the month of March, 2006, (coincidently eleven days prior to the initial pre-trial scheduling conference which was conducted on April 11th 2006), the plaintiff was suddenly classified to "B-Status" by the R.I.D.O.C. classification board while plaintiff was "*in abstentia*." The plaintiff respectfully submits that this documentary evidence is in direct conflict with the above quoted assertion sworn to by defendant DiNitto in his April 17th, 2006, affidavit, and in defendant's attorney's similar assertions found on "page 11" of the defendants "Memorandum in support for Summary Judgment."

Lastly, on pgs. 6, 10, and 11, within the defendant's Memo. in support for Summary Judgment, and within the Two E-Mails marked as Exhibits "A" & "B" attached to plaintiffs affidavit in support to his objection to defendant's Motion for Summary Judgment,

is the basic contention that the R.I.D.O.C. does not have any sway over how the FLA. D.O.C. classifies plaintiff.

However the plaintiff respectfully argues that the defendants do have a say, (and indeed a right), as to recommending and even approving any decision the FLA. D.O.C. makes at any hearing (including classification hearings), involving the plaintiff. Clear and distinct proof of this contention can be found in exhibits "E" & "F", attached to plaintiff's affidavit in support of his objection to defendant's Motion for Summary Judgment, as well as in Section 21 "HEARINGS" of R.I.G.L.§ 13-11-1 thru 13-11-3, which is attached to defendant DiNitto's affidavit.

Thus, there is standing for the plaintiff to surmise that the R.I.D.O.C. officials do have sway, (and even a right), per Compact, and per R.I. and FLA. state law, that the defendants could even order a hearing and have the FLA. D.O.C. Classification officials reconsider the plaintiff's classification status within the FLA. D.O.C..

However, even with this ability and authority the plaintiff strongly suspects the R.I.D.O.C. does know they possess, the R.I.D.O.C. officials have failed to do so, and infact, the defendants have chosen to allow the plaintiff to languish unfairly on a Close Management restricted segregative status inwhich the defendants are ultimately responsible for, because they committed the adverse act of intentionally forwarding inflamatory misinformation regarding the plaintiff, and plaintiff's institutional record.

The plaintiff argues that all of the above described, (and the following arguments), support the plaintiff's assertion that he was retaliated upon by R.I.D.O.C. officials, and that the plaintiff was subjected to a retaliatory transfer for exercising his constitutional right to file a Complaint/Motion to Compel against R.I.D.O.C. officials to Compel Court ordered treatment.

Retaliation for the exercise of a prisoners constitutional rights is impermissible under federal law. *See Hines V. Gomez* 853 F. Supp. 329 330-31 (N.D.Cal. 1994) Furthermore, the courts have firmly established the prohibition of such conduct committed by prison officials:

> "prisoner pursuing a legal action against prison officials is exercising his First Amendment right to petition the government for the redress of grievances, and the alleged retaliation for the proper exercise of this right states a claim under federal law (collecting authority and citing to, *inter alia*, Mt. Healthy City School Dist. Bd. of Ed. V. Doyle, 429 U.S. 274. 97 S.Ct. 568. 50 L.Ed.2d. 471 (1977); Soranno's Gasco, Inc. V. Morgan 874 F.2d 1310 (9th Cir. 1989); Sprouse V. Babcock, 870 F.2d 450 (8th Cir. 1989); Wildberger V. Bracknell, 869 F.2d 1467 (11th Cir. 1989); Franco V. Kelly, 854 F.2d 584 (2nd Cir. 1988); Wolfel V. Bates, 707 F.2d 932 (6th Cir. 1983); Goff v. Burton 7 F.3d 734; "(See Scott V. Reno 902 F.Supp. 1195)" Sterling V. Wood 68 F.3d 1124, 1126 (8th Cir. 1995); Hazen V. Reagen 16 F.3d 921, 925 (8th Cir. 1994); Ponchik v. Bogan, 929 F.2d 419 (8th Cir. 1991); Murphy V. Missouri Dept. of Corrections 769 F.2d 502, 503 (8th Cir. 1985); McDonald V. Hall 610 F.2d 18, (1st Cir. 1979)."

The plaintiff contends that the record establishes the existence of substantial evidence supporting Retaliation and a retaliatory transfer, and that the Defendants have committed the adverse act of intentionally forwarding misinformation to FLA.D.O.C. officials concerning the plaintiff, and plaintiff's complete institutional record. Moreover, the plaintiff argues that even withstanding the fact that the plaintiff consented to be sent out-of-state for purposes of receiving court ordered treatment, the plaintiff did not consent to be subjected to the dire consequences of the defendant's blatant misinformation campaign.

The Non-Application of Figueroa to the Instant Matter, And the plaintiff can Satisfy the Burden of a "but for" Showing that establishes a Retaliatory Transfer Claim:

The defendants continually assert that the case of Figueroa Vs. DiNitto has a striking resemblance to the to the instant matter, and that the ruling in Figueroa should likewise be applied to the instant matter.

In response to defendants assertion, the plaintiff argues that the only similarity the Figueroa case has with the plaintiff's, is that both Figueroa and the plaintiff filed a retaliation claim against R.I.D.O.C. officials. The similarities end there.

However, unless the reasons why Figueroa had initially settled his law suit with the R.I.D.O.C. was because he agreed to be sent out-of-state because R.I.D.O.C officials promised to send him to an Out-of-state correctional facility so that he could attain court ordered treatment, then Yes, the plaintiff would not contest this particular similarity with Figueroa.

Or, unless Figueroa was punished by R.I.D.O.C officials because he exercised his First Amendment Right and filed a Complaint/Motion to Compel court ordered treatment against them, then again, yes, the plaintiff would not contest such a similarity with Figueroa.

Or, Unless Figueroa had been placed in a close management segregative status because R.I.D.O.C. officials intentionally forwarded inflamatory misinformation regarding his self, and his institutional record, to the prison officials at the state he was sent from Rhode Island to, then once again, Yes, the plaintiff would not quibble with such a similarity with Figueroa.

But seeing that the Figueroa case does not encompass any of the above described similarities, then no identical finding pursuant to the Figueroa case should be applied to the instant matter.

The plaintiff respectfully avers to the Court, that what should be applied to the plaintiffs case, is the necessary criteria the plaintiff needs to meet in order to establish a Retaliatory transfer, which renders as thus:

"In order to establish a claim for a retaliatory transfer, the plaintiff must demonstrate that the actual motivating factor for his transfer was because of his constitutionally protected activity. In other words, plaintiff must demonstrate that he would not have been transferred "but for" his constitutionally protected activity. (SEE McDonald vs. Hall, 610 F.2d 16, 18 (1st Cir. 1979))"

In light of the above quoted case law governing our circuit, the plaintiff would argue that as a key threshold inquiry into this matter, the court should respectfully consider whether the plaintiff's exercise of his constitutional right precipitated the alleged retaliatory transfer in this case. In other words, did the plaintiff have a constitutional right to file a Complaint/Motion to Compel against the R.I.D.O.C.?

Next, the plaintiff respectfully avers that the Court should then consider if the plaintiff's complaint can establish a chronology of events that casually links the protected activity as the motivating factor the plaintiff was transferred.

Lastly, the plaintiff would then respectfully ask the the Court to examine the question, (in light of the record), "Can the plaintiff prove that he would not have been transferred "but for" the alleged reason of retaliation?"

Beginning with this latter question, (because the plaintiff respectfully contends that the other above mentioned prerequisites can be rationally affirmed by the Court), the plaintiff would argue that the record supports the assertion that were it not for plaintiff filing a Complaint/Motion to Compel Court Ordered treatment against the R.I.D.O.C., then R.I.D.O.C. officials would not have transferred the plaintiff out-of-state.

First, the plaintiff points to the "suspect timing" the defendants agreed to transfer the plaintiff to an out-of-state correctional facility. As attested to, (by their own admission), on page 7 of defendant's Memo. in Support of Summary Judgment, the defendants admit:

> "Price consented to the transfer, and indeed pleaded for years to be transferred from the Rhode Island system." (emphasis added)

Again, on page 4, 3, of the same Memorandum, foot note number 3 yields the following admission:

> "Price had for years repeatedly made request to both the current and prior Director of Corrections to permit him to serve his sentence out of state. Those requests had been denied." (emphasis added)

The plaintiff emphatically raises the question of "Why, after of years of pleading, (without exercising the plaintiffs constitutional right to petition the courts), did the defendants and the R.I.D.O.C. refuse to transfer the plaintiff to an out-of-state facility where plaintiff could engage in Court ordered treatment, and then, once the plaintiff does exercise his constitutional right to petition the courts and files a Complaint/Motion to Compel court ordered treatment against R.I.D.O.C. officials, all of the sudden, after years of being denied an out-of-state transfer, the R.I.D.O.C. has a sudden change of mind?"

The only logical and reasonable answer to the above question, in light of the record, could only be because the plaintiff engaged in constitutionally protected activity.

Certainly the plaintiff is aware that the defendants are fronting behind the ruse that they sent the plaintiff out-of-state in an endeavor to assist the plaintiff with rehabilitative opportunities, for they have claimed:

> "The Department's position was that because Price was scheduled to be released from incarceration at some point in the future, and had been incarcerated since the age of 15 (Price was at that point 30 years old), it would benefit him, and the society into which he would eventually be released, if he engaged in programming and lived within a general population module."

(See Defendant's Memo in Support of Summary Judgment pg.4)

However, this "would be Nobel claim" quoted above falls well short of the credibility mark, because the record supports the contention that R.I.D.O.C. officials have done just about everything within their administrative power to deliberately stymie the the plaintiffs progress not only through the R.I D.O.C., but now even the FLA.D.O.C., because of the misinformation the defendants have intentionally forwarded to FLA.D.O.C. officials.

Furthermore, while it is clear to the plaintiff, and while the plaintiff readily concedes, that given the plaintiff's situation and circumstances surrounding his prison sentence and long term incarceration, the court could reasonably find that the R.I.D.O.C. officials could have a legitimate penological interest in transferring the plaintiff for rehabilitative purposes. However, if, in fact, the defendants abused the transfer process as a cover or ruse to silence and punish the plaintiff because he exercised his constitutional right to petition the courts for redress, then the defendants cannot assert that the plaintiff's transfer served a valid penological purpose

Key language used by the courts echoing this contention can be found in the case of Bruce Vs. Ylst 351 F.3d 1289 (9th Cir. 2003) which states:

"This comports with other circuits holding that prison officials may not defeat a retaliation claim on summary judment simply by articulating a general justification for a neutral process when there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right. See Cornell v. Woods 69 F.3d 1383-1388-89 (8th Cir. 1995); Woods v. Smith 60 F.3d 1161, 1165 (5th Cir. 1995); Smith v. Maschner, 899 F.2d 940, 948-49 (10th Cir. 1990)."

(Bruce v. Ylst 351 F.3d 1289 (9th Cir. 2003))

Bereft of showing the court that a legitimate penological interest resided within the R.I.D.O.C. officials intent and actions pertaining to plaintiff's transfer out-of-state, the plaintiff argues that the defendants would only have the lame excuses of plaintiff's "*infamy*" and "*Notoriety*" which on their faces are excuses that fall short of the mark, because as plaintiff has previously argued before, the Notoriety surrounding plaintiff and plaintiffs juvenile past is as old as the state's Maximum Security.

Moreover, if Notoriety was the R.I.D.O.C.'s major concern, then logic would have been applied long ago, and just maybe, perhaps one of the previous times I had pleaded with the prior and current director to transfer me out of state would have been acknowledged in a "penologically interested way", instead of falling on deaf ears.

The plaintiff implores the court to reject any claims the defendants have made endeavoring to articulate any justification of abusing the neutral process and procedures of transferring an inmate out-of-state, because the record and the facts, looked upon in a light most favorable to the plaintiff, support the conclusion that substantial evidence exist that plaintiff was subjected to a retaliatory transfer.

Plaintiff's inability to Secure Requested Affidavit from plaintiff's Previous Attorney, Defendants failure to produce Requested Discovery:

On the date of May 2, 2006, after numerous attempts of exercising due diligence to contact attorney Dana Paolino-Saccia, the plaintiff finally contacted her by telephone and relayed to her that he needed an affidavit from her regarding the instant matter.

Attorney Paolino-Saccia informed me that she just had a baby and that she had not been to her office much because of paternity circumstances and issues. Nevertheless though, attorney Paolino-Saccia said she would mail out an affidavit immediately to me.

The plaintiff then filed with this Court and extension for time based on the fact that he was not only waiting for his previous attorney's affidavit, but also for the defendants to provide him with the requested discovery he submitted to defendants back on the date of 4-5-06.

The discovery sought from defendants, and the affidavit plaintiff has been waiting on from Dana Paolino-Saccia, are both key aids that would better plaintiff's position of establishing the contention that a genuine issue of material fact exist, which thus, allows the plaintiff to defend better against Summary Judgment. However, as of the date of 5-29-06, the plaintiff has not received the discovery requested from defendants, nor the affidavit plaintiff has been respectfully waiting on from his previous counsel.

In regards to plaintiff's previous counsel, the plaintiff has compensated as best as he could concerning the anticipated testimony the plaintiff was relying on previous counsel for. The plaintiff has attempted to compensate with documentary evidence (i.e. letters from previous counsel), that reflect the gist of the testimony plaintiff's previous counsel would have provided had plaintiff received a timely affidavit from her.

In regards to the defendant's non-compliance thus far to produce the Court ordered discovery, (for the Court did order the defendants to comply with plaintiffs discovery request before May 31st, 2006), the plaintiff remains deprived of the said discovery, and plaintiff knows of no way to adequately compensate for such an impacting deprivation because the plaintiff believes the discovery sought will help him better defend against defendant's Motion for Summary Judgment.

Wherefore, because plaintiff cannot receive the requested testimony in due time, (because the plaintiff has to file his objection to defendant's Motion for Summary Judgment on or before May 31st, 2006), and because plaintiff cannot obtain the affidavit from previous counsel in due time, the plaintiff ask this Court to respectfully exercised it's authority and discretion and invoke Rule 56 (f) of the Federal Rules of Civil Procedure and refuse the defendant's application for judgment.

***CONCLUSION***

Contrary to what the defendants have averred in their memorandum in support for their Motion of Summary Judgment, it is not the plaintiff's subsequent displeasure with the FLA. D.O.C. that has led the plaintiff to file a retaliation claim against the R.I.D.O.C. officials, but rather, the plaintiff has brought a retaliation claim against R.I.D.O.C. officials because the defendants punished the plaintiff for exercising his 1st Amendment Right which allowed the plaintiff to file his Complaint/Motion to Compel to receive Court ordered treatment.

Moreover, not only has the plaintiff been placed on the most restricted close management segregative status because of the defendant's adverse action of intentionally forwarding misinformation to FLA.D.O.C. officials, but the plaintiff is in a correctional facility and status wherein plaintiff cannot receive the Court ordered treatment (which is the specific reason and purpose the plaintiff consented to an Out-of-State transfer.

Try as the defendants surely have tried to obfuscate the issues for the court to consider, and one will only come to one rational conclusion when the disputed facts lay bare, ....... an issue, (a genuine issue), of material fact exist.

The plaintiff does not lay claim to a specific right to his constitutional standing regarding classification, (for that would be a State Court matter because state machinery exist to argue upon state statutes pertaining to classification which may be actionable under state constitution).

Nor at this time, does the plaintiff want to pursue the matter of the court ordered treatment with the State Court Judge who sentenced plaintiff and ordered the R.I.D.O.C. to provide plaintiff with the best psychiatric and psychological treatment.

The plaintiff has brought the instant suit in federal court, (the appropriate jurisdiction), because the plaintiff contends that he was retaliated upon by R.I.D.O.C. officials because he exercised his federal right, (i.e. 1st Amendment), thus a federal violation has occured.

The issue, in this regard has transcended the confines of State Court and has now become a separate and distinct matter all in itself, and this matter deserves federal consideration, not State.

Furthermore, for what it's worth, contrary to what the defendants attorney believes regarding the authority of the Court to exercise its discretion, some courts do have the authority to order rehabilitation, (like Judge DeRobbio, the plaintiff's sentencing judge).

Ordering rehabilitation (not a status regarding classification) is a condition a sentencing Judge can lawfully affix to a sentence if sentencing statutes allow Judges to exercise their discretion. The Courts authority could then be exercised in a coercive manner, or vindictive manner to vindicate its authority, or even in some cases where it is particularly fitting, the Court could exercise its authority through both of these vessels simultaneously. This is what Contempt is all about for its the Courts most awesome power.

The plaintiff respectfully submits that if the facts and inferences to be drawn from the facts of this case are viewed in a light most favorable to the plaintiff, and that if the plaintiff is entitled to have the credibility of his evidence as forecast assumed

and that the plaintiff's version of all that is in dispute is accepted, with all internal conflicts resolved favorably to him, then Summary Judgment for the defendants should be denied

5/30/2006

Respectfully Submitted

: Craig C. Price pro se

Craig C. Price 126556 prose
Charlotte Correctional Institution
33123 Oil Well Road
Punta Gorda, Florida, 33955

CERTIFICATION

I hereby certify that on the 30th day of May 2006, I sent a true copy of the within document by first-class mail to defendants attorney Patricia Coyne-Fague at 40 Howard Avenue, Cranston, R.I., 02920.

: Craig C. Price pro se

**NOTARIZATION**

Subscribed and Sworn to before me at the Charlotte Correctional Institution, in Punta Gorda, Florida, on this 30th day of May, 2006.

: Craig C. Price
Plaintiff

: Kara Williams
Notary Public

NOTARY PUBLIC-STATE OF FLORIDA
Kara R. Williams
Commission # DD488568
Expires: NOV. 07, 2009
Bonded Thru Atlantic Bonding Co., Inc.