of and subject to the jurisdiction of the sending state and any escape from temporary custody may be dealt with in the same manner as an escape from the original place of imprisonment or in any other manner permitted by law.

(h) From the time that a party state receives custody of a prisoner pursuant to this agreement until such prisoner is returned to the territory and custody of the sending state, the state in which the one or more untried indictments, informations, or complaints are pending or in which trial is being had shall be responsible for the prisoner and shall also pay all costs of transporting, caring for, keeping, and returning the prisoner. The provisions of this paragraph shall govern unless the states concerned have entered into a supplementary agreement providing for a different allocation of costs and responsibilities as between or among themselves. Nothing herein contained shall be construed to alter or affect any internal relationship among the departments, agencies, and officers of and in the government of a party state, or between a party state and its subdivisions, as to the payment of costs or responsibilities therefor.

ARTICLE VI

Tolling Period and Limitations

(a) In determining the duration and expiration dates of the time periods provided in Articles III and IV, the running of said time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter.

(b) No provision of this agreement, and no remedy made available by this agreement, shall apply to any person who is adjudged to be mentally ill.

ARTICLE VII

Designation of Officer

Each state party to this agreement shall designate an officer who, acting jointly with like officers of other party states, shall promulgate rules and regulations to carry out more effectively the terms and provisions of this agreement and who shall provide, within and without the state, information necessary to the effective operation of this agreement.

ARTICLE VIII

Effectiveness and Withdrawal

This agreement shall enter into full force and effect as to a party state when such state has enacted the same into law. A state party to this agreement may withdraw herefrom by enacting a statute repealing the same. However, the withdrawal of any state shall not affect the status of any proceedings already initiated by inmates or by state officers at the time such withdrawal takes effect, nor shall it affect their rights in respect thereof.

ARTICLE IX

Construction and Severability

This agreement shall be liberally construed so as to effectuate its purposes. The provisions of this agreement shall be severable, and if any phrase, clause, sentence, or provision of this agreement is declared to be contrary to the constitution of any party state or of the United States or the applicability thereof to any government, agency, person, or circumstance is held invalid, the validity of the remainder of this agreement and the applicability thereof to any government, agency, person, or circumstance shall not be affected thereby. If this agreement shall be held contrary to the constitution of any state party hereto, the agreement shall remain in full force and effect as to the remaining states and in full force and effect as to the state affected as to all severable matters.

**History.**—s. 1, ch. 73-287; s. 3, ch. 89-531; s. 1623, ch. 97-102.

**941.46 Definition.**—As used in this part, "appropriate court" means, with reference to the courts of this state, the circuit court possessing the proper venue.

**History.**—s. 2, ch. 73-287.

**941.47 Cooperation with other states.**—All courts, departments, agencies, officers, and employees of this state and its political subdivisions are hereby directed to enforce the agreement on detainers and to cooperate with one another and with other party states in enforcing the agreement and effectuating its purpose.

**History.**—s. 3, ch. 73-287.

**941.49 Responsibility of delivery.**—It shall be lawful and mandatory upon the warden or other official in charge of a penal or correctional institution in this state to give over the person of any inmate thereof whenever so required by the operation of the Agreement on Detainers.

**History.**—s. 5, ch 73-287.

**941.50 Designation of officer.**—The officer who will serve as central administrator of, and information agent for, the Agreement on Detainers shall be designated by the secretary of the Department of Corrections.

**History.**—s. 6, ch. 73-287; s. 180, ch. 83-216.

## PART III

## INTERSTATE CORRECTIONS COMPACT

941.55 Title.
941.56 Interstate Corrections Compact.
941.57 Powers.

**941.55 Title.**—This part may be cited as the "Interstate Corrections Compact."

**History.**—s. 1, ch. 73-288.

**941.56 Interstate Corrections Compact.**—The Interstate Corrections Compact is hereby enacted into law and entered into by this state with any other states legally joining therein in the form substantially as follows:





Pg. 1 Exhibit "F"

INTERSTATE CORRECTIONS COMPACT

ARTICLE I

Purpose and Policy

The party states, desiring by common action to fully utilize and improve their institutional facilities and provide adequate programs for the confinement, treatment, and rehabilitation of various types of offenders, declare that it is the policy of each of the party states to provide such facilities and programs on a basis of cooperation with one another, thereby serving the best interests of such offenders and of society and effecting economies in capital expenditures and operational costs. The purpose of this compact is to provide for the mutual development and execution of such programs of cooperation or the confinement, treatment, and rehabilitation of offenders with the most economical use of human and material resources.

ARTICLE II

Definitions

As used in this compact, unless the context clearly requires otherwise:

(a) "State" means a state of the United States; the United States of America; a territory or possession of the United States; the District of Columbia; the Commonwealth of Puerto Rico.

(b) "Sending state" means a state party to this compact in which conviction or court commitment was had.

(c) "Receiving state" means a state party to this compact to which an inmate is sent for confinement other than a state in which conviction or court commitment was had.

(d) "Inmate" means a male or female offender who is committed, under sentence to, or confined in, a penal or correctional institution.

(e) "Institution" means any penal or correctional facility, including, but not limited to, a facility for the mentally ill or mentally defective, in which inmates as defined in (d) above may lawfully be confined.

ARTICLE III

Contracts

(a) Each party state may make one or more contracts with any one or more of the other party states for the confinement of inmates on behalf of a sending state in institutions situated within receiving states. Any such contract shall provide for:

1. Its duration.
2. Payments to be made to the receiving state by the sending state for inmate maintenance, extraordinary medical and dental expenses, and any participation in or receipt by inmates of rehabilitative or correctional services, facilities, programs, or treatment not reasonably included as part of normal maintenance.
3. Participation in programs of inmate employment, if any; the disposition or crediting of any payments received by inmates on account thereof; and the crediting of proceeds from, or disposal of, any products resulting therefrom.
4. Delivery and retaking of inmates.
5. Such other matters as may be necessary and appropriate to fix the obligations, responsibilities, and rights of the sending and receiving states.

(b) The terms and provisions of this compact shall be a part of any contract entered into by the authority of or pursuant thereto, and nothing in any such contract shall be inconsistent therewith.

ARTICLE IV

Procedures and Rights

(a) Whenever the duly constituted authorities in a state party to this compact which has entered into a contract pursuant to Article III shall decide that confinement in, or transfer of an inmate to, an institution within the territory of another party state is necessary or desirable in order to provide adequate quarters and care or an appropriate program of rehabilitation or treatment, said officials may direct that the confinement be within an institution within the territory of said other party state, the receiving state to act in that regard solely as agent for the sending state.

(b) The appropriate officials of any state party to this compact shall have access, at all reasonable times, to any institution in which it has a contractual right to confine inmates for the purpose of inspecting the facilities thereof and visiting such of its inmates as may be confined in the institution.

(c) Inmates confined in an institution pursuant to the terms of this compact shall at all times be subject to the jurisdiction of the sending state and may at any time be removed therefrom for transfer to a prison or other institution within the sending state, for transfer to another institution in which the sending state may have a contractual or other right to confine inmates, for release on probation or parole, for discharge, or for any other purpose permitted by the laws of the sending state; provided that the sending state shall continue to be obligated to such payments as may be required pursuant to the terms of any contract entered into under the terms of Article III.

(d) Each receiving state shall provide regular reports to each sending state on the inmates of that sending state in institutions pursuant to this compact, including a conduct record of each inmate, and certify said record to the official designated by the sending state, in order that each inmate may have official review of his or her record in determining and altering the disposition of said inmate in accordance with the law which may obtain in the sending state and in order that the same may be a source of information for the sending state.

(e) All inmates who may be confined in an institution pursuant to the provisions of this compact shall be treated in a reasonable and humane manner and shall be treated equally with such similar inmates of the receiving state as may be confined in the same institution. The fact of confinement in a receiving state shall not deprive any inmate so confined of any legal rights

which said inmate would have had if confined in an appropriate institution of the sending state.

(f) Any hearing or hearings to which an inmate confined pursuant to this compact may be entitled by the laws of the sending state may be had before the appropriate authorities of the sending state or of the receiving state if authorized by the sending state. The receiving state shall provide adequate facilities for such hearings as may be conducted by the appropriate officials of a sending state. In the event such hearing or hearings are had before officials of the receiving state, the governing law shall be that of the sending state and a record of the hearing or hearings as prescribed by the sending state shall be made. Said record together with any recommendations of the hearing officials shall be transmitted forthwith to the official or officials before whom the hearing would have been had if it had taken place in the sending state. In any and all proceedings had pursuant to the provisions of this subdivision, the officials of the receiving state shall act solely as agents of the sending state and no final determination shall be made in any matter except by the appropriate officials of the sending state.

(g) Any inmate confined pursuant to this compact shall be released within the territory of the sending state unless the inmate, and the sending and receiving states, shall agree upon release in some other place. The sending state shall bear the cost of such return to its territory.

(h) Any inmate confined pursuant to the terms of this compact shall have any and all rights to participate in and derive any benefits or incur or be relieved of any obligations or have such obligations modified or his or her status changed on account of any action or proceeding in which the inmate could have participated if confined in any appropriate institution of the sending state located within such state.

(i) The parent, guardian, trustee, or other person or persons entitled under the laws of the sending state to act for, advise, or otherwise function with respect to any inmate shall not be deprived of or restricted in his or her exercise of any power in respect of any inmate confined pursuant to the terms of this compact.

ARTICLE V

Acts Not Reviewable in Receiving State: Extradition

(a) Any decision of the sending state in respect of any matter over which it retains jurisdiction pursuant to this compact shall be conclusive upon and not reviewable within the receiving state, but if at the time the sending state seeks to remove an inmate from an institution in the receiving state there is pending against the inmate within such state any criminal charge, or if the inmate is formally accused of having committed within such state a criminal offense, the inmate shall not be returned without the consent of the receiving state until discharged from prosecution or other form of proceeding, imprisonment, or detention for such offense. The duly accredited officers of the sending state shall be permitted to transport inmates pursuant to this compact through any and all states party to this compact without interference.

(b) An inmate who escapes from an institution in which he or she is confined pursuant to this compact shall be deemed a fugitive from the sending state and from the state in which the institution is situated. In the case of an escape to a jurisdiction other than the sending or receiving state, the responsibility for institution of extradition or rendition proceedings shall be that of the sending state, but nothing contained herein shall be construed to prevent or affect the activities of officers and agencies of any jurisdiction directed toward the apprehension and return of an escapee.

ARTICLE VI

Federal Aid

Any state party to this compact may accept federal aid for use in connection with any institution or program, the use of which is or may be affected by this compact or any contract pursuant hereto and any inmate in a receiving state pursuant to this compact may participate in any such federally aided program or activity for which the sending and receiving states have made contractual provision, provided that if such program or activity is not part of the customary correctional regimen, the express consent of the appropriate official of the sending state shall be required therefor.

ARTICLE VII

Entry into Force

This compact shall enter into force and become effective and binding upon the states so acting when it has been enacted into law by any two states. Thereafter, this compact shall enter into force and become effective and binding as to any other of said states upon similar action by such state.

ARTICLE VIII

Withdrawal and Termination

This compact shall continue in force and remain binding upon a party state until it shall have enacted a statute repealing the same and providing for the sending of formal written notice of withdrawal from the compact to the appropriate officials of all other party states. An actual withdrawal shall not take effect until 1 year after the notices provided in said statute have been sent. Such withdrawal shall not relieve the withdrawing state from its obligations assumed hereunder prior to the effective date of withdrawal. Before the effective date of withdrawal, a withdrawing state shall remove to its territory, at its own expense, such inmates as it may have confined pursuant to the provisions of this compact.





Hyd. Exhibit

ARTICLE IX

Other Arrangements Unaffected

Nothing contained in this compact shall be construed to abrogate or impair any agreement or other arrangement which a party state may have with a nonparty state for the confinement, rehabilitation, or treatment of inmates nor to repeal any other laws of a party state authorizing the making of cooperative institutional arrangements.

ARTICLE X

Construction and Severability

The provisions of this compact shall be liberally construed and shall be severable. If any phrase, clause, sentence, or provision of this compact is declared to be contrary to the constitution of any participating state or of the United States or the applicability thereof to any government, agency, person, or circumstance is held invalid, the validity of the remainder of this compact and the applicability thereof to any government, agency, person, or circumstance shall not be affected thereby. If this compact shall be held contrary to the constitution of any state participating therein, the compact shall remain in full force and effect as to the remaining states and in full force and effect as to the state affected as to all severable matters.

History.—s. 2, ch. 73-288; s. 1624, ch. 97-102.

**941.57 Powers.**—The Department of Corrections is hereby authorized and directed to do all things necessary or incidental to the carrying out of the compact in every particular.

History.—s. 3, ch. 73-288; s. 20, ch. 77-120; s. 33, ch. 79-3.

of and subject to the jurisdiction of the sending state and any escape from temporary custody may be dealt with in the same manner as an escape from the original place of imprisonment or in any other manner permitted by law.

(h) From the time that a party state receives custody of a prisoner pursuant to this agreement until such prisoner is returned to the territory and custody of the sending state, the state in which the one or more untried indictments, informations, or complaints are pending or in which trial is being had shall be responsible for the prisoner and shall also pay all costs of transporting, caring for, keeping, and returning the prisoner. The provisions of this paragraph shall govern unless the states concerned have entered into a supplementary agreement providing for a different allocation of costs and responsibilities as between or among themselves. Nothing herein contained shall be construed to alter or affect any internal relationship among the departments, agencies, and officers of and in the government of a party state, or between a party state and its subdivisions, as to the payment of costs or responsibilities therefor.

ARTICLE VI

Tolling Period and Limitations

(a) In determining the duration and expiration dates of the time periods provided in Articles III and IV, the running of said time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter.

(b) No provision of this agreement, and no remedy made available by this agreement, shall apply to any person who is adjudged to be mentally ill.

ARTICLE VII

Designation of Officer

Each state party to this agreement shall designate an officer who, acting jointly with like officers of other party states, shall promulgate rules and regulations to carry out more effectively the terms and provisions of this agreement and who shall provide, within and without the state, information necessary to the effective operation of this agreement.

ARTICLE VIII

Effectiveness and Withdrawal

This agreement shall enter into full force and effect as to a party state when such state has enacted the same into law. A state party to this agreement may withdraw herefrom by enacting a statute repealing the same. However, the withdrawal of any state shall not affect the status of any proceedings already initiated by inmates or by state officers at the time such withdrawal takes effect, nor shall it affect their rights in respect thereof.

ARTICLE IX

Construction and Severability

This agreement shall be liberally construed so as to effectuate its purposes. The provisions of this agreement shall be severable, and if any phrase, clause, sentence, or provision of this agreement is declared to be contrary to the constitution of any party state or of the United States or the applicability thereof to any government, agency, person, or circumstance is held invalid, the validity of the remainder of this agreement and the applicability thereof to any government, agency, person, or circumstance shall not be affected thereby. If this agreement shall be held contrary to the constitution of any state party hereto, the agreement shall remain in full force and effect as to the remaining states and in full force and effect as to the state affected as to all severable matters.

**History.**—s. 1, ch. 73-287; s. 3, ch. 89-531; s. 1623, ch. 97-102.

**941.46 Definition.**—As used in this part, "appropriate court" means, with reference to the courts of this state, the circuit court possessing the proper venue.

**History.**—s. 2, ch. 73-287.

**941.47 Cooperation with other states.**—All courts, departments, agencies, officers, and employees of this state and its political subdivisions are hereby directed to enforce the agreement on detainers and to cooperate with one another and with other party states in enforcing the agreement and effectuating its purpose.

**History.**—s. 3, ch. 73-287.

**941.49 Responsibility of delivery.**—It shall be lawful and mandatory upon the warden or other official in charge of a penal or correctional institution in this state to give over the person of any inmate thereof whenever so required by the operation of the Agreement on Detainers.

**History.**—s. 5, ch. 73-287.

**941.50 Designation of officer.**—The officer who will serve as central administrator of, and information agent for, the Agreement on Detainers shall be designated by the secretary of the Department of Corrections.

**History.**—s. 6, ch. 73-287; s. 180, ch. 83-216.

**PART III**

**INTERSTATE CORRECTIONS COMPACT**

941.55 Title.
941.56 Interstate Corrections Compact.
941.57 Powers.

**941.55 Title.**—This part may be cited as the "Interstate Corrections Compact."

**History.**—s. 1, ch. 73-288.

**941.56 Interstate Corrections Compact.**—The Interstate Corrections Compact is hereby enacted into law and entered into by this state with any other states legally joining therein in the form substantially as follows:





INTERSTATE CORRECTIONS COMPACT

ARTICLE I

Purpose and Policy

The party states, desiring by common action to fully utilize and improve their institutional facilities and provide adequate programs for the confinement, treatment, and rehabilitation of various types of offenders, declare that it is the policy of each of the party states to provide such facilities and programs on a basis of cooperation with one another, thereby serving the best interests of such offenders and of society and effecting economies in capital expenditures and operational costs. The purpose of this compact is to provide for the mutual development and execution of such programs of cooperation or the confinement, treatment, and rehabilitation of offenders with the most economical use of human and material resources.

ARTICLE II

Definitions

As used in this compact, unless the context clearly requires otherwise:

(a) "State" means a state of the United States; the United States of America; a territory or possession of the United States; the District of Columbia; the Commonwealth of Puerto Rico.

(b) "Sending state" means a state party to this compact in which conviction or court commitment was had.

(c) "Receiving state" means a state party to this compact to which an inmate is sent for confinement other than a state in which conviction or court commitment was had.

(d) "Inmate" means a male or female offender who is committed, under sentence to, or confined in, a penal or correctional institution.

(e) "Institution" means any penal or correctional facility, including, but not limited to, a facility for the mentally ill or mentally defective, in which inmates as defined in (d) above may lawfully be confined.

ARTICLE III

Contracts

(a) Each party state may make one or more contracts with any one or more of the other party states for the confinement of inmates on behalf of a sending state in institutions situated within receiving states. Any such contract shall provide for:

1. Its duration.
2. Payments to be made to the receiving state by the sending state for inmate maintenance, extraordinary medical and dental expenses, and any participation in or receipt by inmates of rehabilitative or correctional services, facilities, programs, or treatment not reasonably included as part of normal maintenance.
3. Participation in programs of inmate employment, if any; the disposition or crediting of any payments received by inmates on account thereof; and the crediting of proceeds from, or disposal of, any products resulting therefrom.
4. Delivery and retaking of inmates.
5. Such other matters as may be necessary and appropriate to fix the obligations, responsibilities, and rights of the sending and receiving states.

(b) The terms and provisions of this compact shall be a part of any contract entered into by the authority of or pursuant thereto, and nothing in any such contract shall be inconsistent therewith.

ARTICLE IV

Procedures and Rights

(a) Whenever the duly constituted authorities in a state party to this compact which has entered into a contract pursuant to Article III shall decide that confinement in, or transfer of an inmate to, an institution within the territory of another party state is necessary or desirable in order to provide adequate quarters and care or an appropriate program of rehabilitation or treatment, said officials may direct that the confinement be within an institution within the territory of said other party state, the receiving state to act in that regard solely as agent for the sending state.

(b) The appropriate officials of any state party to this compact shall have access, at all reasonable times, to any institution in which it has a contractual right to confine inmates for the purpose of inspecting the facilities thereof and visiting such of its inmates as may be confined in the institution.

(c) Inmates confined in an institution pursuant to the terms of this compact shall at all times be subject to the jurisdiction of the sending state and may at any time be removed therefrom for transfer to a prison or other institution within the sending state, for transfer to another institution in which the sending state may have a contractual or other right to confine inmates, for release on probation or parole, for discharge, or for any other purpose permitted by the laws of the sending state; provided that the sending state shall continue to be obligated to such payments as may be required pursuant to the terms of any contract entered into under the terms of Article III.

(d) Each receiving state shall provide regular reports to each sending state on the inmates of that sending state in institutions pursuant to this compact, including a conduct record of each inmate, and certify said record to the official designated by the sending state, in order that each inmate may have official review of his or her record in determining and altering the disposition of said inmate in accordance with the law which may obtain in the sending state and in order that the same may be a source of information for the sending state.

(e) All inmates who may be confined in an institution pursuant to the provisions of this compact shall be treated in a reasonable and humane manner and shall be treated equally with such similar inmates of the receiving state as may be confined in the same institution. The fact of confinement in a receiving state shall not deprive any inmate so confined of any legal rights

which said inmate would have had if confined in an appropriate institution of the sending state.

(f) Any hearing or hearings to which an inmate confined pursuant to this compact may be entitled by the laws of the sending state may be had before the appropriate authorities of the sending state or of the receiving state if authorized by the sending state. The receiving state shall provide adequate facilities for such hearings as may be conducted by the appropriate officials of a sending state. In the event such hearing or hearings are had before officials of the receiving state, the governing law shall be that of the sending state and a record of the hearing or hearings as prescribed by the sending state shall be made. Said record together with any recommendations of the hearing officials shall be transmitted forthwith to the official or officials before whom the hearing would have been had if it had taken place in the sending state. In any and all proceedings had pursuant to the provisions of this subdivision, the officials of the receiving state shall act solely as agents of the sending state and no final determination shall be made in any matter except by the appropriate officials of the sending state.

(g) Any inmate confined pursuant to this compact shall be released within the territory of the sending state unless the inmate, and the sending and receiving states, shall agree upon release in some other place. The sending state shall bear the cost of such return to its territory.

(h) Any inmate confined pursuant to the terms of this compact shall have any and all rights to participate in and derive any benefits or incur or be relieved of any obligations or have such obligations modified or his or her status changed on account of any action or proceeding in which the inmate could have participated if confined in any appropriate institution of the sending state located within such state.

(i) The parent, guardian, trustee, or other person or persons entitled under the laws of the sending state to act for, advise, or otherwise function with respect to any inmate shall not be deprived of or restricted in his or her exercise of any power in respect of any inmate confined pursuant to the terms of this compact.

ARTICLE V

Acts Not Reviewable in Receiving State: Extradition

(a) Any decision of the sending state in respect of any matter over which it retains jurisdiction pursuant to this compact shall be conclusive upon and not reviewable within the receiving state, but if at the time the sending state seeks to remove an inmate from an institution in the receiving state there is pending against the inmate within such state any criminal charge, or if the inmate is formally accused of having committed within such state a criminal offense, the inmate shall not be returned without the consent of the receiving state until discharged from prosecution or other form of proceeding, imprisonment, or detention for such offense. The duly accredited officers of the sending state shall be permitted to transport inmates pursuant to this compact through any and all states party to this compact without interference.

(b) An inmate who escapes from an institution in which he or she is confined pursuant to this compact shall be deemed a fugitive from the sending state and from the state in which the institution is situated. In the case of an escape to a jurisdiction other than the sending or receiving state, the responsibility for institution of extradition or rendition proceedings shall be that of the sending state, but nothing contained herein shall be construed to prevent or affect the activities of officers and agencies of any jurisdiction directed toward the apprehension and return of an escapee.

ARTICLE VI

Federal Aid

Any state party to this compact may accept federal aid for use in connection with any institution or program, the use of which is or may be affected by this compact or any contract pursuant hereto and any inmate in a receiving state pursuant to this compact may participate in any such federally aided program or activity for which the sending and receiving states have made contractual provision, provided that if such program or activity is not part of the customary correctional regimen, the express consent of the appropriate official of the sending state shall be required therefor.

ARTICLE VII

Entry into Force

This compact shall enter into force and become effective and binding upon the states so acting when it has been enacted into law by any two states. Thereafter, this compact shall enter into force and become effective and binding as to any other of said states upon similar action by such state.

ARTICLE VIII

Withdrawal and Termination

This compact shall continue in force and remain binding upon a party state until it shall have enacted a statute repealing the same and providing for the sending of formal written notice of withdrawal from the compact to the appropriate officials of all other party states. An actual withdrawal shall not take effect until 1 year after the notices provided in said statute have been sent. Such withdrawal shall not relieve the withdrawing state from its obligations assumed hereunder prior to the effective date of withdrawal. Before the effective date of withdrawal, a withdrawing state shall remove to its territory, at its own expense, such inmates as it may have confined pursuant to the provisions of this compact.





ARTICLE IX

Other Arrangements Unaffected

Nothing contained in this compact shall be construed to abrogate or impair any agreement or other arrangement which a party state may have with a nonparty state for the confinement, rehabilitation, or treatment of inmates nor to repeal any other laws of a party state authorizing the making of cooperative institutional arrangements.

ARTICLE X

Construction and Severability

The provisions of this compact shall be liberally construed and shall be severable. If any phrase, clause, sentence, or provision of this compact is declared to be contrary to the constitution of any participating state or of the United States or the applicability thereof to any government, agency, person, or circumstance is held invalid, the validity of the remainder of this compact and the applicability thereof to any government, agency, person, or circumstance shall not be affected thereby. If this compact shall be held contrary to the constitution of any state participating therein, the compact shall remain in full force and effect as to the remaining states and in full force and effect as to the state affected as to all severable matters.

**History.**—s. 2, ch. 73-288; s. 1624, ch. 97-102.

**941.57 Powers.**—The Department of Corrections is hereby authorized and directed to do all things necessary or incidental to the carrying out of the compact in every particular.

**History.**—s. 3, ch. 73-288; s. 20, ch. 77-120; s. 33, ch. 79-3.