UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

**CRAIG C. PRICE,** *pro se*,

    plaintiff,

v.                                                                                  C.A. No. 05 - 389 S

**ASHBEL T. WALL, II**, Director, Rhode
Island Department of Corrections,
**JAKE GADSDEN, JR.**, Assistant Director
of the Rhode Island Department of
Corrections, and **JOSEPH A. DINITTO**,
Assistant Director of Classification,
Rhode Island Department of
Corrections,

    defendants.

**Report and Recommendation**

Jacob Hagopian, Senior United States Magistrate Judge

    Craig C. Price ("Price" or "plaintiff"), *pro se*, an inmate in the custody of the Rhode Island Department of Corrections, filed a complaint pursuant to 42 U.S.C. § 1983 naming as defendants Ashbel T. Wall, II, Director of the Rhode Island Department of Corrections, Jake Gadsden, Jr., Assistant Director of the Rhode Island Department of Corrections, and Joseph A. DiNitto, Associate Director of Classification at the Rhode Island Department of Corrections (collectively "defendants"). In his complaint, Plaintiff alleges that the defendants retaliated against him in violation of his First Amendment rights.

    Presently before the Court is the motion of the defendants for

summary judgement pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Plaintiff has opposed the motion. This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for a report and recommendation. For the reasons that follow, I recommend that the defendants' motion for summary judgement be **GRANTED**.

### Background

The following are the undisputed facts, unless otherwise noted, gleaned from the parties' submissions:

A Rhode Island state court judge sentenced the plaintiff Craig C. Price to a term of imprisonment at the Rhode Island Department of Corrections ("RI DOC"). As an adult, Price has been convicted of numerous offenses, including *inter alia* criminal contempt of court, assault on a correctional officer, and extortion and blackmail.[1] Price also has had 47 disciplinary infractions while confined as an adult offender.

In August 2003, Price, with the assistance of counsel, filed a Motion in the state courts seeking an order directing the RI DOC to provide psychological and psychiatric treatment.[2] The plaintiff claimed that the RI DOC was required - pursuant to a previously

---

[1] As a juvenile, Price committed four murders. See State v. Price, 820 A.2d 956 (R.I. 2003).

[2] While the Court is aware that many programs exist in prison for the treatment and education of inmates, for simplicity purposes, the Court will refer to the psychological and psychiatric treatment that plaintiff seeks as "rehabilitation" or "rehabilitation programs" hereafter.

issued state court order - to provide this rehabilitation, and that the RI DOC was not so providing.

During the pendency of the state court proceedings, counsel for Price and counsel for the RI DOC engaged in settlement discussions. The settlement discussions were fruitful, with Price agreeing to withdraw the motion to compel and "agree[ing] and consent[ing] to be voluntarily transferred to a correctional facility outside the State of Rhode Island." See Plaintiff's Exhibit B(a), Stipulation filed in State of Rhode Island Family Court, FC # P94-087CR, Dckt # 1-4, pp. 3-4.

The impetus for the transfer for both Price and the RI DOC was essentially the same. Both sides sought to confine Price in a location where he could potentially participate in rehabilitation programs. Indeed, the Department of Corrections sought to "give [Price] a new start in a system unfamiliar with his background," because Price's "movement" within the Rhode Island prison was limited due to his notoriety and the widespread knowledge among the inmate population of his crimes. See Affidavit of Joseph DiNitto, Dckt # 23-2, p. 2, ¶ 6; see also Plaintiff's Exhibit C, Dckt # 37-4, Defendants' Answers to Interrogatories, # 6.

While plaintiff preferred to be confined in a facility located in California, New Jersey, Illinois, Ohio, South Carolina, or a facility operated by the Federal government, this was not part of the agreement, nor does it appear that the RI DOC made any promises

-3-

to transfer Price to any of those locations. Additionally, plaintiff's attorney communicated with the RI DOC and indicated that Price was "not amenable to a transfer to New Mexico, Virginia or any New England states." See Plaintiff's Exhibit C, Dckt # 1-4, Letter from Price's former attorney to RI DOC Legal Counsel. In any event, the state court matter was dismissed, and the RI DOC embarked on finding a new confinement facility outside of Rhode Island to house the plaintiff.

To that end, Joseph A. DiNitto, Associate Director of Classification at the RI DOC, a defendant here, prepared plaintiff's transfer application as required by the Interstate Corrections Compact. See R.I. Gen. Laws 13-11-1 through 13-11-3; see also Defendants' Exhibit B, Dckt #23-3, Intergovernmental Agreement for the Implementation of the Interstate Corrections Compact ("Compact"). The Compact requires the RI DOC to include various information regarding the inmate in the inmate's transfer application, such as the inmate's criminal history, disciplinary history, escape history, enemy lists, and the reasons for the transfer.

After preparing Price's application, DiNitto forwarded it to some thirteen jurisdictions, including most of the jurisdictions requested by the plaintiff.[3] Price's application, however, was

---

[3] DiNitto forwarded Price's application to all of Price's requested locations, except California. Rhode Island does not have an agreement with California for the exchange of inmates.

rejected by eleven of the jurisdictions for various reasons. The only jurisdictions to accept Price were New Mexico and Florida. The Director of the RI Department of Corrections, defendant A.T. Wall, decided that the Florida correctional system was more suitable for Price's rehabilitative and security needs. Accordingly, the RI DOC transferred Price to the Florida correctional system, where he is presently confined.

While confined in Florida, officials at the RI DOC hold plaintiff's Rhode Island classification proceedings *in absentia.* The RI DOC has classified Price as a "C" status inmate but recently upgraded his status to "B". See Plaintiff's Exhibit DD, Dckt # 35-7, pp. 1-4. Notwithstanding the Rhode Island classification proceedings, Florida may confine Price in any of its prisons at any classification level as it determines, with the exception that Florida may not classify Price lower than a Medium Security inmate unless written approval is received from RI DOC.

Initially, Florida classified Price as a "Close Management I" status, a restrictive classification that apparently did not permit Price to participate in rehabilitation programs. Price's initial classification in Florida was due to "the violence contained in [his] prison record" but Price has since been classified as "Close Management II" status, a less restrictive classification. See Plaintiff's Exhibit M, Dckt # 1-14. Thus, Price has begun his "movement" through the Florida prison system. As Price progresses

through the levels of classification in the Florida correctional system, he will have access to more rehabilitation programs and privileges. See id.

Plaintiff filed suit pursuant to 42 U.S.C. § 1983 seeking relief. Plaintiff contends in his complaint that the Rhode Island Department of Corrections, particularly the named defendants here - Wall, Gadsden, and DiNitto, intentionally transferred him to the Florida correctional system in an effort to frustrate his rehabilitation, in retaliation for filing the motion to compel in the state courts. Plaintiff also alleges that these defendants continue to classify him in the most restrictive manner while at the Florida prison, frustrating his rehabilitation, in retaliation for filing the motion to compel in state courts.

Defendants have moved for summary judgement pursuant to Fed.R.Civ.P. 56(c) on plaintiff's claims, asserting that the undisputed facts demonstrate that plaintiff's First Amendment rights were not violated. Plaintiff has opposed the motion.

### Discussion

#### a. Summary Judgment Standard

Summary judgment's role in civil litigation is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Garside v. Osco Drug, Inc., 895 F.2d. 46, 50 (1st Cir. 1990). Summary judgment can only be granted when "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Rule 56 has a distinctive set of steps. When requesting summary judgment, the moving party must "put the ball in play, averring 'an absence of evidence to support a nonmoving party's case.'" Garside, 895 F.2d at 48 (quoting Celotex v. Catrett, 477 U.S. 317, 325(1986)). The nonmovant then must document some factual disagreement sufficient to deflect brevis disposition. Not every discrepancy in the proof is enough to forestall summary judgment; the disagreement must relate to some issue of material fact. See Anderson v. Liberty Lobby Inc., 477 U.S. 242, 247-248 (1986).

On issues where the nonmovant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion. See id. at 256-257. This evidence "can not be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a fact finder must resolve at an ensuing trial." Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989). Evidence that is merely colorable or is not significantly probative cannot deter summary judgment. Anderson, 477 U.S. at 256-257.

**b. 42 U.S.C. § 1983 and the First Amendment**

Plaintiff has brought suit pursuant to 42 U.S.C. § 1983.

Section 1983 provides, in pertinent part:

> Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983.

Section 1983 creates a cause of action for persons who are denied a federally protected right. See, e.g., Baker v. McCollan, 443 U.S. 137 (1979) (constitutional deprivations); Maine v. Thiboutot, 448 U.S. 1 (1980) (statutory deprivations). The initial inquiry in a Section 1983 action is (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether the conduct deprived the plaintiff of a constitutional right or a federal statutory right. Gomez v. Toledo, 446 U.S. 635, 640 (1980). There is no dispute that the DiNitto, Wall and Gadsen acted under the color of state law. The only question is whether the plaintiff can demonstrate that these defendants violated his constitutional rights.

Here, Price has filed his two claims under the First Amendment of the United States Constitution. The First Amendment protects, *inter alia*, a citizen's right to petition the government. See U.S. CONST. Amend. I. The right to petition the government is "among the most precious of the liberties safeguarded by the Bill of Rights."

United Mine Workers v. Illinois State Bar Ass'n, 389 U.S. 217, 222 (1967). Retaliation for the exercise of this right, or any constitutionally protected right, is itself a violation of the constitution actionable under 42 U.S.C. § 1983. White v. Napoleon, 897 F.2d 103, 111-112 (3rd Cir. 1990). Actions, which standing alone do not violate the constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right. Thaddesu-X v. Blatter, 175 F.3d 378, 386 (6th Cir. 1999)(en banc).

"There is, of course, a *de minimus* level of imposition with which the Constitution is not concerned." Ingraham v. Wright, 430 U.S. 651, 674 (1977). Only retaliatory conduct that would deter a similarly situated individual from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation. Otherwise, the retaliatory act is simply *de minimus* and outside the ambit of constitutional protection. Moreover, claims of retaliation from prison inmates must be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in penal institutions. See Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995). Prison officials have wide latitude in the control and discipline of inmates.

To surpass the summary judgement hurdle, Price must demonstrate more than his personal belief that he is the victim of retaliation. Conclusory assertions of retaliatory motive and

speculation are not sufficient to withstand summary judgement. Indeed, summary judgement is appropriate where proof of retaliation is based entirely on circumstantial evidence. See Colon v. Coughlin, 58 F.3d 865, 873 (2nd Cir. 1995)(citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2nd Cir. 1983).

Thus, Price must identify facts in the record which demonstrate that (1) he engaged in constitutionally protected conduct, (2) he suffered an adverse action, and (3) there was a causal connection between the constitutionally protected conduct and the adverse action, so that it can be said that the constitutionally protected conduct was a motivating factor for the adverse action. See Wheeler v. Natale, 178 F.Supp.2d 407, 410 (S.D.N.Y. 2001). Price must demonstrate that the retaliatory act would not have occurred "but for" the protected conduct. McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979). The requirement of a "but for" showing together with the wide latitude afforded prison officials may make summary judgement particularly appropriate. Id.

Furthermore, even if the defendant had an impermissible reason for the alleged adverse action, if a separate, permissible reasons exists, the defendant will not be liable. See Graham v. Hendeson, 89 F.3d 75, 79 (2nd Cir. 1996); Golf v. Burton, 7 F.3d 734, 737 (8th Cir. 1993); Ponchik v. Bogan, 929 F.2d 419, 420 (8th Cir. 1991).

**1. Protected Conduct**

Plaintiff must first demonstrate that he engaged in constitutionally protected conduct. Here, the undisputed facts demonstrate that Price filed suit in the state courts against the Rhode Island Department of Corrections, challenging their failure to provide him with the court ordered rehabilitation programs. It is well established that prisoners have a constitutional right of access to the courts grounded in the First Amendment's right "to petition the Government for a redress of grievances." See U.S. CONST. amend.I; see also Lewis v. Casey, 518 U.S. 343 (1996). Thus, plaintiff has a federally protected right to access the courts and, consequently, has satisfied the first hurdle to demonstrate a claim of retaliation.

**2. Adverse Action**

Next, Price must demonstrate that he has suffered an adverse action. An action is considered "adverse" for retaliation purposes if it would "deter a person of ordinary firmness" from the exercise of the right at stake. Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982). In the prison context, actions comparable to a transfer to segregation or an involuntary transfer to an out of state prison can generally be considered "adverse" to an inmate. See e.g. Thaddeus-X, 175 F.3d at 396-98; McDonald, 610 F.2d at 18.

**A. Price's Transfer to Florida's Correctional System.**

Price first claims that the defendants transferred him to Florida in retaliation for his legal activities. Indeed, the

undisputed facts demonstrate that Price has been transferred to Florida's correctional system. However, the undisputed facts also indicate that Price's transfer out of state was made at Price's request and with his consent.

This Court has difficulty finding that the transfer at issue here is sufficiently "adverse" to Price. This is particularly so because Price, with the assistance of counsel, sought out from the RI DOC a transfer outside of Rhode Island. Price entered into an agreement in the state courts to be transferred anywhere, and thus, the transfer was voluntary. Transferring Price to an out of state confinement facility cannot be considered adverse to Price for retaliation purposes, where, as here, Price sought out the transfer. Moreover, there is no evidence which demonstrates that the Florida correctional system is significantly different than the Rhode Island correctional system.

Thus, I find that the transfer of Price to an out of state confinement facility, under these particular circumstances, not sufficiently adverse to come within the reach of a retaliation claim. Price has failed to demonstrate that his transfer would "deter a person of ordinary firmness" from the exercising the right to access the courts. Therefore, the defendants' motion for summary judgement should be granted on this claim. I so recommend.

**B. Price's Classification within the Florida Correctional System.**

Second, Price claims that he is classified in a harsh or restrictive manner at the Florida prison, in retaliation for his legal activities. Indeed, the undisputed facts demonstrate that Price is, or was, classified in a restrictive classification while confined at the Florida prison. However, no evidence demonstrates that his Florida classification is more severe than the classification Price faced while confined at the RI DOC.

While classifying an inmate to a restrictive or harsh classification may be sufficiently adverse to deter a person of ordinary firmness from exercising his right to access the courts, here Price has failed to demonstrate that his classification in Florida is significantly more severe than his classification in Rhode Island. Thus, I find that Price has not demonstrated an adverse action with respect to this claim. Therefore, defendants' motion for summary judgement should be granted on this claim. I so recommend.

### 3. Causal Connection

Assuming *arguendo* that Price sufficiently demonstrated an "adverse" action for retaliation purposes, I will discuss the final hurdle that Price must surpass to defeat the defendants' motion for summary judgement. As the third element, plaintiff must set forth evidence demonstrating a causal connection between his legal activities and the adverse action, so that it can be said that Price's constitutionally protected conduct was a motivating factor

for the adverse action. Price must demonstrate that the retaliatory act would not have occurred "but for" his legal activities. McDonald, 610 F.2d at 18. In other words, Price must demonstrate that the adverse conduct was punishment for his legal activities. Price, however, has failed to set forth any evidence necessary to sustain this hurdle.

### A. Price's Transfer to the Florida Correctional System.

Price's first claim asserts that the defendants transferred him to the Florida correctional system in retaliation for his legal activities. However, no evidence indicates that Wall, DiNitto or Gadsen transferred Price to Florida punish him for his legal activities.

Rather, the undisputed facts demonstrate that the defendants transferred Price to the Florida prison system after seeking out - on Price's behalf and with Price's consent- another prison system in which to confined him, pursuant to a lawfully executed agreement entered in the state courts. Pursuant to this agreement, DiNitto submitted Price's transfer application to thirteen jurisdictions. However, only two jurisdictions accepted Price -Florida and New Mexico. The remaining eleven rejected Price's application for various reasons.

The undisputed facts also demonstrate that Price's attorney communicated with the RI DOC and indicated that Price was not amenable to a transfer to New Mexico. Thus, defendants had only

-14-

one option to comply with the state court stipulation: transfer Price to Florida. Moreover, the undisputed facts demonstrate that Wall choose to send Price to the Florida system because it was "more suitable ... for his rehabilitative and security needs." No evidence suggests that Wall, DiNitto or Gadsen transferred Price to the Florida to punish him for his legal activities. Additionally, defendants had a completely permissible reason for the transfer, namely, to comply with the state court agreement.

Accordingly, I find that Price has set forth no evidence to sustain his claim that the defendants transferred him to the Florida correctional system because of his legal activities. Therefore, the defendants' motion for summary judgement be granted on this claim. I so recommend.

**B. Price's Classification within the Florida Correctional System.**

Next, plaintiff claims in his complaint that defendants classify him in a restrictive classification within the Florida correctional system because of his legal activities. However, contrary to plaintiff's belief, the undisputed facts demonstrate that it is Florida officials who are responsible for the classification of inmates housed in its facilities, including inmates transferred from other jurisdictions. Thus, it is Florida officials that have determined where to confine Price in its prison system and at what classification level. Defendants' approval is

not needed, nor is it solicited for classification purposes, unless and until Florida decides to classify Price to a level lower than a Medium Security inmate.

Accordingly, plaintiff's claim that the defendants classify or confine him in a restrictive classification at the Florida prison, in retaliation for is legal activities, has no factual support. It is Florida that decides which of its facilities to confine Price and what level to classify him.

Construing plaintiff's submissions liberally, plaintiff also appears to claim that the defendants supplied Florida prison officials with inaccurate information, resulting in a restrictive classification, in retaliation for his legal activities. Again, however, Price has failed to substantiate his claim with evidence. Plaintiff's claim is based purely on speculation, innuendo, and second hand information making summary judgement appropriate.

Notwithstanding the lack of evidence to support this claim, the undisputed facts demonstrate that Florida has classified Price to a restrictive classification due to the violence contained in his prison record. Price stands convicted of four murders, assaults on correctional officers, and assaults on other inmates. There is no question that Florida prison officials are aware of Price's brutal past. Any harsh or restrictive prison classification by Florida is of Price's own making.

Accordingly, I find that Price has failed to set forth any evidence demonstrating that Rhode Island officials are responsible for the classification decisions at the Florida prison where Price is confined. More importantly here, Price has failed to set forth evidence that the defendants retaliated against him by classifying him in a harsh or restrictive manner because of his legal activities. I therefore recommend that the defendants' motion for summary judgement be granted on this claim.

### Conclusion

Accordingly, for the reasons set forth above, I recommend that the defendants' motion for summary judgement be granted. Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten days of its receipt. Fed.R.Civ.P. 72(b); LR Cv. 72(d). Failure to file timely, specific objections to the report constitutes waiver of both the right to review by the district court and the right to appeal the district court's decision. United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1986)(per curiam); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

_____
Jacob Hagopain
Senior United States Magistrate Judge
September 26, 2006