UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CRAIG C. PRICE *
*
VS. * C.A. No. 05-389 S
*
A.T. WALL II, et al. *
*
*

# **PLAINTIFFS OBJECTION**
# ***TO REPORT AND RECOMMENDATION***

Now comes the plaintiff, [signature] #126516, pro se, in the above entitled matter, and pursuant to Fed. R. Civ. P. 72 (b), and LR Cv. 72 (d), the plaintiff moves in this honorable Court to OBJECT to the Report and Recommendation of Magistrate Judge Jacob Hagopain. For the reasons and the arguments set-forth in the plaintiff's Memorandum of Law In Support of his objection the plaintiff prays this honorable Court will sustain the plaintiff's objection to the Report and Recommendation Recommending defendant's Motion for Summary Judgment be granted.

10/18/2006

Respectfully Submitted:

[signature]
Craig C. Price, pro se #126516
Charlotte Correctional Institution
33123 Oil Well Road
Punta Gorda, Florida 33955

**CERTIFICATION**

I hereby certify that on the 18th day of October 2006, I sent a true copy of the within document to defendant's attorney Patricia A. Coyne Fague by U.S. Mail, and I sent a original to the U.S. Clerk of the U.S. District Court Clerk's Office at Providence, Rhode Island, 02903-1779.

[signature]

***Notarization***

Subscribed and Sworn to before me at the Charlotte Correctional Institution in Punta Gorda, Florida, on this 18th day of October 2006.

[signature]
Plaintiff pro se

Kara Williams 10/18/06
Notary Public

NOTARY PUBLIC-STATE OF FLORIDA
Kara R. Williams
Commission # DD488568
Expires: NOV. 07, 2009
Bonded Thru Atlantic Bonding Co., Inc.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CRAIG C. PRICE *
vs. *
 * C.A. No.: 05-389 S
A.T. WALL II, et.al. *

# **MEMORANDUM OF LAW** ***IN SUPPORT OF*** **PLAINTIFF'S OBJECTION** ***TO REPORT AND RECOMMENDATION***

Now comes the plaintiff, Craig C. Price, pro se, in the above entitled matter, and pursuant to Fed. R. Civ. P. 72(b), and LR Cv. 72(d), the plaintiff hereby submits the following Memorandum of Law, with attached exhibits, in Support of his objection to the specific findings within Magistrate Judge Jacob Hagopain's Report and Recommendation.

## ***STATEMENT OF FACTS***

The plaintiff, Craig C. Price, pro se, is an inmate in the custody of the Rhode Island Department of Corrections, that has filed a complaint pursuant to 42 U.S.C. 1983 alleging a deprivation of his federal Constitutional Rights. The plaintiff names as defendants Ashbel T. Wall, II, Director of the Rhode Island Department of Corrections (herein the R.I.D.O.C.), Jake Gadsden Jr., Assistant Director of the R.I.D.O.C., and Joseph A. DiNitto, Associate Director of Classification at the R.I.D.O.C., (Collectively "defendants").

Presently before the Court is an Objection made by the plaintiff, and said objection pertains to the Report and Recommendation, in which recommended that the defendant's Motion for Summary Judgment that has been filed pursuant to Rule 56 of the Fed R. Civ. P. be granted.

The matter before the Court contains the following factual allegations, and the following Disputed and Undisputed Facts, which for purposes of the intent of this objection must be considered in a light most favorable to the plaintiff. The facts are as follows:

On July 17, 1997, a Rhode Island state Court Judge sentenced the plaintiff to the R.I.D.O.C. for a term of imprisonment of twenty-five years, with ten years to serve and fifteen suspended.

Additionally, the Court, as part of the sentence it imposed, required the plaintiff to complete rehabilitative programming, including psychological and psychiatric treatment while incarcerated.

On August 13, 2003, after not receiving any of the Court mandated treatment, the plaintiff exercised his First Amendment Right through Counsel (attorney Dana Paolino-Saccia), and filed a Complaint (which was a Motion to Compel) against the R.I.D.O.C. in state Court seeking to Compel the R.I.D.O.C. to comply with the sentencing Court's Order. After several Court conferences with the R.I.D.O.C. and counsel for the plaintiff, the R.I.D.O.C. agreed to provide the plaintiff with the Court ordered treatment.

The parties further agreed that if the plaintiff successfully completed the first round of treatment, the plaintiff's classification would be upgraded, permitting him to participate in further rehabilitative treatment as mandated by the Court. With this agreement, the plaintiff thereafter withdrew his Motion to Compel.

The plaintiff successfully completed his first round of treatment and appeared before a classification board for review of his status. Based on his successful completion of the initial round of treatment and pursuant to the agreement between Counsel for plaintiff and the R.I.D.O.C. the board recommended that the plaintiff's classification status be upgraded. However, the defendants refused to permit an upgrade in plaintiff's status, and instead, R.I.D.O.C. officials then launched into no less than three separate and sudden unrelated investigations into various matters, blatantly delaying plaintiff's classification upgrade, thus ultimately prohibiting the plaintiff from receiving and participating any further in Court ordered treatment.

Immediately following the plaintiff's acknowledgment that due to the R.I.D.O.C.s failure to abide by the agreement, the plaintiff, through Counsel, communicated to officials at the R.I.D.O.C. that he intended to pursue further litigation outlining the R.I.D.O.C.s blatant endeavors to keep the plaintiff confined on a restricted segregative status which was preventing the plaintiff from engaging in Court Ordered Treatment.

Upon the plaintiff's communication that further litigation would ensue by the plaintiff resubmitting his "Motion to Compel" against the R.I.D.O.C., Counsel for the R.I.D.O.C. then offered to send the plaintiff to an Out-of-State correctional facility where the plaintiff would receive the Court ordered treatment. The plaintiff then consented to be transferred to an Out-of-state Correctional facility with certain states the plaintiff preferred to be transferred to.

In October of 2004, the plaintiff was transferred by the U.S. Marshals to the Florida D.O.C., and even though Florida was not a state the plaintiff preferred to be transferred to, as long as the Florida D.O.C. could provide the Court Ordered Treatment, then the plaintiff was willing to give the Florida D.O.C. a chance.

However, when the FLA.D.O.C. received the plaintiff into its prison system, the plaintiff was received as a disciplinary transfer and was promptly casted into segregation. While in segregation, the plaintiff learned from a FLA.D.O.C. classification officer that the plaintiff would be placed on the most restricted Close Management segregative status because the plaintiff "like to cause trouble with the administration," that the plaintiff "escaped from prison"; (See plaintiff's Complaint pg. 8 paragraphs 23 & 24). The plaintiff was also told by the FLA. D.O.C. classification officer that the plaintiff had "injured a correctional officer so severely that the officer required hospitalization for an extended period of time". Lastly, the plaintiff was also warned that if he "pulled any smart moves down here, especially with the legal stuff he could end up with forever"; (See again Plaintiff's Complaint pg 8 Par. 24

The plaintiff tried to explain to the FLA. D.O.C. classification officer that he had been gravely misinformed about the plaintiff, and grossly misinformed about the plaintiff's institutional file and record. but to no avail did the plaintiff's attempts to convince the FLA. D.O.C. official that he had been branded with flagrant misinformation work, and infact, the plaintiff was ultimately placed on the most restricted Close Management Segregative Status.

Moreover, the plaintiff thereafter learned that the FLA. D.O.C. cannot provide the plaintiff with any of the court ordered treatment which was precisely the impetus for plaintiff's transfer.

Plaintiff then filed suit pursuant to 42 U.S.C. 1983 seeking relief. Plaintiff contends that the R.I.D.O.C., particularly the named defendants here Wall, Gadsden, and DiNitto, in retaliation for the filing of plaintiff's Motion to Compel, intentionally transferred the plaintiff to a correctional facility that can not even provide the plaintiff with court ordered treatment, and to a correctional facility that because of the intentional forwarding of misinformation, and inflamatory fabrication, concerning the plaintiff and plaintiff's institutional record and file, the plaintiff has been placed and classified on the most restricted segregative Close Management Status.

Furthermore, the plaintiff also contends that these defendants continue to approve and sustain the plaintiff being classified in a Close Management segregative status even though the defendants are well aware

that the plaintiff was placed on such a segregative status because of the misinformation that they intentionally forwarded to the FLA.D.O.C..

The defendants are further aware that the plaintiff "is not", and "can not", be provided with the court ordered treatment inwhich was the specific reason why the plaintiff agreed to be transferred to an out-of-state correctional facility.

All of the facts set forth in this matter by the plaintiff, the plaintiff respectfully submits, can and will support the plaintiff's contention that he was retaliated upon by the defendants for filing a Motion to Compel court ordered treatment.

The defendants, after first having their Motion to Dismiss the plaintiff's complaint was denied, the defendants then moved for a Motion for Summary Judgment. The plaintiff filed a timely Objection, and on the date of September 27th, 2006, the Report and Recommendation of Magistrate Judge Jacob Hagopain recommended that Summary Judgment be granted to the defendants.

The Plaintiff now moves pursuant to Fed. R. Civ. P. 72(b), and L.R. Cv. 72(d), and objects to the findings of the Magistrates Report and Recommendation.

## **LEGAL STANDARD FOR**
## ***SUMMARY JUDGMENT***

"Summary Judgment is granted pursuant to Fed. R. Civ. P. 56 only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett. 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court views the evidence in the light most favorable to the non-moving party, according that party the benefit of all reasonable inferences. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, in ruling on a motion for Summary judgment, the Court will grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not in dispute."

(See Kimberlin Vs. Quinlan, 251 F.Supp.2d 55 (D.D.C. 2003)

The plaintiff objects to the findings of the magistrate's Report and Recommendation because there are genuine issues of material facts in dispute, and that therefore, as a matter of law, the defendants are not entitled to Summary Judgment.

The plaintiff contends that if the evidence pertaining to this matter is viewed upon in a light most favorable to the plaintiff, according the plaintiff the benefit of all reasonable inferences, than the plaintiff's specific objections to the magistrates Report and Recommendation should be sustained and this matter should proceed to trial.

## ***ARGUMENT***

The plaintiff avers that he has identified facts within the record that demonstrates that (1) He engaged in constitutionally protected conduct; (2) He suffered an adverse action; and 3) There is a casual connection between the constitutionally protected conduct and the adverse action, and that it can be said that the constitutionally protected conduct was a motivating factor for the adverse action.

The plaintiff further avers that he has sufficiently demonstrated that the retaliatory act would not have occurred "but for" the protected conduct. The undisputed facts do demonstrate that the plaintiff filed suit in State Courts against the R.I.D.O.C., challenging their failure to provide him with court ordered psychiatric and psychological treatment. It's well established that prisoners have a constitutional right to Petition the Government for a redress of grievances, (See U.S. Const. amend. I; also Lewis V. Casey 518 U.S. 343 (1996), thus the plaintiff has a federally protected right, and consequently, the plaintiff satisfied the first prong of establishing a retaliatory claim.

Next, the plaintiff must demonstrate that he has suffered an adverse action. This second prong is a prong that the Court in its Report and Recommendation has recommended a finding that the plaintiff has failed to satisfy this burden.

For the following reasons set-forth, the plaintiff objects to the findings of the magistrate, and the plaintiff now argues that he has sufficiently established that he has satisfied the burden of demonstrating he has suffered from adverse actions caused by the defendants.

**PLAINTIFF'S OBJECTION**
**TO THE MAGISTRATE'S FINDINGS**
**UNDER ADVERSE ACTION**

In the Report and Recommendation of Magistrate Judge Jacob Hagopain, the Court stated the following:

"Price must demonstrate that he has suffered an adverse action. An action is considered "adverse" for retaliation purposes if it would "deter a person of ordinary firmness" from the exercise of the right at stake. Bart v. Telford, 677 F.2d 622, 625 (7th Cir 1982). In the prison context, actions comparable to a transfer to segregation or an involuntary transfer to an out-of-state prison can generally be considered "adverse" to an inmate. See e.g. Thaddeus-X, 175, F.3d at 396-98; McDonald, 610 F.2d at 18."

(See Magistrate Judge Jacob Hagopain's Report and Recommendation pg. 11)

The plaintiff contends that all of the evidence that has been submitted to the Court pertaining to this matter, sufficiently establishes a reasonable showing that the manner and process in which plaintiff was transferred to the Florida Correctional System, was indeed an action comparable to a transfer to segregation.

**A. Plaintiff's Transfer to Florida's Correctional System**

Magistrate Hagopain's finding stated the following:

"Transferring Price to an out-of-state confinement facility cannot be considered adverse to Price for retaliation purposes, where, as here, Price sought out the transfer. Moreover, there is no evidence which demonstrates that the Florida Correctional System is significantly different than the Rhode Island Correctional System."

(See Report and Recommendation pg. 12)

To begin with, what should first be respectfully addressed and corrected in regards to the above quoted statement by the Court, is the Court's erroneous assertion and conclusion that it was the plaintiff who "*sought out*" the out of state transfer from the defendants.

Now while it is certainly true that in previous years past the plaintiff had requested several times, (and had been consequently denied several times), to be transferred to an out-of-state prison, the more accurate and precise facts that are consistent with the matter presently before the Court, is that it was the defendants, (not the plaintiff), who "initiated" the effort to settle the pending litigation that was before the Court (i.e. Motion To Compel), by offering to send the plaintiff to an out-of-state correctional facility so that the plaintiff could be provided with the court ordered psychiatric and psychological treatment.

The plaintiff emphasizes that this is indeed a distinct fact that should be pointed out, because its significance contributes to the establishment of how the motivating factor of the plaintiff engaging in protected conduct is put into context, and how the protected conduct relates to how the plaintiff suffered from the adverse actions of the defendants during the execution of the transfer.

The plaintiff contends that the defendants were upset with the plaintiff for filing a legal action against them, (i.e. Motion To Compel), so in return, the plaintiff contends that the defendants then engaged into disingenuous settlement discussion inwhich ultimately resulted in a mutual agreement between the defendants and plaintiff, that the plaintiff would be sent to an out-of-state correctional facility, for the purpose of providing the plaintiff with the Court ordered treatment.

However, as it unfortunately turned out, the plaintiff argues that such a transfer proved to be nothing more than a ruse that was employed by the defendants, and that the defendants abused the legitimate and neutral transferring process by deliberately spiking the plaintiff's institutional record with blatant misinformation and inflamatory fabrication, and then intentionally forwarding the blatant misinformation and inflamatory fabrication to the Out-of-State Correctional facility receiving the plaintiff, so that the plaintiff would be placed on a restricted and segregative classification status.

A transfer under these particular circumstances, in which the prisoner who had filed legal action against prison officials is then punished by having his institutional record deliberately spiked and then forwarded to an Out-of-State Correctional facility whose classification officials would undoubtedly classify the prisoner to the most restricted segregative status because of the contents of the misinformation and inflamatory fabrication, should indeed be considered circumstances that sufficiently establish adverse actions that impacted the neutrality of the transfer and that come within the reach of a retaliation claim.

Furthermore, the plaintiff respectfully submits that perhaps instead of the Court focusing its attention upon whether there exist any evidence produced by the plaintiff that demonstrates whether the FLA.D.O.C. system is significantly different from the R.I.D.O.C. system, the Court's attention should have been guided along the more germane inquiries that would have better [redacted] the Court to understand and determine exactly how the plaintiff has put the adverse actions of the defendants into context.

For example, instead of the Court's inquiry being one that hinges upon the significant differences between two correctional systems, the Court should have considered inquiries such as: "Was there any alleged blatant misinformation and inflamatory fabrication?"; "Was this alleged blatant misinformation and inflamatory fabrication intentionally forwarded by the defendants?"; and "Was this alleged blatant misinformation and inflamatory fabrication the cause in which placed the plaintiff, and caused the plaintiff to be classified on a restricted close Management segregative Status?"

The plaintiff respectfully avers that had the Court's attention been directed along these types of inquiries, then these types of inquiries would have been answered in the affirmative. Moreover, and more importantly, these types of affirmations would have respectfully lead to the reasonable conclusion that a person of ordinary firmness, under these particular circumstances, would be deterred from exercising their right to file any legal action such as the plaintiff did against the defendants, if a person of ordinary firmness knew that they would be subjected to the adverse actions suffered by the plaintiff.

Lastly, if evidence of significant difference between two correctional systems is what the Court was looking for, then perhaps the Court should have respectfully considered its significance standard from a slightly different perspective inwhich evaluates this standard.

For example, the plaintiff respectfully avers that the Court's inquiry under this significance standard should have inquired that: "If the plaintiff is being denied the Court Ordered psychiatric and psychological treatment in the Out-of-State Correctional System he was transferred to, and if this Court ordered treatment was the primary purpose of the plaintiff being transferred to the Out-of-State Correctional System from which he came and which could not provide the plaintiff with Court ordered treatment, is it significant that both Correctional Systems cannot provide the plaintiff with Court Ordered treatment?"

The plaintiff contends that it is significant, and that the significance is found in the fact that when one correctional System is not different from the other, (when by mutual agreement it is suppose to be, by virtue that one correctional system is suppose to provide the plaintiff with court ordered treatment), and if the impetus and purpose of the transfer is so that the plaintiff would be provided with court ordered treatment, and if the Out-of-State Correctional System cannot provide the plaintiff with court ordered treatment, then the transfer for the plaintiff becomes meaningless and defeats the actual purpose of the transfer.

Moreover, the transfer becomes tantamount to transferring the plaintiff from one correctional System's Segregation to another Correctional System's Segregation (Out-of-State), which consequently can then be considered as an "action comparable to a transfer to segregation."

Furthermore, the plaintiff concedes that as ironic as it may very well sound, it is not a far fetched notion to conceive and embrace that the lack of evidence supporting a finding of significance, can reasonably be considered as *actual evidence* on behalf of the plaintiff under these particular circumstances.

Under these particular circumstances, and under this particular significance standard imposed by the court, it should have been <u>the burden of the defendants</u> to produce evidence that outweighed the plaintiff's evidence, (which is evidence that must be considered in a light most favorable to the plaintiff, and evidence that is already in the record [See Exhibits "C" & "D" of plaintiff's Declaration In Support of of plaintiff's Objection and Response to Defendants Motion to Dismiss]), and that said evidence of the defendants should have supported the averment that court ordered treatment "is being provided for the plaintiff", and thus, it is this difference and significance between the R.I.D.O.C. and the FLA.D.O.C. that satisfies this significance standard.

The Court erred in its finding pertaining to the plaintiff's transfer to the Florida Correctional System, and in doing so, the magistrates recommendation for Summary Judgment was inappropriate.

<u>B. Price's Classification within the Florida Correctional System.</u>

In the Report and Recommendation of Magistrate Hagopain, the Magistrate made the following finding:

> "While classifying an inmate to a restrictive or harsh classification may be sufficiently adverse to deter a person of ordinary firmness from exercising his right to access the Courts, here Price has failed to demonstrate that his classification in Florida is significantly <u>*more severe*</u> than his classification in Rhode Island." (emphasis added)

(See Magistrate Hagopain's Report and Recommendation at pg.13)

In regards to the above quoted language from the magistrates Report and Recommendation, the plaintiff simply objects to this finding and invokes the same grounds and reasoning that the plaintiff has argued in the above objection to the plaintiff's argument under paragraph <u>"A"</u>.

Furthermore, the plaintiff argues additionally that it is not a mandatory standard and burden for the plaintiff to meet where-upon the plaintiff must demonstrate that his classification in the FLA.D.O.C. is <u>"*significantly more severe*"</u> than his classification in the R.I.D.O.C..

The appropriate and correct legal standard and burden for the plaintiff to meet, is to demonstrate that he has suffered an adverse action that would deter an ordinary person of firmness from exercising their constitutional right to engage in protected activity.

For the Court to impose such a "<u>significantly more severe</u>" standard upon the plaintiff was not only clear error and judicially unsound, but an error inwhich the recommendation for Summary Judgment should not be adopted and the plaintiff's objection should be sustained.

**<u>PLAINTIFF'S OBJECTION</u>**
*** <u>TO THE MAGISTRATE'S FINDINGS</u>***
**<u>UNDER CAUSAL CONNECTION</u>**

"The analysis of motive in retaliation claims is well-developed. Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm the burden of production shifts to the defendant. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment."
(See Thaddeus-X vs. Blatter, 175 F.3d. 399 (6th Cir 1999))

In light of the above quoted language, the plaintiff respectfully ask the Court to consider the following:

"If a prisoner exercises his 1st Amnd. Right and moves in Court to Compel a D.O.C. to comply with a specific mandate incorporated within the prisoner's prison sentence (which said mandate consist of the D.O.C. providing the prisoner with court ordered psychological and psychiatric treatment), and when the D.O.C. during litigation of the matter moves to settle the litigation by offering to send the prisoner to an Out-of-State correctional facility that could provide the prisoner with the court ordered treatment, then it is reasonable to surmise that the ensuing transfer was directly caused and motivated by the litigation.

Furthermore, when the prisoner is then transferred (whether voluntary or involuntary) to an Out-of-State Correctional facility for the purposes of providing the prisoner with the Court ordered treatment and that that prisoner is

is then classified and placed in segregation on a restricted Close Management Status upon his arrival to the Out-of-State correctional facility because certain individual(s) of the sending correctional facility had intentionally forwarded blatant misinformation and inflamatory fabrication about the prisoner and prisoner's institutional record to the Receiving Out-of-State Correctional facility, then it is reasonable to suggest and conclude that the intentional forwarding of blatant misinformation and inflamatory fabrication about the prisoner and his institutional prison record was an adverse act committed by certain individual(s) from the D.O.C. the prisoner came from which is the D.O.C. the prisoner had filed a legal action against."

The plaintiff respectfully argues that this is exactly what has transpired in the instant matter before the Court. Moreover, Contrary to the findings of the magistrate, the plaintiff contends that such an adverse act would indeed likely have a strong deterrent effect upon a prisoner of ordinary firmness from exercising their constitutional Right in the manner as the plaintiff did because "*what prisoner similarly situated would want to engage in any legal activity as the plaintiff did, if they knew such legal activity would cause them to be subjected to a tainted transfer wherein intentional forwarding of blatant misininformation and inflamatory fabrication would result in their perpetual classification and placement on a restricted close management segregative status out-of-state?*"

The plaintiff points to his Exhibit "A" in his complaint as evidence of the protected legal activities he engaged in that caused his transfer. The plaintiff next points to his Exhibit "D" in his Affidavit in Support to his Memo. of Law in Support to his Objection to the Def. Motion for Summary Judgment, and his Exhibits A & B and paragraphs 3 & 4 to his Supplemental Affidavit in Support to his Objection to Def. Motion for Summary Judgment, as evidence supporting plaintiff's contention that the defendants committed the adverse act of causing the plaintiff to be classified and placed on a restricted segregative status because they spiked the plaintiff's institutional record with blatant misinformation and inflamatory fabrication and then deliberately forwarded it to the FLA.D.O.C. officials during the commission of the transfer.

Thus, the plaintiff, as a matter of record and fact, has set-forth sufficient evidence that has sufficiently demonstrated a causal connection between the plaintiff's legal activities and the adverse actions of the defendants.

Furthermore, the plaintiff contends that in the absence of the plaintiff engaging in the protected conduct, (i.e. the plaintiff's filing of the Motion to Compel against the defendants), the transfer to the Florida Correctional System would have not taken place.

Therefore, the Magistrates recommendation for a Summary Judgment was improper, and the plaintiff's objection regarding this finding should be sustained.

## A. Price's Transfer to the Florida Correctional System.

In the Report and Recommendation of Magistrate Hagopain, the Magistrate stated the following in his finding:

> Price's first claim asserts that the defendants transferred him to the Florida correctional system in retaliation for his legal activities. However, no evidence indicates that Wall, DiNitto, or Gadsden transferred Price to Florida to punish him for his legal activities.
>
> (See pg. 14 of Report and Recommendation)

The Court also stated in its Report and Recommendation that: "Pursuant to this agreement, DiNitto submitted Price's transfer application to thirteen jurisdictions."
(See again pg. 14 of Report and Recommendation)

Finally, the court further stated that:

> "Moreover, the undisputed facts demonstrate that Wall choose to send Price to the Florida System because it was "more suitable... for his rehabilitative and security needs."
>
> "Additionally, and defendants had a completely permissible reason for the transfer, namely to comply with the state court agreement"
>
> (See pg. 15 of Report and Recommendation)

In regards to the quoted statements from the magistrates findings, the plaintiff first begins his argument by contending that it is a disputed fact that the purpose of plaintiff's transfer was to send the plaintiff to an Out-of-State Correctional facility for the purposes of providing the plaintiff with the court ordered treatment which was a mandate to plaintiff's prison sentence.

The plaintiff contends that it is disputed, because not only has the plaintiff officially made it apart of the record when he submitted his statement of undisputed and disputed facts pursuant to Rule 56 (a)(4) of Local Rules to the U.S. District Court for the District of Rhode Island, but upon reviewing the interrogatories that the defendants answered, the defendant's alleged reason as to why the plaintiff was sent out-of-state is in extreme and direct conflict with the sworn testimony of not only the [redacted] plaintiff, but the sworn testimony of plaintiff's attorney Dena Paolino-Sarcia (See Exhibits "C" and "B" in the Supplemental Affidavit in Support of Plaintiff's Objection to Def. Motion for Summary Judgment that is attached to this Memo. of Law in Support of Plaintiff's Objection to magistrates Report and Recommendation).

The plaintiff argues that this is a significant contention because the purpose of the transfer and the transfer itself is a genuine issue of material fact that the plaintiff has established evidence upon.

The plaintiff contends that the evidence supporting this disputed fact is indeed credible evidence that supports the averment that a genuine issue "might affect the outcome of the suit under governing law," (See Aurelio V. R.I. Dept. of Admin., D.M.V., 985 F.Supp. 48 (1997), citing Morrissey V. Boston Five Cents Bank, 54 F.3d 27, 31, (1st Cir. 1995), other citation omitted).

The defendants, in their responses to this disputed fact (which is a genuine issue of material fact), have simply just responded to this issue by stating the purpose of the transfer was because it was "more suitable ... to his (i.e. plaintiff's rehabilitative and security needs." Thus, the plaintiff argues defendant's have not made a sufficient evidentiary showing regarding this disputed fact.

Next, the plaintiff respectfully argues that the magistrate erred in his finding that the "defendants had a completely permissible reason to transfer the plaintiff," (Namely compliance with the State Court agreement), and that this is so because the plaintiff has sufficiently argued and demonstrated with sufficient evidence, that the defendants abused the neutrality of the transfer process, thus barring the defendants from invoking the permissibility defense towards the transfer.

As previously argued in plaintiff's Memo. in Support of Objection to Def. Motion for Summary Judgment, while it is clear to to the plaintiff, and the plaintiff readily concedes, that given the plaintiff's situation and circumstances surrounding the plaintiff's prison sentence and long term incarceration, the Court could reasonably find that the R.I.D.O.C. officials could have a legitimate penological interest, (or interest in complying with the state Court agreement), in transferring the plaintiff. However, if, infact, the defendants abused the transfer process as a cover or ruse to silence and punish the plaintiff because he exercised his constitutional right to engage in protected activity and filed suit against defendants, then the defendants cannot assert that the plaintiff's transfer served a valid penological purpose, or was in the interest of complying with a state Court agreement.

Key language supporting this contention has been well established by many courts just as it has been established in the case of Bruce vs. Ylst which stated:

> "This comports with other circuits holding that prison officials may not defeat a retaliation claim on summary judgment simply by articulating a general justification for a neutral process when there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right. See Cornell v. Woods, 69 F.3d 1383, 1388-89 (8th Cir 1995); Woods v. Smith, 60 F.3d 1161, 1165 (5th Cir 1995); Smith v. Maschner, 899 F.2d 940, 948-949 (10th Cir. 1990)."
>
> (See Bruce v. Ylst 351 F.3d 1289 (9th Cir 2003))

The plaintiff has submitted sufficient evidence that supports he engaged in protected activity and the plaintiff likewise has submitted sufficient evidence supporting he has suffered an adverse action. The plaintiff has also demonstrated with sufficient evidence that there exist a disputed fact in which a genuine issue of material fact exist.

Therefore, the plaintiff objects to the Magistrate's finding concerning the plaintiff's transfer to the Florida Correctional System and thus the plaintiff's objection to the Magistrates recommendation for defendant's Summary Judgment should be sustained.

B. Price's Classification within the Florida Correctional System.

In the Report and Recommendation of Magistrate Hagopain, the Magistrate made the following finding:

"Accordingly, plaintiff's claim that the defendants classify or confine him in a restrictive classification at the Florida prison, in retaliation for his legal activities has no factual support. It is Florida that decides which of its facilities to confine Price and what level to classify him.

Construing plaintiff's submissions liberally, plaintiff also appears to claim that the defendants supplied Florida prison officials with inaccurate information, resulting in a restricted classification, in retaliation for his legal activities. Again, however, Price has failed to substantiate his claim with evidence. Plaintiff's claim is based purely on speculation, innuendo, and second hand information making Summary Judgment appropriate."

(See pg. 16 to Report and Recommendation)

In objecting to the above quoted statement from Magistrate Hagppain's finding, the plaintiff first responds to the magistrate's misconstruement of how the plaintiff has argued the defendants being responsible for causing the plaintiff to be classified, (and continuously classified), on a restricted segregative status.

First, the court should understand that while it is true Florida Correctional officials are the ones who classified the plaintiff to a restricted segregative status, it is also true, (and a fact), that this classification decision was based upon reviewing plaintiff's institutional record and all the information that was forwarded to the Florida D.O.C. in plaintiff's transfer package.

Now the plaintiff has argued that the transfer package information and plaintiff's institutional record was deliberately spiked with blatant misinformation and inflamatory fabrication.

This is a significant contention because the plaintiff has submitted sufficient evidence that not only supports this contention, but evidence that sufficiently supports the contention of where the blatant misinformation and inflamatory fabrication came from and who was the individual who forwarded it to the Florida prison officials.

In demonstrating this point, the plaintiff points to several pieces of evidence that are already part of the record. The plaintiff first points to Exhibit "D" to his complaint, and Exhibit "D" to his Affidavit in Support of Plaintiff's Memo. in Support of Objection to Def. Motion for Summary Judgment, contained facts within this piece of documentary evidence reveal the blatant misinformation that: "injured one officer severely requiring hospitalization for an extended period of time;" that the plaintiff "Transferred to F.S.P. As an Interstate Compact Transfer for C.M. (i.e. Close Management) review"; and that the plaintiff "Escaped", (See Section I. to Exhibit D to verify the above. Exhibit D also states that "inmate was received on interstate compact due to his extensive disciplinary history" (See Section III. to Exhibit "D" to verify this fact.

The plaintiff next points to Defendant DiNitto's own Affidavit wherein said affidavit on page 3, paragraph 9) list the specific reasons why Out-of-State Correctional facilities rejected plaintiff's application as an Out-of-State prisoner. The plaintiff calls upon this piece of evidence because paragraph 9) confirms that inflamatory fabrication was injected into the plaintiff's application and transfer package information. "The plaintiff asserts this because plaintiff is not a GANG MEMBER", so why would any Out-of-State Correctional facility reject plaintiff's application on this basis? Clearly, inflamatory fabrication was placed into plaintiff's institutional file. Further evidence and proof upon this point can be seen when reviewing the record for consideration of plaintiff's Exhibit "A" to plaintiff's Supplemental Affidavit, (which is attached to this Memo. of Law in Support of Objection to Report and Recommendation).

Again, this documentary evidence confirms that inflamatory fabrication was injected into plaintiff's institutional record because as attested to in plaintiff's sworn affidavits (which is yet more evidence on behalf of the plaintiff) the plaintiff is Not a "GANG MEMBER" Nor is he a "RECRUITER" for any "GANG", (See Affidavit in Support of Memo. objecting Summary Judgment, and see Supplemental Affidavit in Support of Memo. objecting Summary Judgment).

The punctual question to be asked at this point, is "who is the individual(s) responsible for providing all of these Out-of-State Correctional Systems, (including Florida), with all of this blatant misinformation and inflamatory fabrication?" The answer to this question is quite apparent once you return back to defendant DiNitto's own affidavit and read paragraphs #2., #3, #5, and #6 and #7 on pages One (1) and Two (2).

Once it is accepted that blatant misinformation and inflamatory fabrication regarding plaintiff's institutional record exist, (as it should be accepted because the defendants have not submitted any sufficient evidence that supports it doesn't while the plaintiff has produced sufficient evidence that supports it does, thus shifting the burden to the defendants to prove otherwise), then the question now simply becomes why?

While the plaintiff understands that it is a requirement by the law of the Intergovernmental Agreement for the plaintiff's entire classification records and file to be forwarded to the Out-of-State Correctional System that has accepted the plaintiff as a prisoner, (which in this particular case would be the FLA.D.O.C.), the plaintiff also understands that it is not a requirement of this law to intentionally include in the forwarding of plaintiff's classification records and file any blatant misinformation and inflamatory fabrication that would cause a prisoner to be classified in a restricted segregative status.

The plaintiff ask the Court to consider the following question:

"What Classification Board, in virtually any prison system, would classify a prisoner in any other classification

> Status other than the most restricted segregative status, if that classification board was exposed to information that said the prisoner was a "disciplinary trans-fer"; "A gang member and gang recruiter;" "Escaped from prison"; "Assaulted numerous inmates"; "Like to cause trouble with the administration"; "and Assaulted a correctional officer so severely that the officer was hospitalized for an extensive period of time"???"

This is exactly what occurred in the plaintiff's case, and this is exactly what the plaintiff alleges the plaintiff was subjected to by the defendants. It is not accurate to point the finger at FLA.D.O.C. officials under these particular circumstances and facts, because it was the defendants, (Namely DiNitto), who furnished the FLA. D.O.C. with the blatant misinformation and inflamatory fabrication regarding plaintiff's institutional record, and all FLA.D.O.C. did was act off it in a reasonable manner, (just as the defendants knew they would because the defendants are well aware of how a classification process can work or be worked).

Furthermore, in regards to the plaintiff asserting that the defendants are responsible for the classification, (and continual classification), of plaintiff on a restricted segregative status within the FLA.D.O.C., the plaintiff contends emphatically that it was the defendants who caused his classification, and it is the defendants who steadfastly refuse to rectify it by correcting the blatant misinformation and inflamatory fabrication contained within plaintiff's classification record and file with FLA.D.O.C. officials.

Contrary to what the magistrate thinks and believes, the defendants can ask FLA.D.O.C. officials to conduct a classification hearing (or any other type of hearing) for the plaintiff if the defendant so chooses to do so. Proof of this fact was evidence exhibited as E & F to plaintiff's Affidavit In Support to Plaintiff's Memo. of Law Supporting Objection to Def. S.J., the plaintiff has also attached these exhibits E & F to this Memo. of law).

The defendants have simply refused to do so, and the plaintiff has submitted sufficient and credible evidence supporting this fact (See Affidavit of Attorney Dena Paolino-Sarcia pg. 2 paragraph #16, which is attached to this Memo. as exhibit B, and see Exhibits A & B to plaintiff's Affidavit in Support to Memo. of Law In Support to plaintiff's objection to Def. Motion for Summary Judgment that are also attached to this Memo. of Law and are Exhibited as "AAA" & "BBB")

The evidence supporting all of plaintiffs contentions as to how the defendants are responsible for how and why the plaintiff was classified and placed on a restricted segregative status was sufficient and credible.

For the Court in its Report and Recommendation to come to such an erroneous conclusion that the plaintiff's claims are "*based purely on speculation, innuendo, and second hand information making summary judgment appropriate*" (See pg. 16 to Report & Recommendation), is an erroneous conclusion that is so flawed in its reasoning that it should be properly rejected and respectfully defined as a finding without adequate merit or sound standing especially since there is sufficient evidence that exist on the record which should have been viewed in a light most favorable to the plaintiff.

The plaintiff's submitted evidence squarely contradicts the defendant's averment as to why the plaintiff was classified to a restricted segregative status within the FLA.D.O.C.. For the Court to claim that this evidence is "based purely on speculation, innuendo, and second hand information, making summary judgment appropriate" amounts to a judgment about the credibility of the plaintiff's factual allegations. "The district court may not make credibility determinations or otherwise resolve disputed factual issues on a Motion for Summary Judgment." (See Gray v. Spillman, 925 F.2d 90, 95 (4th Cir 1991); Titran v. Ackman, 893 F.2d 145 147 (7th Cir 1990))

Therefore, the Magistrates recommendation for Summary Judgment on this ground was improper, and the plaintiff's objection regarding this finding should be sustained.

# ***CONCLUSION***

The plaintiff concludes his objection with the contention that the reality behind this entire case is that the defendants were upset with the plaintiff for exercising his right to engage in protected activity and filing a Motion to Compel Court ordered psychiatric and psychological treatment against them.

The defendants were upset with the plaintiff for engaging in such protected activity because for the defendants to be compelled to comply with the Court ordered treatment, this meant the defendants would have had to upgrade the plaintiff's classification status, which consequently would mean the defendants would have to place the plaintiff back into general population because that's where the so-called Court ordered treatment was at.

This is clearly something the defendants did not want to do for the plaintiff, and the defendants continuous unwillingness to release the plaintiff from off of a restricted segregative status can easily be recognized upon reviewing the plaintiff's complaint, (See pg. 4 paragraph 11 & 12 and pg. 6 paragraphs 15 & pg. 5 paragraphs 13 & 14 of plaintiff's complaint).

Furthermore, the defendants appear to have been upset with the plaintiff for filing a Motion To Compel against them, because the defendants felt as if the plaintiff was muscling them with the powers of the Court to effectuate a change in the plaintiff's status that they did not want because the defendants did not want the plaintiff back into the general population.

Thus, in response to the plaintiff's legal efforts, the defendants disingenuously entertained plaintiff's legal action, and through the disingenuous participation towards plaintiff's valid and sincere legal efforts to attain Court ordered treatment, the defendants in their efforts to settle the litigation the plaintiff brought against them, offered to send the plaintiff out-of-state to a correctional facility that could provide the court ordered treatment.

Their plan was a simple one which consisted of getting the plaintiff to settle the litigation headache, then get him and his attorney to mutually agree to be sent out-of-state, then royally punish the plaintiff by spiking his institutional record with blatant misinformation and inflamatory fabrication so that the out-of-state Correctional System receiving the plaintiff on a transfer will classify him on a restricted segregative status, (which is exactly where the defendants wanted the plaintiff to remain in the first place).

This is what the defendants did the plaintiff contends, and this is what the defendants have gotten away with thus far. The defendants have effectively punished the plaintiff for engaging in exercising protected legal activity against them. But what's even just as bad, the plaintiff is now in a Correctional system which cannot provide the Court ordered treatment no matter whether the plaintiff is in general population or a restricted segregative status, thus adding insult to injury to the retaliation the plaintiff has suffered because of the defendants.

The plaintiff respectfully submits that if the facts and inferences to be drawn from the facts of this case are viewed in a light most favorable to the plaintiff, and that if the plaintiff is entitled to have the credibility of his evidence as forecast assumed and that the plaintiff's version of all that is in dispute is accepted, with all internal conflicts resolved favorably to him, then for the reasons and arguments stated within this memorandum of law in support of plaintiff's objection to the Report and Recommendation of magistrate Jacob Hagopain, the plaintiff respectfully ask District Court Judge Smith to sustain plaintiff's objection and deny the defendants Motion for Summary Judgment and allow this matter to proceed to trial.

10/18/2006

Respectfully Submitted

[signature], Pro se

Craig C. Pierce #126556 Pro se
Charlotte Correctional Institution
33123 Oil Well Road
Punta Gorda, Florida, 33955

***CERTIFICATION***

I hereby certify that on the 18th day of October 2006, I sent a true copy of the within document by U.S. Mail to the Clerk of the U.S. District Court for the District of R.I., at Providence, R.I., 02903-1779, and to defendants attorney Patricia A. Coyne-Fague #5198, at 40 Howard Avenue, Cranston, R.I., 02920.

[signature]

# ***NOTARIZATION***

Subscribed and Sworn to before me at the Charlotte Correctional Institution, in Punta Gorda, Florida, on this 18th day of October, 2006.

NOTARY PUBLIC-STATE OF FLORIDA
Kara R. Williams
Commission # DD488568
Expires: NOV. 07, 2009
Bonded Thru Atlantic Bonding Co., Inc.

: [signature]
plaintiff pro se

: [signature]
Notary Public